JOHN WALSHE MURRAY (074823)
STEPHEN T. O'NEILL (115132)
ROBERT A. FRANKLIN (091653)
THOMAS T. HWANG (218678)
DORSEY & WHITNEY LLP
305 Lytton Avenue
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile: (650) 857-1288
Email: murray.john@dorsey.com
Email: oneill.stephen@dorsey.com
Email: franklin.robert@dorsey.com
Email: hwang.thomas@dorsey.com

Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>**CLEAREDGE POWER, INC.**,<br>Employer Tax I.D. No. 20-0119415<br><br>**CLEAREDGE POWER, LLC**<br>Employer Tax I.D. No. 06-1517615<br><br>**CLEAREDGE POWER INTERNATIONAL SERVICE, LLC**<br>Employer Tax I.D. No. 27-3468551<br><br>Debtor(s).<br><br>920 Thompson Place, Suite 100<br>Sunnyvale, California 94085 | Case No. 14-51955-CN-11<br><br>Case No. 14-51956-CN-11<br><br>Case No. 14-51960-CN-11<br><br>Cases Jointly Administered<br>Under Chapter 11<br><br>Date: TBD<br>Time: TBD<br>Place: Courtroom 3070<br>Judge: Hon. Charles Novack |

**MOTION FOR ORDER AUTHORIZING THE DEBTORS TO (i) PAY PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS; AND (ii) FOR THE DEBTORS AND BANKS AND OTHER FINANCIAL INSTITUTIONS TO COMPLY WITH PROCEDURES RELATING THERETO**

TO: **THE HONORABLE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE; THE UNITED STATES TRUSTEE;; THE TWENTY (20) LARGEST CREDITORS; AND OTHER PARTIES IN INTEREST AS SPECIFIED ON THE ORDER LIMITING NOTICE.**

RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\1st Day\Employ\v8.docx

1  MOTION FOR ORDER AUTHORIZING THE DEBTORS TO (i) PAY PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS...

Case: 14-51955    Doc# 22    Filed: 05/06/14    Entered: 05/06/14 17:05:16    Page 1 of 10

ClearEdge Power, Inc. ("CEP"), ClearEdge Power LLC ("CEP LLC") and ClearEdge Power International Services LLC ("CEPIS" and collectively with CEP and CEPLLC, the "Debtors" or "Company"), the debtors and debtors in possession in these jointly administered cases hereby file this motion for an order authorizing, but not requiring, the Debtors to (i) honor prepetition employee wages, obligations and contributions to employee benefit plans for its employees; and (ii) to the extent that certain banks and other financial institutions are required to receive, process, honor, and pay checks presented for payment by its employees, to comply with procedures and honor all funds transfer requests made by the Debtor relating thereto ("Employee Benefits Motion").

This Employee Benefits Motion is based on the Memorandum of Points and Authorities set forth herein, the NOTICE OF HEARING ON FIRST DAY MOTIONS ("Omnibus Notice"), the OMNIBUS DECLARATION OF DAVID B. WRIGHT IN SUPPORT OF FIRST DAY MOTIONS ("Omnibus Declaration") filed concurrently herewith and incorporated herein by reference, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing on the Motion. By a separate application, Debtor has requested an order shortening time for notice and setting a hearing on this matter and the other "first day" motions on an expedited basis.

## I. SUMMARY OF RELIEF SOUGHT

1. As of the Petition Date[1], the Company has 72 employees (the "Employees"). By this Employee Benefits Motion, the Debtors seek authority from the Court to pay, in their sole discretion, the outstanding pre-petition employee obligations due and owing, if any, to the Employees through the Petition Date. These obligations consist of (i) pre-petition wages/salaries ("Pre-petition Wages")[2], (ii) pre-petition employment taxes and fees, (iii) pre-petition Personal Time Off ("PTO")[3], (iv) pre-petition business expense reimbursements, (v) pre-petition Health and Welfare

---

[1] Defined below as May 1, 2014.

[2] Employees have been paid current through the Petition Date. In general, employees are paid through direct deposit. The Debtors believe that there will be minimal, if any, outstanding Pre-petition Wages. By this Motion, Debtor seeks authority to pay Pre-petition wages to the employees to the extent some Pre-petition Wages remain outstanding. The Debtors believe no one employee will receive more than the $12,475 limit set forth by § 507(a)(4).

[3] The Debtors do not intend to "cash out" PTO benefits to the employees at this time. The Debtors however do intend to honor accrued PTO for all employees by allowing employees to use PTO in the ordinary course. In the event of a post-petition termination, the Employees will be paid for all unused PTO, including PTO that accrued prior to the Petition Date up to the amount of the priority limit.

RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\1st Day\Employ\v8.docx

2   MOTION FOR ORDER AUTHORIZING THE DEBTORS TO (i) PAY PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS

Case: 14-51955   Doc# 22   Filed: 05/06/14   Entered: 05/06/14 17:05:16   Page 2 of 10

Benefits[4], and (vi) Medical / Dependent Care Flex Spending ("Flex") claims and administrative fees, and Health Savings Accounts ("HSA" and collectively with Flex, the "Flex/HSA Program") administrative fees.[5]

2. The Debtors request permission from the Court: (i) to pay such pre-petition employee obligations, including Pre-petition Wages, employment taxes and fees, 401K contributions and business expense reimbursements, incurred and owing to any employee through the Petition Date up to the priority limit prescribed by Bankruptcy Code § 507(a)(4); (ii) to pay due and owing health and welfare premiums; (iii) to honor pre-petition accrued PTO owing to any current employee through the Petition Date; and (iv) to pay deposits and administrative fees necessary to continue processing claims under the Flex/HSA Program (collectively, "Employee Obligations"). Any amounts owed that arise out of the Employee Obligations above the statutory priority limit of $12,475 will be treated as a general unsecured claim.

## II. MOTION

**A.  History and Events Leading to the Debtors' Bankruptcy.**

3. A detailed discussion of the Debtors' history, description of their businesses, their assets and liabilities, and the events that led to the need for bankruptcy relief are set forth in the Omnibus Declaration filed concurrently herewith and incorporated herein by reference.

**B.  Bankruptcy Filing.**

4. On May 1, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.[6] The Debtors are presently operating as debtors- in-possession pursuant to the provisions of 11 U.S.C. §§ 1107 and 1108.

---

[4] The health and welfare premium obligations total approximately $36,000 and relate to a payment for a premium due to LifeMap for April 2014 for short-term and long-term disability and Accidental Death and Dismemberment insurance. The Debtors believe that they are current with respect to any other employee related insurance policies. The Debtors believe that any such payment will not exceed the priority limit set by Bankruptcy Code § 507(a)(5).

[5] Flex/HSA accounts are accounts to which employees contribute through a deduction from their paycheck. Historically, medical benefits are paid by Allegiance, the Debtors' Medical Flex Plan administrator, which is reimbursed by the Debtors. Allegiance has recently informed the Debtors that it will require a deposit to process outstanding claims. The Debtors are currently negotiating the amount of that deposit.

[6] All statutory references are to Title 11 of the United States Code.

RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\1st Day\Employ\v8.docx

3  MOTION FOR ORDER AUTHORIZING THE DEBTORS TO (i) PAY PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS

Case: 14-51955    Doc# 22    Filed: 05/06/14    Entered: 05/06/14 17:05:16    Page 3 of 10

5. No official committee of unsecured creditors ("Committee") has been formed in these bankruptcy cases to date.

6. The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for relief sought herein are 11 U.S.C. §§ 101(a), 105, 363, 507(a)(4) & (5), 1107(a) and 1108. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## C. The Debtors' Chapter 11 Business Plan.

7. The Company has historically experienced strong growth and has been the leader in the field of stationary fuel cell systems. However, instability within the industry, together with constraints on working capital and an over-leveraged balance sheet, have resulted in the Company's financial distress. In recent months, the Company has been unsuccessful in obtaining additional financing to continue operations as a going concern. As the Company's available cash has waned, it has been unable to satisfy its payables. In order to streamline operations, among other things, the Company laid off the majority (approximately 300 employees) of its workforce prior to the Petition Date.

8. After considering numerous options over several weeks, the Company's board of directors decided that it is in the best interests of the Company's creditors and equity holders to consummate some form of sale, merger, acquisition and/or related transaction (a "Transaction"). Unable to meet its growing debt obligations, the Company decided to file for bankruptcy to provide the Company time to restructure its finances and operations, market its assets, negotiate sale terms, and conduct an auction of its assets to the highest bidder, under the auspices and protection of the Bankruptcy Court. As a result, each of the Debtors filed their Voluntary Petitions on the Petition Date, commencing these Chapter 11 cases.

9. The Company believes that it is well-positioned to consummate a Transaction for its assets and that the ultimate purchaser will realize significant short term and long term value, especially because the Company maintains the ability to potentially scale dramatically within the context of sufficient working capital and a stronger balance sheet.

