JOHN WALSHE MURRAY (074823)
STEPHEN T. O'NEILL (115132)
ROBERT A. FRANKLIN (091653)
THOMAS T. HWANG (218678)
DORSEY & WHITNEY LLP
305 Lytton Avenue
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile: (650) 857-1288
Email: murray.john@dorsey.com
Email: oneill.stephen@dorsey.com
Email: franklin.robert@dorsey.com
Email: hwang.thomas@dorsey.com

Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| **CLEAREDGE POWER, INC.**, | ) Case No. 14-51955-CN-11 |
| Employer Tax I.D. No. 20-0119415 | ) |
| | ) |
| **CLEAREDGE POWER, LLC** | ) Case No. 14-51956-CN-11 |
| Employer Tax I.D. No. 06-1517615 | ) |
| | ) |
| **CLEAREDGE POWER INTERNATIONAL SERVICE, LLC** | ) Case No. 14-51960-CN-11 |
| Employer Tax I.D. No. 27-3468551 | ) |
| | ) Cases Jointly Administered |
| Debtor(s). | ) Under Chapter 11 |
| | ) |
| 920 Thompson Place, Suite 100 | ) Date: July 11, 2014 |
| Sunnyvale, California 94085 | ) Time: 4:00 p.m. |
| | ) Place: 280 S. First Street, Room 3070 |
| | ) San Jose, CA 95113 |
| | ) Judge: Honorable Charles Novack |

### MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

RAF:sb
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\Sale\Mot v11.docx.doc

MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN
ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 1 of 33

**Proposed Purchaser:** Doosan Corporation (Doosan Corporation and/or any other person(s) that it may designate are herein collectively referred to as "Doosan"), subject to higher and better bid.[1]

**Potentially Affected Lien, Claim, Encumbrance and Other Interest Holders:**

**All persons provided notice of the sale, including, but not limited to, persons listed as creditors on the Debtors' Schedules or who have filed a Proof of Claim or request for notice in the Debtors' cases.**
*(Any person who does not know if they were listed as a creditor in the Debtors' schedules may check the bankruptcy Schedules posted on the website created by the court-appointed notice and claims agent (*www.clearedgepowerreorg.com*), or may contact the Debtors' attorneys: Robert A. Franklin or Thomas T. Hwang, via telephone at (650) 857-1717 or email at franklin.robert@dorsey.com or hwang.thomas@dorsey.com.*

| | |
|---|---|
| **Talmer Bank and Trust** | **Gileno Distribution Services** |
| **REF Investments Ltd.** | **Hartford Distributors Inc.** |
| **Crestmark Bank** | **Johnson Matthey Fuel Cells** |
| **The J.E. Shepard Company** | **Xerox Corp. and Xerox Business Service[3]** |
| **Shepard-Pola, Incorporated** | |
| **VFS, LLC** | |
| **CM TFS LLC** | |
| **Dell Financial Services LLC** | |
| **US Bancorp Equipment Finance, Inc. and U,S.** | |
| **Bank** | |
| **Gelco Corporation d/b/a GE Fleet Services** | |
| **Clean Energy Finance and Investment Authority** | |
| **Connecticut Innovations, Inc.** | |
| **Samsung Everland[2]** | |

---

[1] The Sale (as defined below) will be free and clear of all liens, claims, encumbrances and other interests as provided by that certain ASSET PURCHASE AGREEMENT between Doosan and the Debtors (the "Purchase Agreement"). Terms not separately defined herein shall have the meanings ascribed to them in the Purchase Agreement. A true and correct copy of the Purchase Agreement is attached to the Fan Declaration (as defined below) as Exhibit "A." All exhibits referred to herein are incorporated herein by reference. Pursuant to the terms and provisions of the Purchase Agreement, Doosan may designate any person or persons to be the purchaser of the purchased assets and the assignee with respect to any assumed and assigned executory contract or unexpired lease.

[2] These parties have filed UCC-1 financing statements against one or more of the Debtors and are discussed in greater detail in this Motion commencing at Sections III.F.1- 4, pp 17-21 below. Pursuant to the Purchase Agreement, Talmer Bank and Trust, REF Investments, Ltd., Crestmark Bank and VFS, LLC (CM TFS LLC) may elect to consent to the proposed sale of their respective collateral free and clear of their interests in exchange for a specified payment to the Debtors in respect of such collateral. J.E. Shepard Company and Shepard-Pola, Inc. are the Debtors' landlords for the Debtors' facilities at 90 Bidwell Road, South Windsor, CT and 195 Governors Highway, South Windsor, CT, respectively, and filed UCC-1 financing statements with respect to manufacturing equipment and fixtures located at such facilities. The Debtors anticipate that the leases will be assumed and assigned to the successful purchaser subject to the lien. Dell Financial Services LLC, U.S. Bancorp Equipment Finance, Inc. and Gelco Corporation filed UCC-1 financing statements with respect to specific equipment or other personal property financed by such parties. Substantially all of the Debtors' personal property will be sold in the sale transaction. Any personal property included in the sale that is subject to a conditional sales contract, duly perfected by a UCC-1 filing, will be sold to the successful purchaser free and clear of such liens and such liens will attach only to the proceeds of the sale. Equipment that is the subject of a true lease will not be sold but may be subject to assumption and assignment to the successful purchaser which is the subject of the separate Assumption Motion (as defined

MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN
ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS

B-G Mechanical Service, Inc.
California Power Partners Inc.
CSI Electrical Contractors, Inc.
DURUS Construction, LLC
Loureiro Engineering Associates, Inc.
Galasso Trucking & Rigging, Inc.
New England Mechanical Services, Inc.
Perham Construction
Pinto & Teger Electric Corp
Otto H. Rosentreter Company
West-Fair Electric Contractors, Inc.
Zimmerman's Commercial Flooring Inc.[4]

| | |
|---|---|
| Advantech Industries, Inc. | Javelin Logistics Corporation |
| Metro Mold & Design, LLC | D.T. Gruelle Company Group, LLC d/b/a |
| Rosemount Inc. | D.T. Gruelle Company |
| Toray Composites (America), Inc. | J.M. Rogers Co. Inc |
| Trane US, Inc. | SDV (USA), Inc. |
| Universal Sheet Metal, Inc. | Network Global Logistics, LLC[6] |
| W.W. Grainger, Inc.[5] | |

below) scheduled for hearing together with this motion. Clean Energy Finance and Investment Authority and Connecticut Innovations, Inc. filed UCC-1 financing statements with respect to specific equipment or other personal property in connection with obligations related to grants provided to the Debtors by such parties. The Debtors anticipate that the related grant agreements will not be assumed and assigned to the successful purchaser. Any personal property included in the sale that is subject to a lien securing any obligations arising thereunder will be sold to the successful purchaser free and clear of such lien and such lien will attach only to the proceeds of the sale. Samsung Everland filed a UCC-1 financing statement with respect to specified personal property, including the proceeds of a specified customer contract, in connection with obligations under a purchase order that is not yet effective. The Debtors do not believe that Samsung Everland has a lien on any of their property. To the extent, however, that such party does have a lien on any personal property of the Debtors, any personal property included in the sale that is subject to such lien will be sold to the successful purchaser free and clear of such lien and such lien will attach only to the proceeds of the sale.

[3] These parties are listed on the Debtors' Schedules of Assets and Liabilities [Docket No. 70] as possessing secured claims. The Debtors do not believe that any such person has a lien on any of their property. To the extent, however, that any such person does have a lien on any personal property of the Debtors, it is anticipated that any personal property included in the sale that is subject to such lien will be sold to the successful purchaser free and clear of such lien and such lien will attach only to the proceeds of the sale.

[4] These parties have asserted mechanics liens, preliminary notices or similar liens, or notices thereof, against real properties owned by third parties and are discussed in greater detail in this Motion commencing at Section III.F.5, pp 21-22 below. If certain of the Debtors' executory contracts and unexpired leases are included in the sale as Assumed Contracts, the claims underlying such liens may be paid in full and such liens extinguished. To the extent that any such party has a lien on any personal property of the Debtors and such lien is not so extinguished, it is anticipated that any personal property included in the sale will be sold to the successful purchaser free and clear of such party's lien on such assets and such lien will attach only to the proceeds of the Sale.

[5] These parties have asserted reclamation claims pursuant to Section 546(c) of the Bankruptcy Code (as defined below) and are discussed in greater detail in this Motion commencing at Section III.F.7, p. 23 below. It is anticipated that any personal property subject to any interests of any such party in relation to any such claim included in the sale will be sold to the successful purchaser free and clear of such interests and such interests, if not extinguished as a result of such sale, will attach only to the proceeds of the sale.

