# ARTICLE VI

## CONDITIONS TO THE CLOSING

Section 6.1    Conditions for the Purchaser. The obligation of the Purchaser to consummate the Closing is subject to the satisfaction or waiver in writing by the Purchaser, at or before the Closing, of each of the following conditions:

(a)    All of the covenants and agreements in this Agreement to be complied with or performed by the Sellers on or before the Closing Date shall have been complied with and performed in all material respects;

(b)    The representations and warranties of the Sellers (1) set forth in Sections 4.1(a) (organization) (excluding the last section of Section 4.1(a)), (b) (authority), and (i) (brokers) hereof shall be true and correct in all respects as of the date of this Agreement and as of the Closing Date as if made on the Closing Date (except for any representation or warranty made as of a specified date, which shall be true and correct in all respects as of such specified date), and (2) set forth in Section 4.1, other than those described in the immediately preceding clause (1), shall be true and correct (without giving effect to any limitation as to materiality or "Material Adverse Effect" set forth therein) as of the date of this Agreement and as of the Closing Date as if made on the Closing Date (except for any representation or warranty made as of a specified date, which shall be true and correct (without giving effect to any limitation as to materiality or "Material Adverse Effect" set forth therein) as of such specified date), except in the case of this clause (2), as has not had, and could not constitute or be reasonably likely to result in, individually or in the aggregate, a Material Adverse Effect.

(c)    (i) No Governmental Authority of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any applicable Law (including any Order) which is in effect and has the effect of making the Transactions illegal or otherwise restraining or prohibiting consummation of the Transactions and which is not satisfied, resolved or preempted by the Sale Order and the Assumption Order; and (ii) all requisite clearances or approvals under the antitrust laws of the Republic of Korea (the "KFTC Approval") shall have been obtained (it being understood that, other than the Sale Order and the Assumption Order and the KFTC Approval, and assuming the accuracy of the representations of the Sellers set forth in Sections 4.1(c)(ii) and (iii), no other Consent of a Governmental Authority shall be a condition precedent to the Closing hereunder);

(d)    After notice and a hearing as defined in Section 102(1) of the Bankruptcy Code, the Bankruptcy Court shall have entered the Sale Order and the Assumption Order, and neither such Sale Order nor such Assumption Order (i) shall have been stayed, stayed pending appeal or vacated, or (ii) shall have been amended, supplemented or otherwise modified in a manner that results in such Sale Order or such Assumption Order no longer being an Order of the Bankruptcy Court authorizing the matters referred to in Section 3.3;

(e)    The Sellers shall have assigned to the Purchaser and/or, as applicable, one or more Purchaser Designees, the Assumed Contracts and Assumed Leases (other than

- 39 -

any Contract that is not material to the Business and the assignment of which requires consent of the counterparty pursuant to Section 365(c)(1) of the Bankruptcy Code, which consent has not been obtained as of the Closing), in each case pursuant to Section 365 of the Bankruptcy Code and the Assumption Order, subject to the Purchaser's and/or, as applicable, Purchaser Designee's provision of adequate assurance as may be required under Section 365 of the Bankruptcy Code; and

     (f)    The deliveries described in <u>Section 7.2</u> shall have been made.

     Section 6.2    <u>Conditions for the Sellers</u>. The obligation of the Sellers to consummate the Closing is subject to the satisfaction or waiver in writing by the Sellers, at or before the Closing, of each of the following conditions:

     (a)    All of the covenants and agreements in this Agreement to be complied with or performed by the Purchaser on or before the Closing Date shall have been complied with and performed in all material respects;

     (b)    The representations and warranties of the Purchaser set forth in <u>Section 4.2(f)</u> (resources) hereof shall be true and correct in all respects as of the Closing Date and the representations and warranties of the Purchaser set forth in <u>Section 4.2</u> (other than <u>Section 4.2(f)</u>) shall be true and correct in all respects (without giving effect to any qualification as to materiality set forth therein), in each case as of the date of this Agreement and as of the Closing Date as if made on the Closing Date (except for any representation or warranty made as of a specified date, which shall be true and correct in all respects (without giving effect to any limitation as to materiality set forth therein) as of such specified date), except as would not reasonably be expected to materially adversely affect Purchaser's ability to consummate the transactions contemplated hereby;

     (c)    No Governmental Authority of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any applicable Law (including any Order) which is in effect and has the effect of making the Transactions illegal or otherwise restraining or prohibiting consummation of the Transactions and which is not satisfied, resolved or preempted by the Sale Order and the Assumption Order;

     (d)    After notice and a hearing as defined in Section 102(1) of the Bankruptcy Code, the Bankruptcy Court shall have entered the Sale Order and the Assumption Order, and neither such Sale Order nor such Assumption Order (i) shall have been stayed, stayed pending appeal or vacated or (ii) shall have been amended, supplemented or otherwise modified in a manner that results in such Sale Order or such Assumption Order no longer being an Order of the Bankruptcy Court authorizing the matters referred to in <u>Section 3.3</u>; and

     (e)    The deliveries described in <u>Section 7.3</u> shall have been made.

- 40 -

## ARTICLE VII

## CLOSING

Section 7.1    Closing Arrangements.  The consummation of the Transactions (the "Closing") shall take place at 10:00 a.m. on the third (3rd) Business Day following the date on which all of the conditions set forth in Article VI have been satisfied or waived (other than any conditions that can only be satisfied as of the Closing, but subject to the satisfaction or waiver of such conditions) (the "Closing Date"), at the offices of Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019, or at such other time or place as may be mutually agreed to by the Parties.