10. Accordingly, during their bankruptcy cases, the Debtors intend, among other things,

RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\1st Day\Employ\v8.docx

4   MOTION FOR ORDER AUTHORIZING THE DEBTORS TO (i) PAY PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS...

Case: 14-51955   Doc# 22   Filed: 05/06/14   Entered: 05/06/14 17:05:16   Page 4 of 10

to market their assets and consummate such a Transaction, and to then to distribute proceeds of such transaction to creditors in accordance with the Bankruptcy Code. In order to ensure that their assets realize a maximum return from a Transaction, the Debtors believe that they must maintain their business operations as a going concern during the marketing and sale process. Consequently, in order to ensure that the Company's operations are not disrupted, the Debtor has filed, together with other "first day motions", this Employee Benefits Motion.

**D.     The Debtors' Workforce**

11.     As of the Petition Date, the Debtors employ 72 Employees, located in Connecticut, California, Oregon and South Korea. Employees include service engineers, installation engineers, sales and operational employees.

12.     The Debtors' workforce is critical to its business operations. Each of the Employees is essential not only to the continued, uninterrupted operation of the Debtors' business, but to effectuating the orderly administration of the Debtors' bankruptcy cases and a successful plan of reorganization.

**E.     Pre-Petition Compensation.**

13.     **Salaries and Wages.** On April 30, 2014, the Debtors paid their employees salary and expense reimbursements for the period covering though April 30, 2014. The Debtors distribute payroll to all employees through direct deposit. Thus, the Debtors believe that all Pre-petition Wages owing on April 30, 2014, have been paid. To the extent any Employees are still owed wages for any amounts earned within 180 days of the Petition Date, the Debtors request authority to pay such Pre-petition Wages up to the amount of $12,475.

14.     **Employment Taxes and Fees.** In connection with the employee wages, the Debtors also pay certain employment taxes and fees in the ordinary course of business. To the extent that such payments will be required, the Debtors seek authority to pay the prepetition employer-portion of the employment tax to the appropriate taxing authorities in the ordinary course of business through their payroll processing service.

/ / /

15.     **PTO.** In the ordinary course, the Debtors provide PTO to their employees. The

RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\1st Day\Employ\v8.docx

5   MOTION FOR ORDER AUTHORIZING THE DEBTORS TO (i) PAY PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS

Case: 14-51955    Doc# 22    Filed: 05/06/14    Entered: 05/06/14 17:05:16    Page 5 of 10

Debtors request authority to continue to honor PTO earned pre-petition by the Employees and allow such Employees to use pre-petition accrued PTO in the ordinary course of business up to the maximum limit provided by § 507(b)(4).

16. **Business Expenses.** In addition, the Debtors customarily reimburse their employees for business expenses incurred in performing their duties such as travel, meals, mileage, and telephone use. While the Debtors are not aware of any such outstanding claims by Employees as of the Petition Date, there may be outstanding pre-petition Employee expense reimbursement claims that have not been paid and the Debtors acknowledge that there may be Employees that may not have submitted all claims timely. The Debtors seek authority to pay such pre-petition business expenses in the ordinary course and to honor outstanding checks related thereto, if any, up to the maximum limit provided by § 507(b)(4).

17. **Health and Welfare Benefits.** Furthermore, the Debtors customarily pay their employees' medical, vision, dental, disability and life insurance premiums (subject to various employee contributions). Debtors seek authority to pay a $36,000 invoice to LifeMap for April 2014 for short-term and long-term disability and Accidental Death and Dismemberment insurance. The Debtors believe that they are current with respect to any other employee related insurance policies, but in the event that there are some premiums that were due and outstanding prior to the Petition Date, the Debtors request authority to make payments for pre-petition health and welfare premiums up to the limits provided by § 507(a)(5).

18. **Medical / Dependent Care Flex Spending Accounts and Health Reimbursement Accounts.** In the ordinary course of their business, for those employees who so elect, the Debtors deduct amounts from wages for contribution to the Flex/HSA Program. Historically, the Flex claims have been processed and paid by Allegiance Benefit Plan Management, Inc. ("Allegiance") which is then reimbursed by the Debtors. Allegiance has recently informed the Debtors that it will require a deposit to continue to process claims. The Debtors are currently negotiating the amount of that deposit. To the best of the Debtors' knowledge, all claims submitted as of the Petition Date have been paid. The Debtors request authority to pay recurring deposits and administrative fees to Allegiance and/or the third party administrator for HSA claims (collectively, the "Third Party

RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\1st Day\Employ\v8.docx

6 MOTION FOR ORDER AUTHORIZING THE DEBTORS TO (i) PAY PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS

Case: 14-51955    Doc# 22    Filed: 05/06/14    Entered: 05/06/14 17:05:16    Page 6 of 10

Administrators") to allow processing of pre-petition and post-petition claims under these plans.