Case: 14-51955    Doc# 148    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 3 of
33

**United States Department of Energy**

**All Parties to Executory Contracts and Unexpired Leases Subject to Assumption and Assignment:**

See separate notice of hearing on MOTION TO AUTHORIZE DEBTORS TO ASSUME AND ASSIGN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF ITS ASSETS (11 U.S.C. § § 363 AND 365 (the "Assumption Motion").

---

[6] These parties have asserted warehousemen's liens or similar possessory liens, or notices thereof, against one of the Debtors and are discussed in greater detail in this Motion commencing at Section III.F.6, pp. 22-23 below. If certain of the Debtors' executory contracts and unexpired leases are included in the sale as Assumed Contracts, the claims underlying such liens may be paid in full and such liens extinguished. To the extent that any such lien is not so extinguished, it is anticipated that any personal property subject to such lien included in the sale will be sold to the successful purchaser free and clear of such lien and such lien will attach only to the proceeds of the sale.

# TABLE OF CONTENTS

Page

I.    JURISDICTION AND VENUE ...............................................................................2

II.    **Background** ........................................................................................................2

      **A.**    Commencement of Case ...............................................................2
      **B.**    Retention of Financial Advisor ....................................................2
      **C.**    Presale Marketing Process ............................................................3
      **D.**    Approval Of The Bid Procedures ...............................................3
      **E.**    Selection of Stalking Horse Bidder .............................................4
      **F.**    Summary of Proposed Sale ...........................................................4
      **G.**    Proposed Timeline .......................................................................6
      **H.**    Distribution of Proceeds ..............................................................7
      **I.**    Additional Information .................................................................7

III.    **ARGUMENT** ...................................................................................................8

      **A.**    Applicable Law. ...........................................................................8
      **B.**    The Sale Should Be Approved as Fair, Reasonable and in the Best Interest of Creditors and the Bankruptcy Estates. ........................................................9

            i.    There is a Valid Business Justification and Good Business Reason to Support the Sale. ...................................................................................9
            ii.    The Proposed Sale Is in Good Faith; Thus, DOOSAN or the Successful Purchaser Should Be Afforded the Protections of 11 U.S.C. § 363(m).........11
            iii.    The Purchase Price Is Fair and Reasonable. ...................................12
            iv.    The Debtors Have No Relationship With Doosan ..........................13
            v.    The Debtors By And Through Gerbsman Have Adequately Marketed And Explored Alternatives to Sale and Auction of Purchased Assets ..................13

      **C.**    The Sale Procedures Established by the Court Will Encourage Meaningful Overbids on the Purchased Assets. ....................................................................................15

            i.    Overbid Procedures. ...................................................................15
            ii.    Expense Reimbursement. .............................................................15

      **D.**    Accurate and Reasonable Notice Has Been Provided. ..............................15
      **E.**    Waiver Of Federal Rule of Bankruptcy Procedure 6004(h) Is Appropriate...............16
      **F.**    The Sale Satisfies the Requirements of 11 U.S.C. § 363(f) for the Sale of the Estates' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests. ............16

IV.    **PRAYER** ...........................................................................................................24

Case: 14-51955    Doc# 148    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 5 of 33

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*240 North Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 North Brand Partners, Ltd.),*
200 B.R. 653 (9th Cir. B.A.P. 1996)................................................................9

*In re Abbotts Dairies,*
788 F.2d 143 (3rd Cir. 1986) ......................................................9, 11, 12

*In re Apex Oil Co.,*
92 B.R. 847 (Bankr. E.D. Mo. 1988) ......................................................11

*In re Curlew Valley Assocs.,*
14 B.R. 506 (Bankr. D. Utah 1981) ......................................................10

*In re Gulf States Steel, Inc. of Ala.,*
285 B.R. 497 (Bankr. N.D. Ala. 2002) ..........................................10, 13

*Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.),*
780 F.2d 1223 (5th Cir. 1986) ......................................................9

*In re Kabuto Ariz. Props., LLC,*
2009 Bankr. LEXIS 4961 (Bankr. D. Ariz. Dec. 9, 2009)..........................10

*In re Lionel Corp.,*
722 F.2d 1063 (2nd Cir. 1983)......................................................8, 9

*Otto Preminger Films, Ltd. v. Qintex Entertainment, Inc. (In re Qintex Entertainment, Inc.),*
950 F.2d 1492 (9th Cir. 1991) ......................................................8

*In re Southern Biotech, Inc.,*
37 B.R. 318 (Bankr. M.D. Fla. 1983) ......................................................10

*T.C. Investors v. Joseph (In re M Capital Corp.),*
290 B.R. 743 (9th Cir. B.A.P. 2003)......................................................11

*Thomas v. Namba (In re Thomas),*
287 B.R. 782 (B.A.P. 9th Cir. 2002)......................................................11

*Walter v. Sunwest Bank (In re Walter),*
83 B.R. 14 (9th Cir. B.A.P. 1988)..........................................9, 10, 11

*In re Wilde Horse Enterprises, Inc.,*
136 B.R. 830 (Bankr. C.D. Cal. 1991)......................................................8, 9

Case: 14-51955    Doc# 148    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 6 of 33

**Statutes**

11 U.S.C. § 363 ....................................................................................................2, 12, 13

11 U.S.C. § 363(b) ....................................................................................................8, 9

11 U.S.C. §§ 363(b), (f) and (m) ....................................................................................2

11 U.S.C. § 363(f)(2) ..........................................................17, 18, 19, 20, 21, 24

11 U.S.C. § 363(m) ..........................................................................11, 12, 25

11 U.S.C. § 363(n) ..........................................................................................12

28 U.S.C. §§ 157 and 1334 ............................................................................2

28 U.S.C. § 157(b)(2) ....................................................................................2

28 U.S.C. §§ 1408 and 1409 ........................................................................2

Fed. R. Bankr. P. 6004(f)(1) ........................................................................8

Fed. R. Bankr. P. 6004(h) ..................................................................16, 26

Fed. R. Bankr. P. 2002, 6004 ......................................................................2

Fed. R. Bankr. P. 6004 ..................................................................................8

Fed. R. Bankr. P. 6004-1 ..............................................................................2

B.L.R. §§ 503(b) and 507(a)(2) ................................................................15

B.L.R. § 507 ....................................................................................................7

B.L.R. § 546(c) ............................................................................................23

B.L.R. §§ 1107 and 1108 ..............................................................................2

RAF:sb
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\Sale\Mot v11.docx.doc

MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN
ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS

ClearEdge Power, Inc. ("CEP Inc."), ClearEdge Power LLC ("CEP LLC") and ClearEdge Power International Services LLC ("CEPIS," and collectively with CEP Inc. and CEP LLC, the "Debtors" or the "Company"), the debtors and debtors in possession in these jointly administered cases, hereby submit this motion (the "Motion") requesting entry of an order approving the sale (the "Sale") of substantially all of the Debtors' assets (the "Purchased Assets") to Doosan, subject to the submission of higher and better bids (the successful purchaser is hereinafter referred to as the "Successful Purchaser")[7], in accordance with the procedures ("Bid Procedures") set forth in SUPPLEMENT NO. 1 TO DEBTOR'S MOTION TO APPROVE BID PROCEDURES AND RELATED MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTORS [Docket No. 130].

The Debtors have received, negotiated and accepted a bid for the Purchased Assets (as defined in the Purchase Agreement) from Doosan and have designated Doosan as the "Stalking Horse Bidder," as further detailed herein. A final sale is conditioned upon the assumption and assignment of certain executory contracts and unexpired leases of the Debtors (the "Assumed Contracts"), on the terms set forth in the Assumption Motion.

By this Motion, the Debtors request that the Sale, subject to the receipt of a higher and better offer pursuant to the Bid Procedures (as defined below) be approved and the Debtors be authorized to sell the Purchased Assets free and clear of liens, claims, encumbrances and other interests, with any such liens, claims, encumbrances or interests attaching only to the proceeds of the Sale.

This Motion is based on the memorandum of points and authorities below and is supported by the DECLARATION OF DAVID B. WRIGHT IN SUPPORT OF FIRST DAY MOTIONS [Docket No. 24] (the "Omnibus Declaration"), the DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS (the "Fan Declaration"), the DECLARATION OF STEVEN R. GERBSMAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS (the "Gerbsman Declaration"), the DECLARATION OF STEPHEN T. O'NEILL IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE

---

[7] The Bid Procedures (defined below) allow bids to be made on all or some of the assets. In the event a combination of bids is determined to be the highest and best bid, the reference to the Successful Purchaser herein shall encompass multiple purchasers as applicable.

OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS (the "O'Neill Declaration"), all filed concurrently herewith[8], and on such other evidence and argument as may be presented at the hearing on the Motion.

## I.    JURISDICTION AND VENUE

1.    The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief sought herein is 11 U.S.C. § 363. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 The Motion is made is made pursuant to 11 U.S.C. §§ 363(b), (f) and (m)[9], Federal Rules of Bankruptcy Procedure 2002 and 6004 and Bankruptcy Local Rule 6004-1.