Section 7.2    Sellers' Deliveries.  On or before the Closing, the Sellers shall deliver or cause to be delivered the following items and documents to the Purchaser, with each such document to be effective as of the Closing:

(a)    a certificate executed on behalf of each of the Sellers, by the Chief Financial Offer of each such Seller, certifying that the conditions set forth in Sections 6.1(a) and 6.1(b) have been fulfilled;

(b)    the Bill of Sale, duly executed by each Seller;

(c)    the Assignment of Intangible Property, duly executed by each Seller;

(d)    the Assignment and Assumption Agreement(s), duly executed by each Seller;

(e)    such other instruments and agreements as may be required to effect the purchase and assignment and assumption of the Purchased Assets (including the Purchased IP), including, where necessary, appropriate or requested by the Purchaser, separate instruments and agreements to effect the transfer of any Purchased IP,  and including any forms and instruments required by the Transfer Act (to be prepared at Sellers' cost and expense) on behalf of Seller as the transferor and "certifying party" (collectively, the "Other Transfer Instruments"), duly executed by each Seller, as applicable;

(f)    a transition services agreement, in form and substance reasonably acceptable to the Purchaser and the Sellers (the "Transition Services Agreement"), duly executed by each Seller;

(g)    a certificate of non-foreign status for each Seller, substantially in the form of the sample certification contained in Treasury Regulation Section 1.1445-2(b)(2)(iv), duly executed by the respective Seller (or if such Seller is a "disregarded entity" for U.S. federal income tax purposes, by the Person that is treated as the owner of such Seller for U.S. federal income tax purposes);

(h)    one (1) certified copy of the Sale Order entered by the Bankruptcy Court; and

- 41 -

(i)     one (1) certified copy of the Assumption Order entered by the Bankruptcy Court.

Section 7.3     The Purchaser's Deliveries.  On or before the Closing Date, the Purchaser shall (on its behalf and on behalf of the Purchaser Designees) deliver or cause to be delivered to the Sellers (i) an amount of cash equal to the Purchase Price, and (ii) the following items and documents, with each such document to be effective as of the Closing:

(a)     a certificate executed on behalf of the Purchaser certifying that the conditions set forth in Sections 6.2(a) and 6.2(b) have been fulfilled;

(b)     the Assignment and Assumption Agreement(s), duly executed by the Purchaser and/or, as applicable, one or more Purchaser Designees;

(c)     the Assignment of Intangible Property, duly executed by the Purchaser and/or, as applicable, one or more Purchaser Designees;

(d)     the Other Transfer Instruments, if any, duly executed by the Purchaser and/or, as applicable, one or more Purchaser Designees;

(e)     the Bill of Sale, duly executed by the Purchaser and/or, as applicable, one or more Purchaser Designees; and

(f)     the Transition Services Agreement, duly executed by the Purchaser and/or, as applicable, one or more Purchaser Designees.

Section 7.4     Certain Tax Matters.

(a)     Transfer Taxes.  Each of the Sellers, on the one hand, and Purchaser, on the other, shall pay and shall be responsible for one half of any Transfer Taxes (and related costs, fees and expenses) imposed on or payable in connection with the Transactions. The Party primarily or customarily responsible under applicable Law for the preparation and filing of any Tax Return relating to Transfer Taxes shall prepare and timely file such Tax Return and shall promptly provide a copy of such Tax Return to the Sellers or the Purchaser, as applicable.  The Sellers and the Purchaser shall, and shall cause their respective Affiliates to, cooperate to timely prepare and file any Tax Returns or other filings relating to such Transfer Taxes, including any claim for exemption or exclusion from the application or imposition of any Transfer Taxes.

(b)     Purchase Price Allocation.  The Sellers and the Purchaser agree to allocate and, as applicable, to cause their relevant Affiliates to allocate, the Purchase Price and any other items that are treated as additional consideration for Tax purposes among the Purchased Assets in accordance with the schedules and methodologies set forth on Exhibit G attached hereto (the "Allocation Principles").  No later than ninety (90) days following the Closing Date, the Purchaser shall deliver to the Sellers a proposed allocation of the Purchase Price and any other items that are treated as additional consideration for Tax purposes to the Sellers, which proposed allocation shall be determined in a manner consistent with the Allocation Principles, Section 1060 of the Code and the Treasury Regula-

- 42 -

tions promulgated thereunder (the "Purchaser's Allocation"). If the Sellers disagree with the Purchaser's Allocation, the Sellers may, within thirty (30) days after the delivery of the Purchaser's Allocation, deliver a notice (the "Sellers' Allocation Notice") to the Purchaser to such effect, specifying those items as to which Sellers disagree and setting forth the Sellers' proposed allocation. If the Sellers' Allocation Notice is duly delivered, the Purchaser and the Sellers shall, during the twenty (20) days following such delivery, use commercially reasonable efforts to reach agreement on the disputed items or amounts. If the Sellers and the Purchaser are unable to resolve such disagreement(s) within such twenty (20)-day period, they shall promptly refer such dispute to the Accounting Firm to resolve any remaining disputes. Any allocation of the Purchase Price and any other items that are treated as additional consideration for Tax purposes among the Purchased Assets determined pursuant to the decision of the Accounting Firm shall incorporate, reflect and be consistent with the Allocation Principles. The allocation, as prepared by the Purchaser if no Sellers' Allocation Notice has been given, as adjusted pursuant to any agreement between the Sellers and the Purchaser or as determined by the Accounting Firm (the "Allocation") shall be conclusive and binding on all Parties. The expenses, fees and costs of the Accounting Firm shall be shared equally between the Sellers, on the one hand, and the Purchaser, on the other hand. Each of the Sellers and the Purchaser agree to (and to cause their respective Affiliates to) prepare and file all Tax Returns (including Internal Revenue Service Form 8594 and any comparable form under state, local, or foreign law) in accordance with the Allocation and the Allocation Principles. Except to the extent otherwise required pursuant to a "determination" within the meaning of Section 1313(a) of the Code (or any comparable provision of state, local or foreign law), none of the Parties shall (and each shall cause its Affiliates not to) take any position on any Tax Return, in any Tax Proceeding or otherwise that is inconsistent with the Allocation and the Allocation Principles.

(c)     Straddle Period Allocations.  For purposes of this Agreement, Taxes imposed on or with respect to the Business, the Purchased Assets or the Assumed Liabilities with respect to a taxable period that commences prior to and includes (but does not end on) the Closing Date (a "Straddle Period") shall be allocated between the Pre-Closing Tax Period and the Post-Closing Tax Period based on a "closing of the books" method as of the end of the Closing Date.

(d)     Cooperation.  The Purchaser and the Sellers shall furnish or cause to be furnished to each other, as promptly as reasonably practicable, such information in their possession and assistance relating to the Business, Purchased Assets and the Assumed Liabilities as is reasonably necessary for the preparation and filing of any Tax Return, claim for refund or other filings relating to Tax matters, or in connection with any Tax audit or other Tax Proceeding.