19. The Flex/HSA Program will be cancelled effective as of May 1, 2014. The Debtors request, to the extent they are legally able to do so, permission to refund unspent contributions to the Employees, up to the maximum limit provided by § 507(b)(4). In addition, there are approximately five (5) employees who were terminated prior to the Petition Date from whom deductions to the program were withdrawn, but who were never enrolled in the Flex/HSA Program. These amounts belong to these employees and are not property of the estates. In an abundance of caution, the Debtors request authorization to refund these amounts.

### III. MEMORANDUM OF POINTS AND AUTHORITIES

20. A chapter 11 debtor is authorized to use property of the estate other than in the ordinary course of business pursuant to Bankruptcy Code § 363(b)(1). The bankruptcy court has discretion regarding 363(b) motions requesting use, sale or lease of property of the estate outside the ordinary course of business. *See In re North Brand Partners*, 200 B.R. 653, 656 (9th Cir. BAP 1996). The debtor is required to show that a sound business purpose justifies the use, sale or lease of property of the estate under § 363(b)(1). *See, e.g., Stephens Indus., Inc., v. McClung*, 789 F.2d. 386, 389-90 (6th Cir. 1986); *Committee of Equity Sec. v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d. 1063, 1071 (2d Cir. 1983); *In re Lady H Coal Co., Inc.,* 193 B.R. 233, 243 (Bankr. S.D. W. Va. 1996); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-176 (D. Del. 1991).

21. The debtor has the burden of demonstrating a valid use, sale or lease of property of the estate outside the ordinary course of business. *See In re Lionel Corp.*, 722 F.2d. at 1070-71. After the debtor has articulated a rational business judgment, a presumption exists that the business decision was made on an informed basis, in good faith, and in the honest belief that the action was in the best interest of the Debtor. *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc., (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*citing Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). A party who objects to the use, sale or lease of the estate s property must produce evidence supporting its objection. *See, e.g., In re Montgomery Ward Holding Corp.*. 242 B.R. 147, 155 (Bankr.D.Del. 1999) (*citations omitted*).

22. It is generally recognized that the continuation of a stable employee base and

RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\1st Day\Employ\v8.docx

7   MOTION FOR ORDER AUTHORIZING THE DEBTORS TO (i) PAY PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS. . .

Case: 14-51955    Doc# 22    Filed: 05/06/14    Entered: 05/06/14 17:05:16    Page 7 of 10

harmonious employee relations in operating a chapter 11 case is critical to a successful reorganization. As the court noted in *In re Chateauguay Corporation*, "[e]mployee good will and contentment is an asset which is vital to the continuation of a Debtors' business operations and its ability to effectively reorganize during the Chapter 11 process." 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990) (*citations omitted*).

23. The Debtors believe that their failure to satisfy outstanding Employee Obligations would create concern and discontent among its Employees, and adversely affect the Employees' esprit de corps. Moreover, it would undermine the Debtors' ability to retain their Employees. If the Debtors cannot promptly assure their Employees that accrued PTO will be honored, immediate and irreparable harm may result due to the employees relocating or resigning prior to the consummation of a successful reorganization. The Debtors' ability to honor payroll, expense reimbursements, insurance, retirement benefits, workers' compensation benefits and accrued PTO is important to maintaining continuity and order to the Debtors' business activity through retention of their Employees. At this critical state of these cases, the Debtors cannot risk a significant disruption in their operations caused by low employee morale.

24. Additionally, the payment of payroll taxes is required by law. As a general rule, "any person required to collect, or truthfully account for and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax or willfully attempts in any manner to evade or defeat any such tax or payment thereof, shall, . . . be liable to a penalty equal to the total amount of tax evaded or not collected or not accounted for and paid over." 26 U.S.C. § 6672 (2005).

25. Such "trust fund" tax liabilities include social security and income taxes withheld from the paycheck of employees. The Debtors' failure to withhold such taxes subjects them to penalties in addition to the tax amounts they must turnover to the federal and state governments. Hence, to further preserve the assets of the Debtors' estates and comply with the requirements of taxing authorities with respect to such trust fund taxes, the Debtors request the Court to allow them to deduct and turnover payroll taxes upon payment of their employees' salaries and wages.