## II.    Background[10]

### A.    Commencement of Case

2.    The Debtors commenced these Chapter 11 cases with the filing of their respective Voluntary Petitions on May 1, 2014 (the "Petition Date"), and are presently operating their businesses as debtors in possession pursuant to the provisions of sections 1107 and 1108 of the Bankruptcy Code.

3.    On May 21, 2014, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). The Committee has retained counsel and a financial advisor in these cases.

4.    A detailed discussion of the Company's history, description of its business, its assets and liabilities and the circumstances that led to its need for bankruptcy relief is set forth in the Omnibus Declaration which is incorporated herein in full by reference.

### B.    Retention of Financial Advisor

5.    Effective May 1, 2014, the Debtors retained Gerbsman Partners as their investment

---

[8] In addition to other evidence as may be submitted in advance of or at the Sale Hearing, the Debtors anticipate the filing of a declaration by Doosan and such other persons who are qualified bidders, providing evidence in support of the good faith finding requested by this Motion.

[9] Unless otherwise specified herein, all statutory references are to Title 11 of the United States Code (the "Bankruptcy Code").

[10] This factual summary is supported by the Omnibus Declaration and the Declarations filed in support of the Motion.

RAF:sb
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\Sale\Mot v11.docx.doc

2    MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

banker and financial advisor, to assist the Company in evaluating restructuring alternatives, maximizing the Company's enterprise value, canvassing the marketplace for potential investors or buyers, and managing the Debtors' efforts to market and sell the Company's assets.

### C.     Presale Marketing Process

6.     Upon the commencement of these cases, Gerbsman Partners immediately prepared a sales memorandum detailing the Company and its history, the Company's assets and the acquisition opportunity, and provided the memorandum and other information related to the proposed Sale and Bid Procedures, to over 800 prospective bidders.

7.     As set forth more fully in the Gerbsman Declaration and in Paragraphs 32-36 below, the Debtors, through Gerbsman Partners, have generated and received substantial interest in the Sale transaction opportunity, and, even after identification of Doosan as the Stalking Horse Bidder and the execution of the Purchase Agreement, the Debtors have continued to market the acquisition opportunity.  The efforts of Gerbsman Partners and the Debtors led to the identification of Doosan as a potential purchaser.

8.     The Committee, the members of which have significant experience and expertise in the industry, and its professionals have been actively involved with the sale and marketing process since appointment in these cases.  The Committee supports the proposed Sale and the relief sought in the Motion.[11]

### D.     Approval Of The Bid Procedures

9.     At a hearing on June 26, 2014, on the Debtors' AMENDED MOTION FOR ORDER APPROVING BID PROCEDURES AND RELATED MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTORS [Docket No. 61], the Court approved certain procedures (the "Bid Procedures") with respect to the submission of overbids.  A copy of an ORDER APPROVING BID PROCEDURES AND RELATED MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTORS (the "Bid Procedures Order") which has been submitted by the Debtors to the Court for approval is attached to the O'Neill Declaration as its Exhibit "A."  If there are Qualified Bidders (as defined in the Bid Procedures

---

[11] The Committee expressly reserves all rights in connection with the proposed Sale and all transactions, claims and/or transfers relating thereto or resulting therefrom

1  Order), an auction (the "Auction") will be held at the offices of Dorsey & Whitney LLP on July 9,

2  2014 at 9:00 a.m.  A copy of the Bid Procedures approved in concept by the Court is attached to the

3  O'Neill Declaration as Exhibit "B."[12]

4  **E.    Selection of Stalking Horse Bidder**

5  10.    In accordance with the Bid Procedures, the Debtors negotiated with and chose

6  Doosan as the Stalking Horse Bidder.  This designation allows Doosan to be reimbursed for its out-

7  of-pocket costs, fees and expenses of up to $1,500,000 in the event (a) the Purchase Agreement is

8  terminated by Doosan as a result of a breach or misrepresentation arising from the Debtors' gross

9  negligence, willful misconduct or bad faith, (b) Doosan is not the successful bidder at the Auction or

10 (c) the Court otherwise approves a Competing Transaction (as defined in the Purchase Agreement).

11 11.    The Debtors and the Committee believe that the Sale, subject to receipt of a higher

12 and better offer for the Purchased Assets in accordance with the Bid Procedures, is in the best

13 interest of the Debtors' estates and creditors.  Both the Debtors and the Committee believe that the

14 Debtors' business and assets have been exposed to a wide universe of probable bidders and are

15 convinced that this process will result in maximizing the value of the Debtors' assets for the benefit

16 of their creditors.  The anticipated assumption and assignment of many of the Debtors' unexpired

17 leases and executory contracts pursuant to the Assumption Motion is expected to substantially

18 reduce overall claims against the Debtors.[13]

19 **F.    Summary of Proposed Sale**

20 12.    The following is a general description of the key points contained in the Purchase

21 Agreement by and between Doosan and the Debtors.  This description is offered solely for the

22 convenience of interested parties, potential overbidders and the Court.  It is recommended that all

23

24 ────────────

25 [12]Although the Court orally approved the Bid Procedures at the hearing on June 26, 2014, the Bid
   Procedures Order has not yet been entered of the time of this Sale Motion.  The form of the Bid Procedures

26 and the Bid Procedures Order attached to the O'Neill Declaration have been approved by counsel for the
   Committee, Doosan and the United States Trustee, and are anticipated to be entered on the Court's Docket on
   June 30, 2014 in substantially the form attached to the O'Neill Declaration.

27 [13] In connection with the Sale Motion, the Debtors have concurrently filed a motion to assume and

28 assign executory contracts and unexpired leases (collectively, the "Assumed Contracts") to Doosan or other
   Successful Purchaser.

Case: 14-51955    Doc# 148    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 11 of
33

parties review the Purchase Agreement to gain a full and complete understanding of its contents.[14]

- <u>Purchased Assets</u> – Doosan will purchase all of the Debtors' right, title and interest of any nature whatsoever in the assets identified in the Purchase Agreement, including, without limitation, the Assumed Contracts, licenses, permits and governmental authorizations required to operate the business, all avoidance claims or causes of action under Chapter 5 of the Bankruptcy Code or any similar actions under any other applicable law as against Designated Parties, free and clear of liens, claims, encumbrances and other interests, with the exception of certain Excluded Assets. Excluded Assets include cash, certain contracts and leases as designated by Doosan or the Successful Purchaser, the assets of any employee benefit plan, and other identified assets.

- <u>Consideration</u> – The purchase price for the Purchased Assets shall be equal to the sum of (a) $20,000,000 in cash for all Purchased Assets identified in the Purchase Agreement other than assets that are subject to an Encumbrance securing certain specified Secured Facilities ("<u>Encumbered Assets</u>"), (b) an aggregate amount of up to $15,000,000 for all Encumbered Assets to the extent provided in Schedule 2.4 to the APA, subject to the consent of the lenders under the applicable Secured Facility to sale of such Encumbered Assets free and clear of all such Encumbrances, and (c) assumption of certain Liabilities as expressly set forth in the Purchase Agreement (including, without limitation, payment of Cure Costs in respect of Assumed Contracts up to an aggregate amount of $12,899,000, subject to certain limitations set forth in the Purchase Agreement).

- <u>Assumed Contracts</u> – It is anticipated that many of the Debtors' executory contracts and unexpired leases will be assumed by the Debtors and assigned to Doosan. However, Doosan has the right to add or remove any contracts or leases from the list of Assumed Contracts up to three (3) days before the date of the Closing. Other qualified bidders at the Auction may do the same.

- <u>Transfer Taxes</u> – The parties each shall pay and shall be responsible for one half of any transfer taxes (and related costs, fees and expenses) imposed on or payable in connection with the transactions under the Sale. The parties agree to allocate the purchase price for tax purposes in accordance with certain schedules and methodologies detailed in the Purchase Agreement.

- <u>Representations, Warranties and Covenants</u> – The Purchase Agreement includes representations, warranties and covenants of the Debtors and Doosan that are customary for transactions of this type. Among other things, the Purchase Agreement also provides that the Debtors shall retain all liability to provide health care continuation coverage under the Consolidated Omnibus Budget Reconciliation Act to certain former employees and requires the Debtors to maintain in effect a group

---

[14] A true and correct copy of the executed Purchase Agreement with all exhibits and schedules (except Schedules 4.1(h) and 4.1(k), which are being submitted under seal) is attached hereto as **Exhibit "A".** In the event of any inconsistency between the description provided herein and the Purchase Agreement, the Purchase Agreement shall control. This description is offered solely as an aid to permit interested parties and potential overbidders a convenient place to review the key terms contained in the Purchase Agreement.