# ARTICLE VIII

## TERMINATION OF AGREEMENT

Section 8.1     Termination.  This Agreement may be terminated at any time prior to the Closing:

- 43 -

(a)     by mutual written consent of the Sellers and the Purchaser;

(b)     by the Purchaser, if the Closing has not occurred on or prior to the Outside Date; provided, however, that the Outside Date shall automatically be extended by an additional 30 calendar days if the only condition to closing that has not been satisfied or, to the extent permitted, waived (other than those conditions that by their nature can only be satisfied at or immediately prior to the Closing) is the condition set forth in Section 6.1(c)(ii); provided, further, that the right to terminate this Agreement under this Section 8.1(b) shall not be available if the Purchaser's failure to fulfill any material obligation under this Agreement has been the cause of the failure of the Closing to occur on or before the Outside Date;

(c)     by the Purchaser, in the event of any inaccuracy in any of the Sellers' representations or warranties contained in this Agreement or any breach of any of the Sellers' covenants or agreements contained in this Agreement which, individually or in the aggregate, (i) would result in a failure of a condition set forth in Section 6.1, and (ii) is either incapable of being cured or, if capable of being cured, is not cured within the earlier of (x) thirty (30) days after written notice thereof and (y) the Outside Date.

(d)     by the Sellers, in the event of any inaccuracy in any of the Purchaser's representations or warranties contained in this Agreement or any breach of any of the Purchaser's covenants or agreements contained in this Agreement which, individually or in the aggregate, (i) would result in a failure of a condition set forth in Section 6.2, and (ii) is either incapable of being cured or, if capable of being cured, is not cured within the earlier of (x) thirty (30) days after written notice thereof and (y) the Outside Date;

(e)     by the Sellers, if the Closing has not occurred on or prior to forty-five calendar days after the Outside Date (the "Seller Outside Date"), provided, however, that the right to terminate this Agreement under this Section 8.1(e) shall not be available if the Sellers' failure to fulfill any material obligation under this Agreement has been the cause of the failure of the Closing to occur on or before the Seller Outside Date;

(f)     by the Purchaser, if (1) the Sellers shall fail to file the Supplemental Sale Procedures Motion on or prior to the date that is one (1) Business Day after the date of this Agreement, or (2) the Bankruptcy Court shall fail to enter the Sale Procedures Order on or prior to the date that is seven (7) days after the date of this Agreement; provided, that the failure of the Bankruptcy Court to enter the Sales Procedures Order on or prior to such time is not caused by the Purchaser's material breach of this Agreement;

(g)     by the Purchaser, if the Purchaser is the Successful Bidder (as defined in the Sale Procedures Order) and the Hearing has not been commenced prior to the sixth (6th) Business Day after completion of the Auction; provided, that the failure of the Hearing to commence on or prior to such time is not caused by the Purchaser's material breach of this Agreement;

(h)     by the Purchaser, if the Seller Chapter 11 Cases are converted to a liquidation proceeding under chapter 7 of the Bankruptcy Code;

- 44 -

(i)     by either the Purchaser or the Sellers if the Bankruptcy Court shall have stated unconditionally that it will not enter the Sale Order or the Assumption Order, provided that such statement of the Bankruptcy Court is not a result of or caused by the terminating Party's material breach of this Agreement;

(j)     by either the Sellers or the Purchaser, if a Governmental Authority of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any applicable Law (including any Order) which is in effect and has the effect of making the Transactions illegal or otherwise restraining or prohibiting consummation of the Transactions and which is not satisfied, resolved or preempted by the Sale Order and the Assumption Order; and

(k)     by either the Sellers or the Purchaser if (x) the Auction has occurred and the Purchaser is not the Successful Bidder or (y) the Bankruptcy Court otherwise approves a Competing Transaction.

Section 8.2     Effect of Termination.  In the event of any termination of this Agreement pursuant to Section 8.1, this Agreement (other than the provisions set forth in this Section 8.2, Section 8.3 and Article IX, and the Sellers' right to retain the Purchase Price Deposit in accordance with Section 2.8(b)) shall forthwith become null and void and be deemed of no further force and effect.  Subject to the provisions set forth in the immediately preceding sentence, there shall be no liability or obligation thereafter on the part of any Party; provided, that the foregoing shall not limit any Party's liability for fraud.

Section 8.3     Expense Reimbursement; Purchase Price Deposit.

(a)     The Sellers will, as soon as practicable (and in no event later than the earlier of (1) the date that is three (3) Business Days after the consummation of a Competing Transaction and (2) the first date on which any administrative claims of equivalent priority receive any payment), pay, or cause to be paid, to the Purchaser the Reimbursable Expenses if this Agreement is terminated pursuant to Section 8.1(c) (solely to the extent that the breach or misrepresentaiton giving rise to such termination arises from the Sellers' gross negligence, willful misconduct or bad faith) or pursuant to Section 8.1(k).

(b)     Sellers acknowledge and agree that (A) the payment of Reimbursable Expenses is an integral part of the transactions contemplated by this Agreement, (B) in the absence of the Sellers' obligations to make this payment, the Purchaser would not have entered into this Agreement, (C) that the damages resulting from termination of this Agreement under circumstances where the Purchaser is entitled to the Reimbursable Expenses are uncertain and incapable of accurate calculation and that the delivery of the Reimbursable Expenses to the Purchaser is not a penalty, but rather shall constitute a reasonable amount that will compensate the Purchaser in the circumstances where the Purchaser is entitled to the Reimbursable Expenses for the efforts and resources expended and opportunities foregone while negotiating this Agreement and in reliance on this Agreement and on the expectation of the consummation of the Transactions contemplated hereby, and that, without these agreements, the Purchaser would not enter into this Agreement, (D) time is of the essence with respect to the payment of the Reimbursable

- 45 -

Expenses and (E) the Reimbursable Expenses shall constitute an administrative expense of the Sellers' estates under Section 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code. If the Sellers fail to take any action necessary to cause the delivery of the Reimbursable Expenses under circumstances where the Purchaser is entitled to the Reimbursable Expenses and, in order to obtain such Reimbursable Expenses the Purchaser commences a suit which results in a judgment in favor of the Purchaser, the Sellers shall pay to the Purchaser, in addition to the Reimbursable Expenses, an amount in cash equal to the costs and expenses (including attorney's fees) incurred by the Purchaser in connection with such suit.