26. The Debtor's Flex administrator has indicated to the Debtors that it will not process

RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\1st Day\Employ\v8.docx

8 MOTION FOR ORDER AUTHORIZING THE DEBTORS TO (i) PAY PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS

Case: 14-51955    Doc# 22    Filed: 05/06/14    Entered: 05/06/14 17:05:16    Page 8 of 10

Flex claims without an advance deposit and payment of all administrative fees. The Debtors believe that such payments are within the ordinary course of business. In an abundance of caution, the Debtors request authority to pay a deposit and administrative fees to the Third Party Administrators in order that any claims pending under the Flex/HSA Program may continue to be processed.[7] The Debtors also intend to terminate the Flex/HSA Plan effective as of May 1, 2014. To the extent they are legally able to do so, the Debtors request authority to refund all unused flex spending contributions to the Employees upon termination of the Flex/HSA Program.

27. The Debtors have sufficient operating cash to satisfy the foregoing Employee Obligations as they come due in the ordinary course of the Debtors' business. Moreover, the accrued PTO for all Employees will be honored up to the $12,475.00 per employee limit set by § 507(a)(4).[8] The cost of the pre-petition medical insurance, workers' compensation premiums, and other employee contributions is not expected to exceed the amount limitation per employee pursuant to § 507(a)(5).[9] In addition, the Debtors believe that the relevant time periods for which payment is requested fall within the 180 days prior to the filing of the petition as required by §§ 507(a)(4) and (a)(5). As these employees are necessary to maintain the value of the Company as a going concern, the Debtors believe that such a request is modest in light of the benefit to the estates. Permitting the Debtors to satisfy their Employee Obligations is grounded on sound business judgment consistent with §§ 363, 1107 and 1108 of the Code.

28. To further maintain the continuity and preserve the morale of the Debtors' Employees, and to maintain the viability of the Debtors' business pending a sale of its assets, the

---

[7] Some employees that were terminated prior to the Petition Date may have contributed to the Flex/HSA Program, but may never have been enrolled in the Plan. The Debtors intend to reimburse these employees for said contributions.

[8] Section 507(a)(4) provides that an employee is entitled to priority to the extent of $12,475.00 earned within 180 days before the date of the filing of the petition or the date of the cessation of the Debtors' business, whichever occurs first, for wages, salaries, or commission, including vacation, severance, and sick leave pay earned by an individual.

[9] Section 507(a)(5) provides priority to claims for contributions to an employee benefit plan arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the Debtors' business, whichever occurs first, but only for each such plan, to the extent of (i) the number of employees covered by each such plan multiplied by $12,475 less (ii) the aggregate amount paid to such employees under paragraph 4 of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\1st Day\Employ\v8.docx

9 MOTION FOR ORDER AUTHORIZING THE DEBTORS TO (i) PAY PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS

Case: 14-51955    Doc# 22    Filed: 05/06/14    Entered: 05/06/14 17:05:16    Page 9 of 10

Debtors respectfully request that this Court grant the relief requested herein.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order:

1. Granting the Debtors' Employee Benefits Motion;

2. Authorizing the Debtors, in their sole discretion, to pay outstanding pre-petition salaries, wages, and business expenses and PTO, refund any unspent flex contributions upon the termination of the Flex/HSA Program, and honor any other outstanding Employee Obligations up to the maximum limit provided in Bankruptcy Code § 507(a)(4) such that no one employee will be paid or receive more than $12,475 on account of the Employee Obligations;

3. Authorizing the Debtors to pay payroll taxes and fees;

4. Authorizing the Debtors, in their sole discretion, to maintain payment of employees' health and welfare insurance including any accrued pre-petition premiums, claims, and fees up to the maximum limit provided in Bankruptcy Code § 507(a)(5);

5. Authorizing and requiring applicable banks and other financial institutions to receive, process, honor, and pay all checks presented for payment by each employee and to honor all fund transfer requests made by the Debtors relating to the foregoing Employee Obligations;

6. Authorizing the Debtors in their sole discretion to pay a deposit and administrative fees to Third Party Administrators in order to allow processing of claims through the Flex/HSA Program;

7. Authorizing the Debtors to and to return contributions made to those terminated employees who were never enrolled in the Flex/HSA Program; and

8. For such other relief as this Court deems just and proper.

Dated: May 6, 2014      **DORSEY & WHITNEY LLP**

By: */s/ Robert A. Franklin*
     Robert A. Franklin
     Attorneys for Debtor

RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\1st Day\Employ\v8.docx

10 MOTION FOR ORDER AUTHORIZING THE DEBTORS TO (i) PAY PRE-PETITION EMPLOYEE WAGES, OBLIGATIONS AND CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS

Case: 14-51955   Doc# 22   Filed: 05/06/14   Entered: 05/06/14 17:05:16   Page 10 of 10