Case: 14-51955    Doc# 148    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 12 of 33

health plan for so long following the Sale as is necessary to ensure that they can satisfy their obligations in respect of such coverage. With limited exceptions, the representations and warranties do not survive the Closing of the Sale. Covenants and agreements which contemplate performance after the Closing shall survive the Closing in accordance with their terms.

- <u>Bid Protections</u> – In the event that (a) the Purchase Agreement is terminated by Doosan as a result of a breach or misrepresentation arising from the Debtors' gross negligence, willful misconduct or bad faith, (b) Doosan is not the successful bidder at the Auction or (c) the Court otherwise approves a Competing Transaction (as defined in the Purchase Agreement), the Purchase Agreement obligates the Debtors to reimburse Doosan for its out-of-pocket costs, fees and expenses up to the amount of $1,500,000. The Closing must occur by July 18, 2014 (subject to automatic extension by 30 calendar days if the only condition to the Closing that has not been satisfied or, to the extent permitted, waived (other than those conditions that by their nature can only be satisfied at or immediately prior to the Closing) is Doosan's receipt of all requisite clearances or approvals under the antitrust laws of the Republic of Korea), or Doosan may terminate the Purchase Agreement.

13.     In the event the Sale to Doosan is not consummated in accordance with the Purchase Agreement, the Back-up Bidder (as defined in the Bid Procedures) jointly designated by the Debtors and the Committee shall be declared the Successful Bidder(s) (as defined in the Bid Procedures) in accordance with the Bid Procedures and any Alternate Back-up Bidder(s) (as defined in the Bid Procedures) may jointly be designated as Back-up Bidder(s) by the Debtors and the Committee.

**G.     Proposed Timeline**

14.     Doosan requires that the closing of the Sale occur on or before July 18, 2014 (subject to automatic extension by 30 calendar days if the only condition to the Closing that has not been satisfied or, to the extent permitted, waived (other than those conditions that by their nature can only be satisfied at or immediately prior to the Closing) is Doosan's receipt of all requisite clearances or approvals under the antitrust laws of the Republic of Korea), because the Debtors have significant cash flow constraints that could damage the Company's operations if not remedied. The Debtors' business operations, with the exception of servicing of customers, have been suspended to conserve funds pending the acquisition of its business. It is imperative that the Sale close so that customers can be assured that the business will continue to operate. The Debtors believe that other potential bidders will likewise require a closing date in the same time frame.

/ / /

Case: 14-51955     Doc# 148     Filed: 06/30/14     Entered: 06/30/14 13:44:57     Page 13 of 33

## H. Distribution of Proceeds

15. Due to numerous contingencies, potential outcomes of disputed amounts and unidentified and/or unliquidated claims and charges (including, without limitation, tax claims, WARN Act Claims, rejection claims, section 503(b)(9) claims, post-Closing fees, professional fees, and other expenses of administration which are currently unknown) and other unknown factors (including, without limitation, whether lienholders elect to consent to the Sale, as discussed further below in Paragraph 17, the amount of claims asserted and allowed in the bankruptcy cases likely will vary substantially from the amounts estimated herein. Moreover, the actual net proceeds from the Sale which are available for distribution to unsecured creditors may vary significantly based on the purchase price following the auction process described above, improvement of particular deal points by bidders, and variance in the estimated administrative, priority and tax claims that are paid ahead of general unsecured creditors.

16. The Purchase Agreement provides that the Debtors pay from the proceeds of the Sale: (a) all accrued and unpaid vacation and, if applicable, sick leave for the period from and after the Petition Date to the Closing Date of remaining employees (solely to the extent that claims for such payments would be entitled to priority under section 507 of the Bankruptcy Code) and (b) the Expense Reimbursement in the event Doosan is not the Successful Purchaser. Accordingly, pursuant to this Sale Motion, the Debtors request authority to pay such amounts.

## I. Additional Information

17. To assist the Court and parties in evaluating the sale and the best interests of creditors, the following is a summary of the Debtors' assets and expected claims of creditors. Additional details are set forth in the Fan Declaration.

    a. **Assets**: The Company's consolidated balance sheet for the fiscal quarter ending March 31, 2014, lists assets with a book value of $189,275,000, liabilities of $134,198,000 and stockholder's equity of $55,078,000. In fiscal 2013, the Company had revenues of $69,287,000.

    b. **Secured Claims**: The Debtors' Bankruptcy Schedule D lists the secured claims asserted against the estates which aggregate to $30,945,649.97. Secured claims asserted against the Company include security interests in deposit accounts, protective filings for lease agreements (and as such are not true secured obligations), interests pursuant to sale-leaseback transactions, warehousemen's

liens, mechanics liens, and security interests pursuant to a loan transaction with one of the Debtors' subsidiaries.

    c.   **Administrative claims**: These claims include fees and costs of professionals for the Debtors and the Committee and section 503(b)(9) claims for goods received by the Debtors within twenty (20) days of the Petition Date. The Debtors estimate these claims to be approximately $4,000,000. In the event (a) the Purchase Agreement is terminated by Doosan as a result of a breach or misrepresentation arising from the Debtors' gross negligence, willful misconduct or bad faith, (b) Doosan is not the successful bidder at the Auction or (c) the Court otherwise approves a Competing Transaction (as defined in the Purchase Agreement), it will be entitled to reimbursement of its expenses up to $1,500,000 as an administrative expense.

    d.   **Priority Claims:** Unpaid priority claims of employees as of the date of this Motion are estimated at approximately $1,610,202. In addition, anticipated claims of former employees under the WARN Act[15] could be as much as $3,500,000.

    e.   **General Unsecured Claims**: These claims consist of the non-priority balance of employee claimants, WARN Act claimants and claimants listed under Schedule F of the Debtors' Schedules and approximate $40,000,000.

# III.    ARGUMENT

## A.    Applicable Law.

18.    Bankruptcy Code Section 363(b) and Rule 6004 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P.") authorize a debtor to sell assets of the estate other than in the ordinary course of business, after notice and a hearing. See, e.g., *Otto Preminger Films, Ltd. v. Qintex Entertainment, Inc. (In re Qintex Entertainment, Inc.)*, 950 F.2d 1492, 1495 (9th Cir. 1991). In accordance with Fed. R. Bankr. P. 6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or public auction. See Fed. R. Bankr. P. 6004(f)(1).

19.    Certain circumstances necessitate and allow for the sale of virtually all of the estate's property prior to confirmation of a plan. *In re Lionel Corp.,* 722 F.2d 1063, 1070 (2nd Cir. 1983) ("There must be some articulated business justification . . . before the bankruptcy judge may order such disposition."). One of the most obvious business justifications in any sale of estate assets is the ultimate purpose of obtaining the highest price for the property sold. *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991). "In approving any sale outside the ordinary course

---

[15] The Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 – 2109

RAF:sb
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\Sale\Mot v11.docx.doc

MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955   Doc# 148   Filed: 06/30/14   Entered: 06/30/14 13:44:57   Page 15 of 33

of business, the court must not only articulate a sufficient business reason for the sale, it must further find it is in the best interest of the estate, i.e., it is fair and reasonable, that it has been given adequate marketing, that it has been negotiated and proposed in good faith, that the purchaser is proceeding in good faith, and that it is an 'arms-length' transaction." *Id.* Here, the Debtors believe that their ability to select the highest and best bidder at a Court-supervised auction enhances and benefits the marketing process by providing a motivation for bidders to submit a qualified bid with a high market value.

### B. The Sale Should Be Approved as Fair, Reasonable and in the Best Interest of Creditors and the Bankruptcy Estates.

20. Although section 363(b) does not provide an express standard for determining whether a court should approve a particular proposed sale, courts have examined (i) whether the proposed transaction has a valid business justification or good business reason, (ii) whether the sale is the result of good faith negotiations, and (iii) whether the proposed purchase price is fair and reasonable. See, e.g., *In re Abbotts Dairies*, 788 F.2d 143, 149-50 (3rd Cir. 1986); *240 North Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 North Brand Partners, Ltd.)*, 200 B.R. 653, 659 (9th Cir. B.A.P. 1996); 3 *Collier on Bankruptcy* ¶ 363.02[4] (16th ed. rev. 2011) ("[C]ourts generally apply standards that, although stated various ways, represent essentially a business judgment test."). All three of these factors are satisfied here.

#### i. There is a Valid Business Justification and Good Business Reason to Support the Sale.

21. The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter),* 83 B.R. 14, 15-16 (9th Cir. B.A.P. 1988) applied a flexible, case-by-case test to determine whether a sound business purpose justifies a proposed sale under section 363(b). Adopting the reasoning of the Fifth Circuit in *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) and the Second Circuit in In re Lionel Corp., *supra*, 722 F.2d at 1071, the Panel noted that whether a proffered justification is sufficient will depend on the specifics of the case. Therefore, the Court here should consider all salient factors pertaining to the case and act to further the diverse interests

Case: 14-51955    Doc# 148    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 16 of 33

of the debtor and creditors alike. *Walter v. Sunwest Bank*, 83 B.R. at 15-16.