      (c)     If this Agreement is terminated by the Sellers pursuant to Section 8.1(d), the Purchaser shall forfeit the Purchase Price Deposit and any interest thereon and such amounts shall be delivered to the Sellers pursuant to Section 2.8(b). If this Agreement is terminated by the Sellers pursuant to Section 8.1(d), the receipt of the Purchase Price Deposit shall be the sole and exclusive remedy of the Sellers with respect to or arising out of this Agreement or the Transactions, and the Sellers shall irrevocably waive and release the Purchaser Released Parties, as a condition to receipt of the Purchase Price Deposit (but subject to the receipt thereof), from any and all statutory, equitable, legal or common law claims or remedies that any Seller may have against any of the Purchaser Released Parties in respect of any breach of or default under this Agreement.

      (d)     The Parties acknowledge that the agreements contained in this Section 8.3 are an integral part of the transactions contemplated in this Agreement, that the damages resulting from termination of this Agreement under circumstances where the Sellers are entitled to the Purchase Price Deposit are uncertain and incapable of accurate calculation and that the delivery of the Purchase Price Deposit is not a penalty but rather shall constitute liquidated damages in a reasonable amount that will compensate Sellers in the circumstances where Sellers are entitled to the Purchase Price Deposit for the efforts and resources expended and opportunities foregone while negotiating this Agreement and in reliance on this Agreement and on the expectation of the consummation of the Transactions contemplated hereby, and that, without these agreements, the Sellers would not enter into this Agreement. If the Purchaser fails to take any action necessary to cause the delivery of the Purchase Price Deposit pursuant to the Deposit Escrow Agreement under circumstances where Sellers are entitled to the Purchase Price Deposit and, in order to obtain such Purchase Price Deposit Sellers commence a suit which results in a judgment in favor of the Sellers, the Purchaser shall pay to the Sellers an amount in cash equal to the costs and expenses (including attorney's fees) incurred by the Sellers in connection with such suit.

## ARTICLE IX

## MISCELLANEOUS

     Section 9.1    Survival. No representations and warranties of the Parties contained herein shall survive beyond the Closing Date. Covenants and agreements which contemplate performance after the Closing Date shall survive the Closing Date in accordance with their terms.

- 46 -

Notwithstanding the foregoing, nothing in this <u>Section 9.1</u> shall not limit any Party's liability for fraud.

Section 9.2     <u>Amendment of Agreement</u>. This Agreement may not be supplemented, modified or amended except by a written agreement executed by each Party.

Section 9.3     <u>Notices</u>. All notices, requests, claims, demands and other communications to any Party hereunder shall be in writing and shall be deemed given if delivered personally, by facsimile (which is confirmed) or if sent by overnight courier (providing proof of delivery) to the such Party at the following addresses, or such other address as such Party may hereafter specify by like notice to the other Parties hereto. All such notices, requests and other communications shall be deemed received on the date of actual receipt by the recipient thereof if received prior to 5:00 p.m. local time in the place of receipt and such day is a Business Day in the place of receipt. Otherwise, any such notice, request or communication shall be deemed not to have been received until the next succeeding Business Day in the place of receipt.

(a)     If to the Purchaser, to:

Doosan Corporation
Attention:    Mr. Young Ho Park
Facsimile:    +82 2 3398 1067

with a copy (which shall not constitute notice) given in like manner to:

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
Attention:    Adam O. Emmerich
             Scott K. Charles
Facsimile:    (212) 403-2000

(b)     If to the Sellers, to:

ClearEdge Power, Inc.
920 Thompson Place, Suite 100
Sunnyvale, CA 94085
Attention: Gloria Fan
Facsimile: [____ ]

with a copy (which shall not constitute notice) given in like manner to:

Dorsey & Whitney LLP
305 Lytton Avenue
Palo Alto, CA 94301
Attention: John Walshe Murray
Facsimile: (650) 857-1288

- 47 -

Section 9.4    Fees and Expenses.  The Parties agree that, except as otherwise expressly provided in this Agreement, each Party shall bear and pay all costs, fees and expenses that it incurs, or which may be incurred on its behalf, in connection with this Agreement and the Transactions.

Section 9.5    Governing Law; Jurisdiction; Service of Process; WAIVER OF RIGHT TO TRIAL BY JURY.  This Agreement shall be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and, where state law is implicated, the internal laws of the State of Delaware, without giving effect to any principles of conflicts of law.  Without limiting any Party's right to appeal any Order of the Bankruptcy Court, the Parties agree that if any dispute arises out of or in connection with this Agreement or any of the documents executed hereunder or in connection herewith, the Bankruptcy Court shall have exclusive personal and subject matter jurisdiction and shall be the exclusive venue to resolve any and all disputes relating to the Transactions.  Such court shall have sole jurisdiction over such matters and the parties affected thereby and the Purchaser and the Sellers each hereby consent and submit to such jurisdiction; provided, however, that if the bankruptcy proceedings have closed and cannot be reopened, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern District of California and any appellate court thereof, for the resolution of any such claim or dispute. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  In the event any such action, suit or proceeding is commenced, the Parties hereby agree and consent that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 9.3, unless another address has been designated by such Party in a notice given to the other Parties in accordance with the provisions of Section 9.3.  THE SELLERS AND THE PURCHASER HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

Section 9.6    Further Assurances.  Subject to the other provisions of this Agreement, each of the Parties hereto agrees to execute, acknowledge, deliver, file and record such further certificates, amendments, instruments and documents, and to do all such other acts and things, as may be reasonably requested by any other Party in order to carry out the intent and purpose of this Agreement at the expense of the requesting Party; provided that this Section 9.6 shall not require any Party to take any action that is commercially unreasonable or that would result in any Liability of such Party or any of its Affiliates.

Section 9.7    Specific Performance.  Each Party acknowledges that the other would be damaged irreparably in the event that this Agreement is not performed in accordance with its specific terms or is otherwise breached, and that, in addition to any other remedy that the non-

Case: 14-51955    Doc# 148-3    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 10 of 25

breaching Party may have under law or equity, the non-breach Party shall be entitled to seek injunctive relief to prevent breaches of the terms of this Agreement and to seek to enforce specifically the terms and provisions that are required to be performed hereunder.