22. The facts pertaining to this Sale amply justify and substantiate the Debtors' business judgment that the proposed Sale is in the best interest of their creditors and the bankruptcy estates. First, as set forth in the Fan Declaration and the Gerbsman Declaration, the Company has explored a number of strategic alternatives and has conducted an exhaustive and comprehensive marketing campaign to inform prospective buyers and solicit offers. Based on the extensive marketing of the opportunity over the past months, the Debtors do not believe that additional time will yield any additional bids than may be presented pursuant to the Bid Procedures. It is imperative that the Debtors move forward with the Sale as soon as possible because the Company does not have sufficient resources to sustain its current operations. The offer by Doosan allows the bankruptcy estates to realize a going concern value without risk of future reduction in value for the Purchased Assets, is anticipated to provide employment to some of the Debtors' employees on terms to be determined by Doosan in its sole discretion and relieve the Debtors of the liability of the Cure Costs as well as further liability under the Assumed Contracts following the Closing. Moreover, the disposition of the Purchased Assets as proposed herein, with the submission of a stalking horse bid and the implementation of Court-approved auction and bidding procedures, affords additional assurance that the highest and best price will be realized for the Purchased Assets. Notice of the proposed Sale has been provided to all persons the Debtors believe may have an interest in the Purchased Assets. The Debtors believes notice to such parties will encourage overbids for the Purchased Assets.

23. Courts have long recognized that where a sale is made in good faith and upon a reasonable basis – as the proposed Sale is here – "[t]he court will not entertain objections to a trustee's [debtor in possession's] conduct of the estate." *In re Curlew Valley Assocs.,* 14 B.R. 506, 513-514 (Bankr. D. Utah 1981); see also *In re Southern Biotech, Inc.,* 37 B.R. 318, 322-23 (Bankr. M.D. Fla. 1983); *In re Kabuto Ariz. Props., LLC,* 2009 Bankr. LEXIS 4961 at *67 (Bankr. D. Ariz. Dec. 9, 2009) ("Indeed, when applying the 'business judgment' rule, courts show great deference to a debtor's decision-making."). This is because it is the "Trustee [debtor in possession], not the Court, [that] is selling [the] property." *In re Gulf States Steel, Inc. of Ala.,* 285 B.R. 497, 516

(Bankr. N.D. Ala. 2002). In accordance with *Walter* and the foregoing cases, the Debtors submit that there is valid business justification and good business reason for the proposed Sale of the Purchased Assets on the terms contained in the Purchase Agreement and in the manner provided in the Bid Procedures Order. As such, the Debtors believe the Court should approve the Sale and allow it to move forward expeditiously.

       **ii.    The Proposed Sale Is in Good Faith; Thus, DOOSAN or the Successful Purchaser Should Be Afforded the Protections of 11 U.S.C. § 363(m)[16].**

24.    Although the Bankruptcy Code does not define "good faith," courts have found that the good faith requirement focuses principally on the disclosure of all material sale terms and absence of fraud or collusion between bidders. See, e.g., *In re Abbotts Dairies,* 788 F.2d at 147-48; see also, *In re Apex Oil Co.,* 92 B.R. 847, 869-71 (Bankr. E.D. Mo. 1988). It is typically only "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" that leads to a determination that a sale proceeding lacks good faith. *T.C. Investors v. Joseph (In re M Capital Corp.),* 290 B.R. 743, 748 n.3 (9th Cir. B.A.P. 2003) (*quoting Community Thrift & Loan v. Suchy (In re Suchy),* 786 F.2d 900, 902 (9th Cir. 1985)).

25.    While the Ninth Circuit does not require a finding of good faith be made by the Court at the time of the Sale,[17] it is clear under the circumstances of these cases that the Sale of the assets to Doosan or a competing bidder is proposed in good faith. As supported by the Fan Declaration, the Debtors and Doosan have at all times acted in good faith. The Purchase Agreement was negotiated between the Debtors and Doosan at arm's-length. Doosan is neither an "insider" nor an "affiliate" of the Debtors (as such terms are defined in the Bankruptcy Code). While Doosan may extend offers of employment to certain employees of the Company on terms to be determined by Doosan in its sole discretion, including potentially officers of the Company, the Purchase Agreement contains no

---

[16] Section 363(m) of the Bankruptcy Code provides:
    "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to any entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

[17] *See Thomas v. Namba (In re Thomas),* 287 B.R. 782, 785 (B.A.P. 9th Cir. 2002) ("[T]he Ninth Circuit does not require that a finding of 'good faith' be made at the time of sale" (internal citations omitted).

special treatment for the Debtors, the bankruptcy estates, Doosan or their respective affiliates or insiders. There is no evidence that Doosan has taken any action in violation of Bankruptcy Code Section 363(n). The Bid Procedures and the Purchase Agreement specifically provide for overbids at the Sale Hearing. The proposed Sale to Doosan is nothing more than a public auction. Finally, full disclosure of the terms of the proposed Sale transaction will be provided to creditors and other potential bidders pursuant to the notice of hearing on the Sale, which describes the material terms of the proposed Sale, the Purchase Agreement and the Bid Procedures.

26. Prospective bidders will be required to provide evidence in support of a finding of good faith with a showing to include those matters set forth at item 5 of the Court's promulgated GUIDELINES RE SALE ORDERS.

27. Based on the foregoing, Doosan, and the otherwise Successful Purchaser, if a similar showing has been made, should be deemed a good faith purchaser within the meaning of Section 363(m).

### iii. The Purchase Price Is Fair and Reasonable.

28. An auction sale is generally considered to establish sufficient value for the assets being sold. See, e.g., In re Abbotts Dairies, supra, 788 F.2d at 149. In other words, the mere fact that other parties can come forward to bid at an auction that has been noticed can satisfy the fair and reasonable price requirement of a Section 363 sale.

29. The Debtors believe that the Sale will result in the highest purchase price for the assets being sold. The Company's assets have been widely marketed including through the services of a financial advisor (Gerbsman Partners) both prior to the Petition Date and during the bankruptcy cases. The Debtors have provided notice of the Sale to all known potential bidders, thereby maximizing the possibility that competing bidders will come forward to pay a higher cash price for the Purchased Assets than offered by Doosan in the Purchase Agreement. In essence, Doosan has set the floor for the bidding at the Auction. As reasoned by the Ninth Circuit in Arnold & Baker Farms, the precise value of the Purchased Assets being sold in this instance will only be recognized at – and as a result of – the Sale of the Purchased Assets. Arnold & Baker Farms v. United States., 85 F.3d 1415, 1421 (9th Cir. 1996) ("Because each parcel of real property is unique, the precise

value of land is difficult, if not impossible, to determine until it is actually sold.").

30.     Finally, courts have recognized that a debtor is entitled to "'great judicial deference' in deciding which bid to accept as the best and highest bid." Gulf States Steel, supra, 285 B.R. at 516 (citation omitted). Here too, the Debtors are entitled to deference in determining not only the manner in which the assets are to be sold, but how the value of those assets is to be maximized. Here, based on the history and circumstances of these cases, the Debtors believe that Doosan's offer (subject to overbid at the Sale Hearing) satisfies the requirement that the price paid for the Purchased Assets be fair and reasonable.

### iv.     The Debtors Have No Relationship With Doosan

31.     The Purchase Agreement is the result of arms-length, extensive negotiations between the Debtors and Doosan. The Debtors have no connection with Doosan and no director or officer of the Debtors is an officer or director of Doosan or vice-versa.

### v.     The Debtors By And Through Gerbsman Have Adequately Marketed And Explored Alternatives to Sale and Auction of Purchased Assets

32.     Prior to the Petition Date, as a result of mounting liquidity issues, the Debtors sought to secure additional contracts with international and domestic companies, as well as additional sources of financing. The Debtors' efforts, however, were ultimately unsuccessful. The Company retained Gerbsman Partners on April 22, 2014 to explore other alternatives to entering bankruptcy, following which Gerbsman commenced a sales and marketing process in an attempt to sell the Debtors' business as a going concern. On May 1, 2014, the Debtors determined it would be within their best interests to file for bankruptcy and continue to operate its business as a going concern while effectuating a sale under Section 363 of the Bankruptcy Code.