Section 9.8    Entire Agreement.  Except as set forth herein, this Agreement constitutes the full and entire agreement between the Parties hereto pertaining to the Transactions and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, with respect thereto made by any Party.

Section 9.9    Waiver.  Waiver of any term or condition of this Agreement will only be effective if in writing and will not be construed as a waiver of any subsequent breach or waiver of the same term or condition, or a waiver of any other term or condition of this Agreement. Any delay in exercising any right under this Agreement shall not constitute a waiver of such right.

Section 9.10    Assignment.  This Agreement shall bind and inure to the benefit of the Parties hereto and their respective successors and permitted assigns.  Neither the Sellers nor the Purchaser may assign or otherwise transfer their respective rights and/or obligations hereunder (or agree to do so) without the prior written consent of the other Parties; provided that the Purchaser may, without the consent of the Sellers, assign or transfer any or all of its right and/or obligations hereunder to one or more of its Affiliates (it being understood that the Purchaser nonetheless shall remain liable for the performance of all of the Purchaser's obligations hereunder to the extent not performed by the assignee or any Purchaser Designee).  Any assignment or other transfer not permitted under this Section 9.10 shall be null and void ab initio.

Section 9.11    Mutual Releases.  Effective as of the Closing, and other than with respect to any claims pursuant to, and subject to the terms, conditions and limitations of, the terms and conditions of this Agreement, each of the Sellers and the Purchaser, on behalf of itself and each of its Affiliates, hereby releases the (i) the Purchaser and its Affiliates, and its and their current and former officers, directors, stockholders, employees, agents, representatives, attorneys, investors, parents, predecessors, subsidiaries, successors, assigns, and Affiliates, each of the foregoing in their capacity as such (the "Purchaser Released Parties") and (ii) the Sellers and its current and former officers, directors, stockholders, employees, agents, representatives, attorneys, investors, parents, predecessors, subsidiaries, successors, assigns, and Affiliates, each of the foregoing in their capacity as such (the "Sellers Released Parties"), respectively, from any and all Liabilities, actions, rights of action, contracts, indebtedness, obligations, claims, causes of action, suits, damages, demands, costs, expenses and attorneys' fees whatsoever, of every kind and nature, known or unknown, disclosed or undisclosed, accrued or unaccrued, existing at any time, in all circumstances arising at or prior to the Closing ("Causes of Action"), that such Seller or Purchaser, respectively, or any of their respective Affiliates or any of their respective successors and assigns, have or may have against any of the Purchaser Released Parties or the Sellers Released Parties, respectively; provided, however, that this Section 9.11 shall not apply to any Causes of Action arising from the fraud or willful misconduct of the Purchaser Released Parties or the Seller Released Parties, as applicable.

Section 9.12    No Third Party Beneficiaries.  Except Section 9.11, with respect to which the Purchaser Released Parties and Sellers Released Parties are expressly intended third party

Case: 14-51955    Doc# 148-3    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 11 of 25

beneficiaries thereof, nothing in this Agreement is intended to, or shall, confer any third party beneficiary or other rights or remedies upon any Person other than the Parties hereto.

Section 9.13    Severability of Provisions.    Any provision of this Agreement which is determined by a court of competent jurisdiction to be invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining provisions of this Agreement or affecting the validity or enforceability of any of the provisions of this Agreement in any other jurisdiction, and if any provision of this Agreement is determined to be so broad as to be unenforceable, such provision shall be interpreted to be only so broad as is enforceable; provided that in all cases that neither the economic nor legal substance of this Agreement is affected by the operation of this sentence in any manner materially adverse to any Party. Upon any such determination that any provision of this Agreement is invalid or unenforceable, the Parties shall negotiate in good faith in an effort to agree upon a suitable and equitable substitute provision to effect the original intent of the Parties.

Section 9.14    Counterparts.    This Agreement may be executed in multiple counterparts, each of which shall be deemed an original hereof, and all of which shall constitute a single agreement effective as of the date hereof.    Any delivery of an executed counterpart of this Agreement by facsimile or electronic mail shall be as effective as delivery of a manually executed counterpart of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the day and year first above written.

CLEAREDGE POWER, INC.,
  a California corporation

By: _____
Gloria Fan
Chief Financial Officer

CLEAREDGE POWER, LLC,
  a Delaware limited liability company

By: _____
Gloria Fan
Chief Financial Officer

CLEAREDGE POWER INTERNATIONAL
  SERVICE, LLC,
  a Delaware limited liability company

By: ClearEdge Power, LLC,
  its sole member and manager

By: _____
Gloria Fan
Chief Financial Officer

DOOSAN CORPORATION,
  a company organized under the laws of
  the Republic of Korea

By: _____
Name: James B. Bemanski
Title: CEO Doosan Corp-Business
         Operations

*[Signature Page to Asset Purchase Agreement]*

**Exhibit A**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT, dated as of [ ], 2014 (this "Agreement"), is by and among ClearEdge Power, Inc., an Oregon corporation ("CEP"), ClearEdge Power, LLC, a Delaware limited liability company ("CEP LLC"), ClearEdge Power International Service, LLC, a Delaware limited liability company ("CEPIS", and collectively with CEP and CEP LLC, in their capacities as debtors and debtors in possession, the "Sellers") and [ ] (the "Purchaser").

WHEREAS, the Sellers and the Purchaser have entered into an Asset Purchase Agreement, dated as of June 26, 2014 (the "Purchase Agreement"; unless otherwise defined herein, capitalized terms shall be used herein as defined in the Purchase Agreement);

WHEREAS, pursuant to the Purchase Agreement, the Sellers have agreed to assign, transfer, convey and deliver when due, any and all of the Purchased Assets, including the Assumed Contracts and Assumed Leases (but not any of the Excluded Assets);

WHEREAS, pursuant and subject to the Purchase Agreement, the Purchaser has agreed to assume, honor, pay and discharge when due, any and all of the Assumed Liabilities (but not any of the Excluded Liabilities); and

WHEREAS, the execution and delivery of this Agreement by the Sellers and the Purchaser is a condition to the obligations of the Parties to consummate the transactions contemplated by the Purchase Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual agreements and covenants set forth in the Purchase Agreement and hereinafter set forth, the Sellers and the Purchaser hereby agree as follows:

1. **Assignment and Assumption of Purchased Assets and Assumed Liabilities.**

    (a)     The Sellers hereby assign, transfer, convey and deliver (i) all of the Sellers' right, title and interest in and to the Purchased Assets, including the Assumed Contracts and Assumed Leases, to the Purchaser, pursuant and subject to the Purchase Agreement and the Sale Order.