33.     Since the Petition Date, the Debtors have continued to engage in a diligent and concerted effort to explore merger and acquisition opportunities both through Gerbsman Partners and its own direct efforts. Gerbsman Partners has sent over 800 Solicitation Packages sales letters to strategic partners, customers, competitors, venture capital firms and private equity firms for their portfolio companies, investment bankers, lawyers and fixed asset/inventory liquidators, in the United States, Europe, Israel, China and India regarding the sale opportunity. As of June 23, 2014, thirty-

three (33) interested bidders have executed non-disclosure agreements to participate in the Debtors' due diligence process. To date, six (6) nationally known equipment liquidators have inspected the Company's equipment, and two (2) multinational companies have conducted on-site due diligence. The Debtors expect at least six (6) to nine (9) potential bidders to conduct due diligence at the Debtors' Connecticut manufacturing facility and at their headquarters in Sunnyvale. There are ten (10) interested bidders who have signed non-disclosure agreements that have accessed the Debtors' data room. Sixteen (16) parties have conducted on-site inspections of the Debtors' facilities. Many potential bidders attended presentations by or meetings with management and/or Gerbsman Partners.

34. Gerbsman Partners has been actively responding to inbound inquiries from potential bidders. Weekly updates have been sent to all interested parties who executed NDA's or otherwise expressed interest. On May 31, 2014, the Committee provided an additional eighteen (18) potentially interested parties to contact. In addition, Gerbsman Partners anticipates that further inquiries, and potentially due diligence, will continue during the days leading up to the hearing on the Motion.[18]

35. As of June 29, 2014, at least eight (8) parties continue diligence for the Company's intellectual property and fixed assets. The Bid Procedures authorize bids for all or some of the assets, and for combined bids by multiple purchasers. The Debtors believe that they have identified those persons who could be interested in presenting a bid, all of whom were provided notice of the hearing on the proposed bid procedures and will be provided notice of the proposed Sale.

36. With Gerbsman Partners' assistance and guidance, the Debtors believe they have proposed a fair and efficient auction process, and achieved its goal of producing the highest and best stalking horse bidder, as well as fostering significant interest among potential bidders at the Auction. As a result of this comprehensive process, the Debtors believe that there has been extensive marketing of the Company's assets.

37. At the hearing on this Sale Motion, the Debtors and the Committee shall determine the highest and best bid(s) for some or all of the Assets and will submit the corresponding Purchase

---

[18] The Debtor will supplement the record prior to or at the hearing with respect to marketing efforts that occur from date of this Sale Motion to the Sale Hearing.

Case: 14-51955    Doc# 148    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 21 of 33

Agreement(s), together with any modifications to the Assumption Motion, for approval by the Court.

**C. The Sale Procedures Established by the Court Will Encourage Meaningful Overbids on the Purchased Assets.**

**i. Overbid Procedures.**

38. The Debtors previously formulated a bidding process that is fair and reasonable in view of the transaction size and type and which the Debtors believe will induce prospective competing bidders to present a bid. In that regard, the Debtors requested that the Court establish certain bid procedures concerning bids by other prospective buyers, resulting in entry of the Bid Procedures Order. The Bid Procedures will apply to any person wishing to present a competing bid with respect to all or some of the Purchased Assets.

**ii. Expense Reimbursement.**

39. If (a) the Purchase Agreement is terminated by Doosan as a result of a breach or misrepresentation arising from the Debtors' gross negligence, willful misconduct or bad faith, (b) Doosan is not the successful bidder at the Auction or (c) the Court otherwise approves a Competing Transaction (as defined in the Purchase Agreement), the Purchase Agreement obligates the Debtors to reimburse Doosan for its reasonable fees and expenses up to the amount of $1,500,000 (the "Expense Reimbursement") on the terms and conditions set forth in the Purchase Agreement.

40. In the event Doosan is entitled to the Expense Reimbursement, such obligation will have priority as an administrative expense under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

**D. Accurate and Reasonable Notice Has Been Provided.**

41. Pursuant to the Bid Procedures Order, the Court has authorized the manner of service with respect to the proposed Sale.

42. The Sale Notice sets forth a summary of the Bid Procedures and the terms of the Purchase Agreement and directs individuals to Debtors' counsel for additional information. The Assumption Notice provides the other parties to contracts with the proposed "cure" amounts, the date by which objections to the proposed assumption and assignment of their contract must be filed and the consequences of the failure to file an objection.

43. Evidence of service of all sale-related pleadings in accordance with the Court's Bid Procedures Order will be filed in advance of the Sale Hearing to demonstrate that all creditors and other parties-in-interest were afforded proper notice.

**E.  Waiver Of Federal Rule of Bankruptcy Procedure 6004(h) Is Appropriate.**

44. The Debtors have requested that the stay imposed by Federal Rule of Bankruptcy Procedure 6004(h) upon orders authorizing the use, sale or lease of property, be waived under the circumstances of these cases. It is in the interest of the Debtors' creditors and estates that the Sale be consummated as quickly as possible without any stay pending appeal in light of Debtors' financial condition. A delay of the Closing of the Sale may severely hinder the Debtors' operations and reduce the Company's value to the detriment of the estates. On the other hand, expedited consummation of the Sale will preserve the maximum going concern value for the Purchased Assets and will eliminate the Debtors' ongoing operational costs to the benefit of the estates.

45. The Debtors will notice the hearing on this Sale Motion to all of its creditors and other parties-in-interest, and therefore any person having any objection to the Sale Motion will be afforded a reasonable opportunity to voice any objections or concerns. Accordingly, the Debtors are aware of no prejudice that would be caused by the Court's waiver of Federal Rule of Bankruptcy Procedure 6004(h).

**F.  The Sale Satisfies the Requirements of 11 U.S.C. § 363(f) for the Sale of the Estates' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests.**

46. Pursuant to Bankruptcy Code Section 363(f), a sale of assets free and clear of liens requires the satisfaction of one of five conditions:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f).

47. Under the Purchase Agreement, certain lenders under specified Secured Facilities are afforded the choice to elect to consent to the sale of all of the assets subject to their respective security interests (a "Sale Election"), free and clear of all such interests. In the event the Sale Election is not made by all lenders with interests in that particular collateral, the assets subject to that

RAF:sb
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\Sale\Mot v11.docx.doc
16
MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN
ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955   Doc# 148   Filed: 06/30/14   Entered: 06/30/14 13:44:57   Page 23 of 33

security interest will not be included in the Purchased Assets. If all applicable lenders choose the Sale Election, however, their choice will be deemed consent under Bankruptcy Code Section 363(f)(2) and the collateral will be sold free and clear of all such interests.

48. With respect to all remaining holders of liens, claims, encumbrances or other interests in any of the Debtors' assets, such assets will be sold free and clear of all such liens, claims, encumbrances or other interests, and any such liens, claims, encumbrances and other interests not satisfied prior to or currently with the Closing shall attach only to the portion of the Debtors' proceeds from the Sale allocable to the property which was subject to the lien, claim, encumbrance or interest in the same priority, validity and extent as such lien, claim or interest has at the time of the Closing.

49. To show that a sale free and clear under Bankruptcy Code Section 363(f) is appropriate and in the best interests of creditors in this case, Debtors' counsel has conducted an analysis of all alleged secured debt against the Debtors. Pursuant to a search of the public records of the Secretary of State offices for California, Delaware and Oregon[19], a list of located UCC filings and mechanics' liens against Debtors is set forth in the O'Neill Declaration. The analysis set forth below includes a brief description of the nature of each such security interest as well as the proposed 363(f) treatment of each interest after the Sale.

### 1. Blanket Security Interests / Security Interests In Customer Accounts.

50. The filings by Talmer Bank and Trust ("Talmer") are based on financing

---

[19] [Searches were conducted for CEP, Inc. with the Oregon Secretary of State through April 27, 2014. Searches were conducted for CEP, LLC with the California Secretary of State through March 26, 2014, and with the Delaware Secretary of State through March 14, 2014. Searches were conducted for UTC Power (as predecessor to CEPIS) with the California Secretary of State through March 31, 2014; with the Delaware Secretary of State through March 21, 2014; and with the Oregon Secretary of State through April 1, 2014.] Additional searches were conducted by Doosan relating to the above identified governmental agencies and the Town of South Windsor through May 22 (Delaware), May 27 (Connecticutt Sec. of State) and June 1 (Oregon). Other than the filing listed in the O'Neill Declaration, no other filings were returned. With respect to any UCC filings filed in a jurisdiction other than the respective jurisdiction of each Debtor (i.e., Oregon for CEP, Inc., and Delaware for both CEP LLC and CEPIS), such liens are in bona fide dispute on the basis that a UCC filing must be made in the state in which the Debtor is incorporated. Accordingly, the Purchased Assets may be sold free and clear of any such liens pursuant to section 363(f)(4). Other than possibly termination filings, the Debtors are not aware of any filings other than those reflected here. Filings which terminated or have expired are not listed herein. For the avoidance of doubt, this Motion seeks approval of the sale of the Purchased Assets subject to any lien, claim, encumbrance or other interest held by any named party, regardless of whether such Purchased Asset is covered by any filing discussed expressly herein.

arrangements related to certain Energy Services Agreements (each, an "ESA") between the Debtors and various third-party customers identified in the above table. Under non-recourse loan documents executed with Talmer (the "Talmer Loan Documents"), Talmer financed the Debtors' purchase of materials and equipment used to manufacture fuel cell products which were installed, maintained and serviced by the Debtors pursuant to each respective ESA. Talmer maintains a "lockbox" account to secure the Debtors' obligations under the Talmer Loan Documents, and each customer remits payments to such account. Talmer withdraws amounts sufficient to satisfy the Debtors' monthly payment obligations under the Talmer Loan Documents, and the balance of the funds are then transferred to the Debtors. Talmer is protected under Bankruptcy Code Section 363(f) because in the event that Talmer does not make the Sale Election, any assets subject to Talmer's security interest will not be included in the Purchased Assets. To the extent Talmer does make the Sale Election, it will have consented to a sale of its collateral free and clear of its interests pursuant to Bankruptcy Code 363(f)(2).