    (b)     The Purchaser does hereby assume, and agree to honor, pay and discharge when due, all of the Assumed Liabilities.

    (c)     Notwithstanding the foregoing provisions of paragraph (b), the Purchaser does not assume, or agree to pay, perform or otherwise discharge when due, any Liabilities of the Sellers other than the Assumed Liabilities, including, without limitation, the Excluded Liabilities.

A-1

## 2.    Assignment of this Agreement.

Neither the Sellers nor the Purchaser may assign or otherwise transfer their respective rights and/or obligations hereunder (or agree to do so) without the prior written consent of the other Parties; provided, that the Purchaser may, without the consent of Sellers, assign or transfer any or all of its rights and/or obligations hereunder to one or more of its Affiliates (it being understood that the Purchaser nonetheless shall remain liable for the performance of all of the Purchaser's obligations hereunder to the extent not performed by the assignee or any Purchaser Designee). Any assignment or other transfer not permitted under this section shall be null and void ab initio.

## 3.    Further Assurances.

Subject to the provisions of this Agreement and the Purchase Agreement, each of the Parties hereto agrees to execute, acknowledge, deliver, file and record such further certificates, amendments, instruments and documents, and to do all such other acts and things, as may be reasonably requested by any other Party in order to carry out the intent and purpose of this Agreement at the expense of the requesting Party, provided that this shall not require any Party to take any action that is commercially unreasonable or that would result in any Liability of such Party or any of its Affiliates.

## 4.    No Third Party Beneficiaries.

Nothing in this Agreement is intended to, or shall, confer any third party beneficiary or other rights or remedies upon any Person other than the Parties hereto.

## 5.    Amendment.

This Agreement may not be amended or modified except (a) by an instrument in writing signed by, or on behalf of, the Sellers and the Purchaser, or (b) by a waiver pursuant to Section 6 below.

## 6.    Waiver.

Either the Sellers, on the one hand, or the Purchaser, on the other, may (a) extend the time for the performance of any of the obligations or other acts of the other Party, (b) waive any inaccuracies in the representations and warranties of the other Party contained herein or in any document delivered by the other Party pursuant hereto, or (c) waive compliance with any of the agreements of the other Party or conditions to such Party's obligations contained herein. Any such extension or waiver shall be valid only if set forth in an instrument in writing signed by the Party to be bound thereby. Any waiver of any term or condition shall not be construed as a waiver of any subsequent breach or a subsequent waiver of the same term or condition, or a waiver of any other term or condition of this Agreement. The failure of any Party to assert any of its rights hereunder shall not constitute a waiver of any such rights.

## 7.    Severability.

Any provision of this Agreement which is determined by a court of competent jurisdiction to be invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remain-

Case: 14-51955    Doc# 148-3    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 15 of 25

ing provisions of this Agreement or affecting the validity or enforceability of any of the provisions of this Agreement in any other jurisdiction, and if any provision of this Agreement is determined to be so broad as to be unenforceable, such provision shall be interpreted to be only so broad as is enforceable, provided in all cases that neither the economic nor legal substance of this Agreement is affected by the operation of this sentence in any manner materially adverse to any Party. Upon any such determination that any provision of this Agreement is invalid or unenforceable, the Parties shall negotiate in good faith in an effort to agree upon a suitable and equitable substitute provision to effect the original intent of the Parties.

### 8.    Counterparts.

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original hereof, and all of which shall constitute a single agreement effective as of the date hereof. Any delivery of an executed counterpart of this Agreement by facsimile or electronic mail shall be as effective as delivery of a manually executed counterpart of this Agreement.

### 9.    Governing Law; Waiver of Right to Trial by Jury.

This Agreement shall be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and, where state law is implicated, the internal laws of the State of Delaware, without giving effect to any principles of conflicts of law. Without limiting any Party's right to appeal any order of the Bankruptcy Court, the Parties agree that if any dispute arises out of or in connection with this agreement or any of the documents executed hereunder or in connection herewith, the Bankruptcy Court shall have exclusive personal and subject matter jurisdiction and shall be the exclusive venue to resolve any and all such disputes. Such court shall have sole jurisdiction over such matters and the Parties affected thereby and the Purchaser and the Sellers each hereby consent and submit to such jurisdiction; provided, however, that if the bankruptcy proceedings have closed and cannot be reopened, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern District of California and any appellate court thereof, for the resolution of any such claim or dispute. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. In the event any such action, suit or proceeding is commenced, the Parties hereby agree and consent that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 9.3 of the Purchase Agreement, unless another address has been designated by such Party in a notice given to the other Parties in accordance with the provisions of Section 9.3 thereto. THE PARTIES HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

Case: 14-51955    Doc# 148-3    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 16 of 25

### 10.    Subject to Purchase Agreement.

This Agreement is intended to effect certain of the transaction contemplated by the Purchase Agreement and is not intended to expand or limit any of the obligations, covenants or agreement therein which shall remain in full force and effect. If there is any inconsistency between then provisions of this Agreement and the provisions of the Purchase Agreement, the provisions of the Purchase Agreement shall govern and control.

IN WITNESS WHEREOF, this Agreement has been executed by the Parties as of the date first above written.

| ASSIGNORS: | ASSIGNEES: |
|---|---|

A-4

## Exhibit B

## ASSIGNMENT OF INTANGIBLE PROPERTY

THIS ASSIGNMENT OF INTANGIBLE PROPERTY AGREEMENT, dated as of [ ], 2014 (this "Agreement"), is by and among ClearEdge Power, Inc., an Oregon corporation ("CEP"), ClearEdge Power, LLC, a Delaware limited liability company ("CEP LLC"), ClearEdge Power International Service, LLC, a Delaware limited liability company ("CEPIS", and collectively with CEP and CEP LLC, in their capacities as debtors and debtors in possession, the "Assignors") and [ ] (the "Assignee").