51. The filing by REF Investments Ltd. ("REF") is based on a financing arrangement entered into between REF Investments and one of the Debtors' non-Debtor affiliates, ClearEdge Power Finance LLC ("CEP Finance") in February 2014, pursuant to which REF provided a $3,000,000 loan (with possibility of a second advance, which was never made, in the amount of $3,250,000 solely at the discretion of REF) for the funding of certain fuel cell projects with customers. CEP Finance's obligations in respect of such loan are guaranteed by CEP Inc. and are secured by a lien on substantially all of CEP Finance's assets, as well the equity of CEP Finance held by CEP LLC. Pursuant to various service agreements, certain of the Debtors' customers remit payments to two deposit accounts maintained under deposit account control agreements, from which payments due on the note payable to REF are made. REF is protected under Bankruptcy Code Section 363(f) because in the event that REF does not make the Sale Election, any assets subject to REF's security interest will not be included in the Purchased Assets. To the extent REF does make the Sale Election, it will have consented to a sale of its collateral free and clear of its interests pursuant to Bankruptcy Code 363(f)(2).

/ / /

## 2. Sale/Leaseback Agreements.

52.     The filing by Crestmark Bank ("Crestmark") is based on that certain Sale/Leaseback Agreement and Partial Assignment Agreement executed in November 2013, pursuant to which the Company sold to Crestmark and then leased back certain fuel cell equipment delivered to customers under ESAs with CBS Broadcasting, Inc. and Radford Studio Center, Inc., respectively.  As security under the sale/leaseback agreement, the Company assigned payments up to a monthly amount received from the customers under each ESA to Crestmark. Crestmark is protected under Bankruptcy Code Section 363(f) because in the event that Crestmark does not make the Sale Election, any assets subject to Crestmark's security interest will not be included in the Purchased Assets.  To the extent Crestmark does make the Sale Election, it will have consented to a sale of its collateral free and clear of its interests pursuant to Bankruptcy Code 363(f)(2).

53.     Similar to Crestmark, the filings by VFS LLC and CM TFS LLC (collectively, "VFS") are based on that certain Sale/Leaseback Agreement and Partial Assignment Agreement entered into as of August 29, 2013, pursuant to which the Company sold to VFS and then leased back certain fuel cell equipment delivered to a customer under its ESA with Western Connecticut State University.  As security under the sale/leaseback agreement, the Company assigned payments up to a monthly amount received from the customer under the applicable ESA to VFS.  VFS is protected under Bankruptcy Code Section 363(f) because in the event that VFS does not make the Sale Election, any assets subject to VFS's security interest will not be included in the Purchased Assets.  To the extent VFS does make the Sale Election, it will have consented to a sale of its collateral free and clear of its interests pursuant to Bankruptcy Code 363(f)(2).

## 3. Assumption of Contracts.

54.     The UCC-1 financing statements filed by the J. E. Shepard Company and Shepard-Pola, Incorporated are based on the leases for the Debtors' premises at 90 and 100 Bidwell Road, South Windsor, CT, and 195 Governors Highway, South Windsor, CT.  Pursuant to the terms of such leases, certain of the Debtors granted a security interest in the manufacturing equipment and fixtures at such facilities as security for the performance of certain obligations under the leases.  In the event the successful purchaser desires that the leases be assumed by the appropriate Debtor and

assigned to it, such assumption and assignment will be the subject of the Assumption Motion and in the event the assumption and assignment of the leases is approved, the leases will be assigned to the successful purchaser with the lien intact.

55. The UCC-1 financing statement filed by U.S. Bancorp Equipment Finance, Inc. ("U.S. Bancorp")[20] is a protective filing for a true lease of office equipment. It is contemplated that to the extent the lease is included as an Assumed Contract, U.S. Bancorp will support and consent to assignment to Doosan or the Successful Purchaser (allowing the Sale to occur pursuant to section 363(f)(2)). To the extent the lease is a disguised conditional sales contract, Doosan or the Successful Purchaser will acquire the equipment free and clear of U.S. Bancorp's lien on such equipment and such lien will attach only to the proceeds of the sale pursuant to sections 363(f)(3) and/or (f)(5).

56. Dell Financial Services LLC ("Dell") filed a UCC-1 financing statement based on one or more leases (the "Dell Lease Agreement") for certain computer equipment and software. Based on a preliminary review, the Dell Lease Agreement appears to constitute a conditional sales contract. To the extent the Dell Lease Agreement does in fact constitute a conditional sales contract and is included in the Purchased Assets, Doosan or the Successful Purchaser will acquire the equipment free and clear of Dell's lien on such equipment and such lien will attach only to the proceeds of the sale pursuant to sections 363(f)(3) and/or (f)(5). To the extent the Dell Lease Agreement is a true lease for equipment, it may be assumed and assigned to the Successful Purchaser. It is contemplated that Dell will support the assignment to Doosan or other Successful Purchaser in such instance (allowing the Sale to occur pursuant to section 363(f)(2)).

57. The three filings by Gelco Corporation d/b/a GE Fleet Services ("Gelco") appear to be protective filings for true leases of vehicles used in the Company's operations. As with the U.S. Bancorp equipment leases, it is contemplated that (a) to the extent any Gelco lease is included as an Assumed Contract, Gelco will support and consent to assignment to Doosan or the Successful Purchaser (allowing the Sale to occur pursuant to section 363(f)(2)); and (b) to the extent any Gelco lease is a disguised conditional sales contract, Doosan or the Successful Purchaser will acquire the

---

[20] The Debtors' Schedules of Assets and Liabilities also list U.S. Bank as a party holding a secured claim against the Debtors' assets. Such reference relates to the claims of U.S. Bancorp discussed herein.

equipment free and clear of Gelco's lien on such equipment and such lien will attach only to the proceeds of the sale pursuant to sections 363(f)(3) and/or (f)(5).

58.     The filings by the Clean Energy Finance and Investment Authority and Connecticut Innovations, Inc. ("CEFIA/CI") relate to grants provided to the Debtors by such parties in connection with the Debtors provision of certain fuel cell equipment to customers.  As security for the Debtors' obligations under the related grant agreements, CEFIA/CE received a lien on such equipment and the proceeds thereof.  It is contemplated that (a) to the extent any grant agreement is included as an Assumed Contract, CEFIA/CI will support and consent to assignment to Doosan or the Successful Purchaser (allowing the Sale to occur pursuant to section 363(f)(2)); and (b) to the extent any grant agreement is not included as an Assumed Contract, Doosan or the Successful Purchaser will acquire the applicable assets (if constituting Purchased Assets) free and clear of CEFIA/CI's lien on such assets and such lien will attach only to the proceeds of the sale pursuant to sections 363(f)(3) and/or (f)(5).

### 4.     Samsung.

59.     Samsung Everland filed a UCC-1 financing statement with respect to specified personal property, including the proceeds of a specified customer contract, in connection with obligations under a purchase order that is not yet effective.  The Debtors do not believe that Samsung Everland has a lien on any of their property.  To the extent, however, that Samsung Everland does have a lien, claim, encumbrance or other interest of any kind on any personal property of the Debtors, Doosan or the Successful Purchaser will acquire the applicable assets (if constituting Purchased Assets) free and clear of Samsung Everland's lien, claim, encumbrance or other interest on such assets and such lien, claim, encumbrance or other interest will attach only to the proceeds of the Sale pursuant to sections 363(f)(3) and/or (f)(5).

### 5.     Mechanic's Liens.

60.     In addition to the above-described UCC filings, several parties have asserted mechanic's liens or related liens, preliminary notices, or notices of intent related thereto which are set forth in the O'Neill Declaration.