WHEREAS, the Assignors and Assignee have entered into an Asset Purchase Agreement, dated as of June 26, 2014 (the "Purchase Agreement"; unless otherwise defined herein, capitalized terms shall be used herein as defined in the Purchase Agreement);

WHEREAS, pursuant and subject to the Purchase Agreement, the Assignors have agreed to assign, transfer, convey and deliver when due, any and all of the Purchased Assets which are intangible property to the Assignee or its designees; and

WHEREAS, the execution and delivery of this Agreement by the Assignors and the Assignee is a condition to the obligations of the Parties to consummate the transactions contemplated by the Purchase Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual agreements and covenants set forth in the Purchase Agreement and hereinafter set forth, the Assignors and Assignee hereby agree as follows:

1. **Assignment of Purchased Assets which are Intangible Property.**

The Assignors hereby assign, transfer, convey and deliver all of the Assignors' right, title and interest in and to the Purchased Assets which are intangible property to the Assignee pursuant and subject to the Purchase Agreement and the Sale Order.

2. **Assignment of this Agreement.**

Neither the Assignors nor the Assignee may assign or otherwise transfer their respective rights and/or obligations hereunder (or agree to do so) without the prior written consent of the other Parties; provided, that the Assignee may, without the consent of the Assignors, assign or transfer any or all of its right and/or obligations hereunder to one or more of its Affiliates (it being understood that the Assignee nonetheless shall remain liable for the performance of all of the Assignee's obligations hereunder to the extent not performed by the assignee or any Purchaser Designee). Any assignment or other transfer not permitted under this section shall be null and void ab initio.

3. **Further Assurances.**

Subject to the other provisions of this Agreement, each of the Parties hereto agrees to execute, acknowledge, deliver, file and record such further certificates, amendments, instruments and

Case: 14-51955    Doc# 148-3    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 18 of 25

documents, and to do all such other acts and things, as may be reasonably requested by any other Party in order to carry out the intent and purpose of this Agreement at the expense of the requesting Party, provided that this section shall not require any Party to take any action that is commercially unreasonable or that would result in any Liability of such Party or any of its Affiliates.

### 4. No Third Party Beneficiaries.

Nothing in this Agreement is intended to, or shall, confer any third party beneficiary or other rights or remedies upon any Person other than the Parties hereto.

### 5. Amendment.

This Agreement may not be amended or modified except (a) by an instrument in writing signed by, or on behalf of, the Assignors and the Assignee, or (b) by a waiver pursuant to Section 6 below.

### 6. Waiver.

Either the Assignors, on the one hand, or the Assignee, on the other, may (a) extend the time for the performance of any of the obligations or other acts of the other Party, (b) waive any inaccuracies in the representations and warranties of the other Party contained herein or in any document delivered by the other Party pursuant hereto, or (c) waive compliance with any of the agreements of the other Party or conditions to such Party's obligations contained herein. Any such extension or waiver shall be valid only if set forth in an instrument in writing signed by the Party to be bound thereby. Any waiver of any term or condition shall not be construed as a waiver of any subsequent breach or a subsequent waiver of the same term or condition, or a waiver of any other term or condition of this Agreement. The failure of any Party to assert any of its rights hereunder shall not constitute a waiver of any such rights.

### 7. Severability.

Any provision of this Agreement which is determined by a court of competent jurisdiction to be invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining provisions of this Agreement or affecting the validity or enforceability of any of the provisions of this Agreement in any other jurisdiction, and if any provision of this Agreement is determined to be so broad as to be unenforceable, such provision shall be interpreted to be only so broad as is enforceable, provided in all cases that neither the economic nor legal substance of this Agreement is affected by the operation of this sentence in any manner materially adverse to any Party. Upon any such determination that any provision of this Agreement is invalid or unenforceable, the Parties shall negotiate in good faith in an effort to agree upon a suitable and equitable substitute provision to effect the original intent of the Parties.

### 8. Counterparts.

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original hereof, and all of which shall constitute a single agreement effective as of the date here-

B-2

of. Any delivery of an executed counterpart of this Agreement by facsimile or electronic mail shall be as effective as delivery of a manually executed counterpart of this Agreement.

### 9. Governing Law; Waiver of Right to Trial by Jury.

This Agreement shall be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and, where state law is implicated, the internal laws of the State of Delaware, without giving effect to any principles of conflicts of law. Without limiting any Party's right to appeal any order of the Bankruptcy Court, the Parties agree that if any dispute arises out of or in connection with this agreement or any of the documents executed hereunder or in connection herewith, the Bankruptcy Court shall have exclusive personal and subject matter jurisdiction and shall be the exclusive venue to resolve any and all such disputes. Such court shall have sole jurisdiction over such matters and the Parties affected thereby and Assignee and the Assignors each hereby consent and submit to such jurisdiction; provided, however, that if the bankruptcy proceedings have closed and cannot be reopened, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern District of California and any appellate court thereof, for the resolution of any such claim or dispute. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. In the event any such action, suit or proceeding is commenced, the Parties hereby agree and consent that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 9.3 of the Purchase Agreement, unless another address has been designated by such Party in a notice given to the other Parties in accordance with the provisions of Section 9.3 thereto. ASSIGNORS AND ASSIGNEES HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

### 10. Subject to Purchase Agreement.

This Agreement is intended to effect certain of the transaction contemplated by the Purchase Agreement and is not intended to expand or limit any of the obligations, covenants or agreement therein which shall remain in full force and effect. If there is any inconsistency between then provisions of this Agreement and the provisions of the Purchase Agreement, the provisions of the Purchase Agreement shall govern and control.

Case: 14-51955    Doc# 148-3    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 20
of 25

IN WITNESS WHEREOF, this Agreement has been executed by the Parties as of the date first above written.

| ASSIGNORS: | ASSIGNEES: |
|---|---|

B-4

## Exhibit C

## BILL OF SALE

BILL OF SALE, dated as of [_] (this "Bill of Sale"), from ClearEdge Power, Inc., an Oregon corporation ("CEP"), ClearEdge Power, LLC, a Delaware limited liability company ("CEP LLC"), ClearEdge Power International Service, LLC, a Delaware limited liability company ("CEPIS", and collectively with CEP and CEP LLC, in their capacities as debtors and debtors in possession, the "Sellers") to [_] (the "Purchaser").