61.     As set forth in the Fan Declaration, New England Mechanical Services, Inc.'s liens

RAF:sb
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\Sale\Mot v11.docx.doc

21

MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN
ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955   Doc# 148   Filed: 06/30/14   Entered: 06/30/14 13:44:57   Page 28 of 33

are asserted against the Debtors' leasehold interest based on labor, materials and equipment provided with respect to construction, improvements and/or related work on the Debtors' leased property in South Windsor, Connecticut. Zimmerman's Commercial Flooring Inc.'s and DURUS Construction, LLC's liens are asserted based on labor, materials and equipment provided with respect to construction, improvements and/or related work on the Debtors' leased real property in Hillsboro, Oregon. The remaining liens or notices of intent related thereto, to the extent asserted against the Debtors, are asserted based on labor, materials and equipment provided pursuant to purchase orders and/or service contracts (or subcontracts) in connection with fuel cell installation, maintenance and/or related work on the property of customers. If certain of the Debtors' executory contracts and unexpired leases are included in the Sale as Assumed Contracts, the claims underlying such liens may be paid in full and such liens extinguished. To the extent that any such party has a lien on any personal property of the Debtors and such lien is not so extinguished, Doosan or the Successful Purchaser will acquire the applicable assets (if constituting Purchased Assets) free and clear of such party's lien on such assets and such lien will attach only to the proceeds of the Sale pursuant to sections 363(f)(3) and/or (f)(5).

### 6. Warehousemen's Liens.

62. D.T. Gruelle Company Group, LLC d/b/a D.T. Gruelle Company ("DT Gruelle"), Network Global Logistics, LLC ("NGL"), Javelin Logistics Corporation ("Javelin"), J.M. Rogers Co. Inc. ("JMR") and SDV (USA), Inc. ("SDV") have asserted warehousemen or similar possessory liens under services agreements with the Company to perform storage, shipping and related services, pursuant to which the Company allegedly granted security interests in and a lien upon the goods subject to each agreement, to secure storage charges and all amounts due under the agreements. During the bankruptcy cases, on motion by the Debtors, the Court entered an Order authorizing, on an interim basis and without prejudice to the Debtors' request for additional authority, the Debtors to make adequate protection payments to NGL equal to the value of goods removed by the Debtors on an as needed basis up to an aggregate of $100,000, for a period of five weeks. The Debtors are evaluating these liens and the Debtors' needs with respect to Javelin, DT Gruelle, JMR and SDV. In any event, if the underlying services agreements are included in the Sale as Assumed Contracts, the

amounts in default will be paid as Cure Costs, and the liens will be released. If such services agreements are not included as Assumed Contracts, Doosan or the Successful Purchaser will acquire the assets subject to such liens (if constituting Purchased Assets) free and clear of such party's liens on such assets and such liens will attach only to the proceeds of the Sale pursuant to sections 363(f)(3) and/or (f)(5).

### 7. Reclamation Claims.

63. Advantech Industries, Inc., Metro Mold & Design, LLC, Rosemount Inc., Toray Composites (America), Inc., Trane US, Inc., Universal Sheet Metal, Inc. and W.W. Grainger, Inc. have asserted reclamation claims pursuant to Bankruptcy Code Section 546(c) arising from the delivery by such parties of various goods to the Debtors within 45 days prior to the Petition Date. If the underlying supply agreements are included in the Sale as Assumed Contracts, the amounts in default will be paid as Cure Costs, and the interests will be released. If such supply agreements are not included as Assumed Contracts, Doosan or the Successful Purchaser will acquire the assets subject to such interests (if constituting Purchased Assets) free and clear of such party's interests in such assets and such interests, if not extinguished as a result of such sale, will attach only to the proceeds of the Sale pursuant to sections 363(f)(3) and/or (f)(5).

### 8. Other Claims.

64. The Debtors' Schedules of Assets and Liabilities indicate that Gileno Distribution Services, Hartford Distributors Inc., Johnson Matthey Fuel Cells, Xerox Corp. and Xerox Business Service possess secured claims against the Debtors. The Debtors do not believe that any such parties possess any liens, claims, encumbrances or other interests in any of the Debtors' assets. Accordingly, to the extent any such party asserts any such lien, claim, encumbrance or other interest, the applicable assets may be sold free and clear of any such liens pursuant to section 363(f)(4). To the extent that it is determined that any such party actually does possess any liens, claims, encumbrances or other interests in any of the Debtors' assets, Doosan or the Successful Purchaser will acquire the assets subject to such liens, claims, encumbrances or other interests (if constituting Purchased Assets) free and clear of such party's liens, claims, encumbrances or other interests on such assets and such liens, claims, encumbrances or other interests will attach only to the proceeds of

Case: 14-51955    Doc# 148    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 30 of 33

the Sale pursuant to sections 363(f)(3) and/or (f)(5).

65.     The United States Department of Energy (the "<u>DOE</u>") has asserted and expressly reserved rights to certain patents and applications developed under government contracts which will be included in the Purchased Assets.  The Debtors believe that such rights may be limited to a non-exclusive license and that the transfer of the subject patents does not require DOE consent.  In any event, it is anticipated that Doosan or the Successful Purchaser will take subject to such rights.  To the extent any such rights constitute unexpired licenses, they may be assumed and assigned to the Successful Purchaser, and it is contemplated that the DOE will support the assignment to Doosan or other Successful Purchaser in such instance (allowing the Sale to occur pursuant to section 363(f)(2)), subject to inclusion into the Sale Order the following language:

> "Notwithstanding any other provisions or language of this Order, any rights to DOE-Funded IP acquired through this Sale shall be subject to the government-reserved rights and contractor commitments including, but not limited to, the U.S. Competitiveness Provision, set forth as subparagraph(t) in the applicable DOE Patent Waivers, or as otherwise required by federal law."

66.     In addition to the above entities asserting a lien, claim or interest, the Debtors request by this Sale Motion that the Court approve the Sale free and clear of all persons and entities scheduled by the Debtors or who have filed a Proof of Claim or Request for Notice in these cases.  Since the claims bar date has not yet run, the Debtors do not know who may assert a lien, claim or interest with respect to the Purchased Assets.  The Debtors will cause notice to be provided to all persons and entities who were scheduled by the Debtors or who have filed a Proof of Claim, among others.  The Sale will specify that such relief will be requested.  To the extent any person or entity not listed herein asserts that it has a lien, claim or interest in or to the Purchased Assets, such lien, claim or interest is in bona fide dispute, and the Sale may occur pursuant to section 363(f)(4).

## IV.    PRAYER

**WHEREFORE**, the Debtors respectfully request that the Court enter its order as follows:

1.     Granting the Motion;

2.     Subject to any limitations or modifications contained in the Court's order, without need for any further Court order, (a) granting the Sale Motion and approving the Purchase

Agreement and the transactions contemplated thereby; (b) authorizing the Debtors to consummate and carry out the transactions described in the Sale Motion and the Purchase Agreement, and to undertake the obligations and other matters imposed, required or provided for therein such that, among other things, the Debtors, subject thereto, may sell assets, and grant or exchange releases as provided for in the Sale Motion or the Purchase Agreement or required thereby;

3.      Under Section 11 U.S.C. § 363(f) and without further order of the Court, approving the sale of the Purchased Assets to the Successful Purchaser[s] free and clear of all liens, claims, encumbrances and interests, other than the Permitted Encumbrances as provided in the Purchase Agreement, with any such liens, claims, encumbrances or interests not satisfied prior to or concurrently with the Closing attaching to the portion of the Debtors' proceeds of the Sale allocable to the property which was subject to the particular encumbrance in the same validity, order and priority as such lien, claim, encumbrance or interest had as of the Closing;

4.      Under Section 11 U.S.C. § 363(f) and without further order of the Court, and in the event the Successful Purchaser is unable to close the Sale Transaction approving the sale of the Purchased Assets to the Back-up Bidder and any Alternate Back-up Bidder free and clear of all liens, claims, encumbrances and interests, other than the Permitted Encumbrances as provided in the applicable Purchase Agreement, with any such liens, claims, encumbrances or interests not satisfied prior to or concurrently with the Closing attaching to the portion of the Debtors' proceeds of the Sale allocable to the property which was subject to the particular encumbrance in the same validity, order and priority as such lien, claim, encumbrance or interest had as of the Closing;

5.      Determining that the Successful Purchaser[s] and any Back-up Bidder or Alternate Back-up Bidder are good faith purchasers of Debtors' assets such that 11 U.S.C. § 363(m) will be applicable in the event of a Closing;

6.      Finding that the terms of the Sale are fair and reasonable, and the Successful Purchaser and any Back-up Bidder or Alternate Back-up Bidder are paying reasonably equivalent value for the Purchased Assets; and

/ / /

/ / /

Case: 14-51955    Doc# 148    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 32 of 33

1     7.     Waiving the stay imposed by Federal Rule of Bankruptcy Procedure 6004(h) and

2   authorizing the parties to hold the Closing immediately.

3   Dated:  June 30, 2014                    **DORSEY & WHITNEY LLP**

4

5                                        By: */s/ Robert A. Franklin*
                                            Robert A. Franklin
6                                            Attorneys for Debtors

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28