WHEREAS, the Sellers and the Purchaser have entered into an Asset Purchase Agreement, dated as of June 26, 2014 (the "Purchase Agreement"; unless otherwise defined herein, capitalized terms shall be used herein as defined in the Purchase Agreement); and

WHEREAS, the execution and delivery of this Bill of Sale by the Sellers is a condition to the obligations of the Purchaser to consummate the transactions contemplated by the Purchase Agreement;

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth in the Purchase Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Sellers do hereby agree as follows:

### 1. Sale and Assignment of the Purchased Assets.

The Sellers hereby sell, transfer, assign, convey and deliver unto the Purchaser and its successors and assigns, forever, the entire right, title and interest of the Sellers (of every nature, kind and description, tangible or intangible (including goodwill), whether real, personal, or mixed, whether accrued, contingent or otherwise, wherever located) in and to the Purchased Assets, pursuant and subject to the terms of the Purchase Agreement and the Sale Order.

### 2. Further Assurances.

Subject to the provisions of this Bill of Sale and the Purchase Agreement, each of the Parties hereto agrees to execute, acknowledge, deliver, file and record such further certificates, amendments, instruments and documents, and to do all such other acts and things, as may be reasonably requested by any other Party in order to carry out the intent and purpose of the Bill of Sale at the expense of the requesting Party, provided that this shall not require any Party to take any action that is commercially unreasonable or that would result in any Liability of such Party or any of its Affiliates.

### 3. No Third Party Beneficiaries.

Nothing in this Bill of Sale is intended to, or shall, confer any third party beneficiary or other rights or remedies upon any Person other than the Parties hereto.

### 4. Severability.

Any provision of this Bill of Sale which is determined by a court of competent jurisdiction to be invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining provisions of this Bill of Sale or affecting the validity or enforceability of any of the provisions of this Bill of Sale in any other jurisdiction, and if any provision of this Bill of Sale is determined to be so broad as to be unenforceable, such provision shall be interpreted to be only so broad as is enforceable, provided in all cases that neither the economic nor legal substance of this Bill of Sale is affected by the operation of this sentence in any manner materially adverse to any Party. Upon any such determination that any provision of this Bill of Sale is invalid or unenforceable, the Parties shall negotiate in good faith in an effort to agree upon a suitable and equitable substitute provision to effect the original intent of the Parties.

### 5. Subject to Purchase Agreement.

In the event of any conflict or other difference between the Purchase Agreement and this Bill of Sale, the provisions of the Purchase Agreement shall govern and control.

### 6. Amendment, Waiver and Termination.

This Bill of Sale may not be amended or terminated, and no provision hereof may be waived, except by a writing signed by each of the Parties hereto.

### 7. Counterparts.

This Bill of Sale may be executed in multiple counterparts, each of which shall be deemed an original hereof, and all of which shall constitute a single agreement effective as of the date hereof. Any delivery of an executed counterpart of this Bill of Sale by facsimile or electronic mail shall be as effective as delivery of a manually executed counterpart of this Bill of Sale.

### 8. Governing Law; Waiver of Right to Trial by Jury.

This Bill of Sale shall be governed by and construed in accordance with federal bankruptcy law, to the extent applicable, and, where state law is implicated, the internal laws of the State of Delaware, without giving effect to any principles of conflicts of law. Without limiting any Party's right to appeal any order of the Bankruptcy Court, the Parties agree that if any dispute arises out of or in connection with this agreement or any of the documents executed hereunder or in connection herewith, the Bankruptcy Court shall have exclusive personal and subject matter jurisdiction and shall be the exclusive venue to resolve any and all such disputes. Such court shall have sole jurisdiction over such matters and the Parties affected thereby and the Purchaser, and the Sellers each hereby consent and submit to such jurisdiction; provided, however, that if the bankruptcy proceedings have closed and cannot be reopened, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Northern District of California and any appellate court thereof, for the resolution of any such claim or dispute. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.

Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. In the event any such action, suit or proceeding is commenced, the Parties hereby agree and consent that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 9.3 of the Purchase Agreement, unless another address has been designated by such Party in a notice given to the other Parties in accordance with the provisions of Section 9.3 thereto. THE PARTIES HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).

IN WITNESS WHEREOF, this Bill of Sale has been executed by the Parties as of the date first above written.

| **SELLERS:** | **THE PURCHASER:** |
| --- | --- |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| In re: | |
| CLEAREDGE POWER, INC.,<br>Employer Tax I.D. No. 20-0119415 | Case No.: 14-51955-11-CN |
| CLEAREDGE POWER, LLC,<br>Employer Tax I.D. No. 06-1517615 | Case No.: 14-51956-11-CN |
| CLEAREDGE POWER INTERNATIONAL<br>SERVICE, LLC,<br>Employer Tax I.D. No. 27-3468551 | Case No.: 14-51960-11-CN |
| | Cases Jointly Administered<br>Under Chapter 11 |
| Debtors. | |
| 920 Thompson Place, Suite 100<br>Sunnyvale, California 94085 | **Re: Docket Nos. [___]** |

## ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE, AUTHORIZING (I) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND (II) GRANTING RELATED RELIEF

This matter coming before the Court on the *Motion To Authorize Debtors To Assume And Assign Executory Contracts And Unexpired Leases In Connection With The Sale Of Certain Of Their Assets (11 U.S.C. §§ 363 and 365)*, filed by the above-captioned debtors (collectively, the "Debtors") on June [___], 2014 [Docket No. [___]] (the "Motion");[1] this Court (the "Court") having entered, on June [26], 2014, the *Order Approving Bid Procedures and Related Matters Re Sale of Certain Assets of the Debtors* [Docket No. [___]] (the "Bid Procedures Order"); the Debtors having filed concurrently with the Motion, the *Motion By Debtors To Approve Sale Of Certain Assets Free And Clear Of Liens, Claims, Encumbrances And Other Interests* (the "Sale Motion");

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion or the Purchase Agreement (as defined below), as appropriate.

1502541.2 06/25/2014

W/2167250v6