26.     Nothing in this Sale Order, the Purchase Agreement or the Sale Transaction releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the entry of this Sale Order. Notwithstanding the foregoing sentence, nothing in this Sale Order shall be interpreted to deem the Buyer, its designee(s) or their respective affiliates (and their successors and assigns) as the successor to the Debtors under any successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to entry of this Sale Order or for liabilities relating to off-site disposal of wastes by the Debtors prior to entry of this Sale Order. Notwithstanding the foregoing or any other provision contained in this Sale Order, the Buyer and its designee(s) are specifically authorized to operate the business in respect of any or all of the Purchased Assets during any period from and after the Closing until the issuance, transfer or renewal of any required environmental permit is granted, issued, transferred or renewed to the operator of such business; provided that prompt application for such permits is made upon the Closing,

27.     Nothing in this Sale Order, the Purchase Agreement or the Sale Transaction authorizes the transfer to any entity of any licenses, permits, registrations or other governmental authorizations and approvals without that entity's compliance with all applicable requirements under non-bankruptcy law governing such transfers. Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not already exist under applicable non-bankruptcy law.

28.     None of the Buyer, its designee(s) or their respective affiliates (and their successors and assigns) shall have any obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment to employees of the Debtors, except as set forth in the Purchase Agreement with respect to the period from and after the Closing Date. Except as set forth in the Purchase Agreement, none of the Buyer, its designee(s) or their respective affiliates (and their successors and assigns) shall have any liability with respect to any collective bargaining agreement, employee pension plan, employee welfare or retention, benefit and/or incentive plan to which any

RAF:sb
H:\Windows7\Desktop\CEP Final\Word Files\Exhibit E - Sale Order.docx

17

ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE
BANKRUPTCY CODE, AUTHORIZING (I) THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, FREE....

Case: 14-51955   Doc# 148-5   Filed: 06/30/14   Entered: 06/30/14 13:44:57   Page 1 of 25

Debtors are a party (including, without limitation, arising from or related to the rejection or other termination of any such agreement), and none of the Buyer, its designee(s) or their respective affiliates (and their successors and assigns) shall in any way be deemed a party to or assignee of any such agreement, and no employee of Buyer, its designee(s) or their respective affiliates (and their successors and assigns) shall be deemed in any way covered by or a party to any such agreement.

29. Nothing contained in any chapter 11 plan confirmed in these Bankruptcy Cases or order confirming any such plan shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Sale Order. To the extent any provisions of this Sale Order conflict with the terms and conditions of the Purchase Agreement, this Sale Order shall govern and control.

30. The Sale Transaction is not a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford, and is not in violation of creditors' voting rights.

31. The Buyer's and Buyer's designee(s) purchase of the Purchased Assets is made in good faith for fair value within the meaning of section 363(m) of the Bankruptcy Code. Therefore, the Buyer and its designee(s) shall be entitled to the protection of section 363(m) of the Bankruptcy Code if this Sale Order or any authorization contained herein is reversed or modified on appeal. The reversal, modification or appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the sale and transfer of the Purchased Assets to the Buyer and its designee(s), unless such authorization is duly stayed pending such appeal before the Closing.

32. The Purchase Agreement and the Sale Transaction approved by this Sale Order is not subject to avoidance or the imposition of costs and damages pursuant to section 363(n) of the Bankruptcy Code and none of the Buyer, its designee(s) or their respective affiliates engaged in any conduct that would cause or permit any such avoidance, or any costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. The consideration to be provided by the Buyer, or which the Buyer caused to be provided by one or more of its designees, in exchange for the Purchased Assets under the terms of the Purchase Agreement shall be, and hereby is, deemed to constitute reasonably equivalent value and fair consideration for the Purchased Assets and will

RAF:sb
H:\Windows7\Desktop\CEP Final\Word Files\Exhibit E - Sale Order.docx

18

ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE
BANKRUPTCY CODE, AUTHORIZING (I) THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, FREE....

provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative.

33. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, *provided that* any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

34. The failure to specifically include any particular provision of the Purchase Agreement in this Sale Order shall not diminish or impair the efficacy of such provision, it being the intent of the Court that the Purchase Agreement and each and every provision, term and condition thereof be authorized and approved in their entirety.

35. Pursuant to Bankruptcy Rules 6004(h) and 7062, this Sale Order shall be effective and enforceable immediately upon its entry, and the Sale Transaction approved by this Sale Order may close immediately upon entry of this Sale Order, notwithstanding any otherwise applicable stay.

36. The provisions of this Sale Order are non-severable and mutually dependent.

Date: _____, 2014
San Jose, California

The Honorable Charles Novack
United States Bankruptcy Judge

RAF:sb
H:\Windows7\Desktop\CEP Final\Word Files\Exhibit E - Sale Order.docx

19

ORDER PURSUSANT TO SECTIONS 105 AND 363 OF THE
BANKRUPTCY CODE, AUTHORIZING (I) THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, FREE....

1  JOHN WALSHE MURRAY (074823)
   STEPHEN T. O'NEILL (115132)
2  ROBERT A. FRANKLIN (091653)
   THOMAS T. HWANG (218678)
3  DORSEY & WHITNEY LLP
   305 Lytton Avenue
4  Palo Alto, CA 94301
   Telephone: (650) 857-1717
5  Facsimile: (650) 857-1288
   Email: murray.john@dorsey.com
6  Email: oneill.stephen@dorsey.com
   Email: franklin.robert@dorsey.com
7  Email: hwang.thomas@dorsey.com

8  Attorneys for Debtors

9

10              UNITED STATES BANKRUPTCY COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                     SAN JOSE DIVISION

13  In re:                          )
                                    )
14  **CLEAREDGE POWER, INC.,**      )   Case No. 14-51955-CN-11
    Employer Tax I.D. No. 20-0119415 )
15                                  )
                                    )
16  **CLEAREDGE POWER, LLC**        )   Case No. 14-51956-CN-11
    Employer Tax I.D. No. 06-1517615 )
17                                  )
                                    )
18  **CLEAREDGE POWER**             )   Case No. 14-51960-CN-11
    **INTERNATIONAL SERVICE, LLC**  )
19  Employer Tax I.D. No. 27-3468551 )
                                    )   Cases Jointly Administered
20          Debtor(s).              )      Under Chapter 11
                                    )
21  920 Thompson Place, Suite 100   )   Date:  June 26, 2014
    Sunnyvale, California 94085     )   Time:  4:00 p.m.
22                                  )   Place: 280 S. First Street, Room 3070
                                    )          San Jose, CA 95113
23                                  )   Judge: Honorable Charles Novack

24          ORDER APPROVING OVERBID PROCEDURES AND
    RELATED MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTORS
25

26      Upon the MOTION TO APPROVE OVERBID PROCEDURES AND RELATED MATTERS RE SALE OF

27  CERTAIN ASSETS OF THE DEBTORS filed with the Court on May 15, 2014 (together with the

28  AMENDED MOTION TO APPROVE OVERBID PROCEDURES AND RELATED MATTERS RE SALE OF

CERTAIN ASSETS OF THE DEBTORS filed on May 20, 2014, and the SUPPLEMENT NO. 1 TO DEBTORS' MOTION TO APPROVE BID PROCEDURES AND RELATED MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTORS filed on June 23, 2014 (the "Motion Supplement"), the "Motion") by ClearEdge Power, Inc., ClearEdge Power LLC and ClearEdge Power International Services LLC, the debtors and debtors in possession in these jointly administered cases (collectively the "Debtors"), for entry of an order (a) approving certain bid procedures (the "Bid Procedures") in connection with the sale (the "Sale") of the Debtors' Purchased Assets[1], (b) approving the Expense Reimbursement as an administrative expense under sections 503(b) and 507(a)(2) of the Bankruptcy Code, and authorizing the Debtors to pay the Expense Reimbursement, (c) specially scheduling the hearing on the Sale Motion and the Assumption Motion for July 11, 2014, at 9:00 a.m., or as soon as possible thereafter as the Court's calendar permits; (d) establishing and approving the procedures to determine, and the manner of notice with respect to, the amounts to be paid and actions to be taken to cure defaults, if any, under the executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Successful Purchaser in connection with the Sale, and (e) approving the manner of notice of the proposed Sale, the Bid Procedures, and the Sale Hearing; the Motion having come on for hearing before the Court initially on June 5, 2014, and then on June 24, 2014, at 11:00 a.m., and then on June 26, 2014, at 4:00 p.m.; the Debtors having appeared by and through their counsel Dorsey & Whitney LLP and John Walshe Murray and Stephen T. O'Neill; the Official Committee of Unsecured Creditors (the "Committee") having appeared by and through its counsel Brown Rudnick LLP and Howard L. Siegel and Cathrine M. Castaldi; Doosan Corporation ("Doosan") having appeared by and through its counsel Pachulski, Stang, Ziehl & Jones and John Fiero and Joshua Fried and Wachtell, Lipton, Rosen & Katz and Scott K. Charles and Neil M. Snyder; other appearances, if any, were as noted in the record; the Court having determined that, to the extent set forth herein, the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and other parties in interest; due and appropriate notice of the hearing on the Motion and the relief requested therein was provided by the Debtors pursuant to Bankruptcy Rules 2002, 6004 and 9014; and after

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion and/or the Bid Procedures.

consideration of the Motion to the extent of the relief granted herein, and the remainder of the record herein, and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby:

**FOUND, CONCLUDED, AND DECLARED THAT:**[2]

1.      This Court has jurisdiction over this matter and over the property of the Debtors and their estates pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      Good and sufficient notice of the Motion and the relief sought therein has been given. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all parties in interest, and no other or further notice is required under the circumstances.

3.      The Bid Procedures are fair, reasonable and appropriate and are designed to maximize the value of the Debtors' assets that are contemplated to be sold in accordance with such procedures.

4.      Absent the Expense Reimbursement, the minimum initial Competing Bid, and the Competing Bid increments, the Debtors may lose the opportunity to obtain the highest and best available offer for their assets and the protections afforded by the Stalking Horse Purchase Agreement.

5.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the Bid Procedures and have demonstrated sound business justifications to support such relief.

6.      The entry of this Bid Procedures Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

7.      The relief requested in the Motion is granted, to the extent set forth herein.

---

[2]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

8.      Any objections to the entry of this Bid Procedures Order that have not been withdrawn, waived, resolved or settled, and all reservations of rights included therein, are hereby overruled.

**Bid Procedures**

9.      The Bid Procedures, as set forth in Exhibit "A" attached to the Motion Supplement, are hereby approved in their entirety, and shall apply to the proposed Sale in all respects. The Debtors are authorized to take any and all actions necessary to implement the Bid Procedures.

10.      As set forth in the Bid Procedures, interested bidders shall be required to execute a confidentiality agreement (unless previously delivered) in form and substance reasonably acceptable to the Debtors in order to be deemed a Potential Bidders and permitted to participate in the bidding process.

11.      The failure in this Bid Procedures Order to include specifically or reference any particular provision, section or article of the Bid Procedures shall not diminish or impair the effectiveness of the Bid Procedures, it being the intent of this Court that the Bid Procedures be authorized and approved in their entirety and are incorporated herein by reference.

**Expense Reimbursement**

12.      Doosan is designated as the Stalking Horse Bidder. The Debtors are hereby authorized to reimburse the Stalking Horse Purchaser its out-of-pocket costs, fees and expenses incurred or to be incurred in connection with evaluating, negotiating, documenting and performing the transactions contemplated by the Stalking Horse Purchase Agreement (including fees, costs and expenses of any professionals (including financial advisors, outside legal counsel, accountants, experts and consultants) retained by the Stalking Horse Bidder or its affiliates in connection with or related to the authorization, preparation, investigation, negotiation, execution and performance of the Stalking Horse Purchase Agreement and the transactions contemplated thereby, including the Debtors' bankruptcy cases and other judicial and regulatory proceedings related to such transactions) in an amount not to exceed $1,500,000 (the "Expense Reimbursement") in accordance with the terms and conditions of the Stalking Horse Purchase Agreement. The Expense Reimbursement shall

TTH
H:\Windows7\My Documents\Ord v3.docx

4      ORDER APPROVING OVERBID PROCEDURES AND RELATED
         MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTORS

Case: 14-51955      Doc# 148-5      Filed: 06/30/14      Entered: 06/30/14 13:44:57      Page 7
of 25

have priority as an administrative expense under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

### The Auction and Sale Hearing

13.     The Auction shall take place at the offices of Debtors' counsel, Dorsey & Whitney LLP, 305 Lytton Avenue, Palo Alto, California, 94301, on July 9, 2014, at 9:00 a.m.  The Sale Hearing is hereby scheduled for July 11, 2014, at 4:00 p.m. (Pacific Daylight Time).

### Notice of Bid Procedures and Sale Motion

14.     Not later than ____ days after the entry of this Bid Procedures Order, the Debtors shall cause notice of the Sale Hearing (the "Sale Notice") and a copy of this Bid Procedures Order and the approved Bid Procedures to be sent by first-class mail, postage-prepaid, to: (i) the Committee and its counsel; (ii) all entities that claim any lien on the Debtors' assets; (iii) all non-debtor parties to executory contracts and unexpired leases (collectively, "Contract Counterparties") which the Debtors may seek to assume and assign to the Successful Bidder; (iv) all governmental taxing authorities that have, or as a result of the sale of any of the Debtors' assets may have, claims, contingent or otherwise, against the Debtors; (v) all parties that have filed requests for notices or have appeared under Bankruptcy Rules 2002 and/or 9010(b); (vi) all interested governmental, environmental and pension entities; (vii) the Office of the United States Trustee; (viii) to the extent practicable, all entities which have expressed to the Debtors or Gerbsman Partners an interest in purchasing any of the Assets, within the 12 months prior to the Petition Date; and (ix) all creditors listed on the Debtors' Schedule D filed in the bankruptcy cases (the "Notice Mailing List").

15.     Not later than ____ days after the entry of this Bid Procedures Order, the Debtors shall cause the Sale Notice to be sent by first-class mail, postage-prepaid, to all entities on the Debtors' Creditor Matrix filed in the bankruptcy cases, and, to the extent not included therein, all entities scheduled by the Debtors as holding claims or which have filed proofs of claim, and all equity holders of the Debtors.

16.     The Debtors are authorized to use the service lists maintained by their counsel for all mailings contemplated hereunder (rather than the Court's mailing matrix) in satisfaction of the

requirements of Bankruptcy Local Rule 2002-1(c); and provided further, the Debtors are authorized use an outside copy service of their choosing to handle the duplication and mailing of all pleadings to be mailed in connection with the Sale, utilizing the service lists maintained by Debtors' counsel.

### Notice of Assumption Motion

17.     Not less than ____ days prior to the Sale Hearing, the Debtors shall cause the Assumption Notice to be served on the Notice Mailing List, via first class mail, postage prepaid, with an attached schedule setting forth the Cure Costs.  If no Cure Cost amount is listed, the Debtors shall state in the notice that they believe that there is no Cure Cost owing to the party to such executory contract or unexpired lease.

### Moving Papers (Bid Procedures, Sale Motion and Assumption Motion)

18.     Following entry of this Bid Procedures Order, the Debtors shall cause, not less than ____ days before the Sale Hearing, service of the Sale Motion (which shall include as an exhibit the Stalking Horse Purchase Agreement with Doosan (excluding any confidential exhibits or schedules)), the Assumption Motion, and all declarations in support thereof, by first-class mail, postage prepaid, on: (i) the Office of the United States Trustee for the Northern District of California, San Jose Division; (ii) the Committee and its counsel; (iii) all entities (or counsel therefor) known to have asserted any lien, claim, encumbrance, right of refusal, or other property interest in or upon the Debtors or the Assets; (iv) all parties that have expressed a bona fide interest in acquiring the Assets or that the Debtors believe may be interested in proposing a bid for the Assets of the Company; (v) the Internal Revenue Service and all applicable state and local taxing authorities; (vi) all entities who have filed a notice of appearance and request for service of papers in these cases; and (vii) all Contract Counterparties (collectively, the "Motion Service List").

### Designation Re Stalking Horse

19.     Notwithstanding anything to the contrary in the Bid Procedures Motion, the Debtors shall not be required to file the Designation Re Stalking Horse.

### Objection Bar Dates

20.     Objections, if any, to the Sale, must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules; (c) be filed with the Clerk of the Bankruptcy Court for the Northern District of California, San Jose Division, 280 South First Street, Room 3035, San Jose, California 95113, on or before _____, 2014, and (d) be served no later than _____, 2014, upon (a) Debtors' counsel, John Walshe Murray of Dorsey & Whitney LLP, 305 Lytton Ave., CA 94301, facsimile (650) 644-0274, email: murray.john@dorsey.com; (b) the Office of the United States Trustee, Attn: John Wesolowski, 280 South First Street, Room 268, San Jose, CA 95113, facsimile (408) 535-5532, email: john.wesolowski@usdoj.gov; (c) counsel for the Committee, Howard L. Siegel of Brown Rudnick LLP, 185 Asylum Street, Hartford, CT 06103, facsimile (860) 509-6619, email: hsiegel@brownrudnick.com; and (d) counsel for Doosan, Scott K. Charles of Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019, facsimile (212) 403-2000, email: skcharles@wlrk.com (the foregoing are collectively referred to as the "Service Parties").

21.     The Contract Counterparties shall have until **July 8, 2014**, (the "Cure Bar Date") (i) to object to the assumption and assignment of any of any Assumed Contracts, or (ii) object to the amount of the Cure Cost amounts, or (iii) to assert that non-monetary defaults, conditions or pecuniary losses or other amounts must be cured or satisfied (including all compensation for any pecuniary loss resulting from a default in respect of the Assumed Contracts) under any of the Assumed Contracts in order for such Assumed Contracts to be assumed and assigned. Such Contract Counterparty must file and serve an objection upon the Service Parties (the "Assumption and/or Cure Objection") setting forth (i) the basis for the objection (non-monetary or otherwise), and, if applicable, (ii) the amount the party asserts as the cure amount and/or the amount of all compensation for any actual pecuniary loss resulting from a default in respect of the Assumed Contracts (with appropriate documentation in support thereof). If no objection is received by the Cure Bar Date, the Cure Cost amounts attached to the Assumption Notice shall be controlling as to the amount necessary to be paid to cure under section 365(b)(1)(A) and (B), notwithstanding anything to the contrary in any Assumed Contract or other document, and the non-debtor Contract

Counterparty to the Assumed Contract shall be forever barred from asserting any claims for the Cure Costs, including any other defaults, but not limited to pecuniary losses, that otherwise might or should have been asserted by the such Contract Counterparty to the Assumed Contracts, against the Debtors, any buyer or such other purchaser of the Purchased Assets, through the effective date of the assumption and assignment in respect of such Assumed Contract, and each Contract Counterparty to any Assumed Contracts shall be deemed to have consented to the assumption and assignment of the Assumed Contract to the purchaser of the Purchased Assets.

22.     The failure of any person to file its objection timely and in accordance with the requirements of this Bid Procedures Order shall bar the assertion at the Sale Hearing or thereafter of any objection to either the Sale Motion or the Assumption Motion and the Debtors' consummation and performance of the Purchase Agreement, including the sale and transfer of any of the Debtors' assets free and clear of any and all liens, claims and encumbrances (other than permitted encumbrances provided for expressly in the Purchase Agreement or alternative purchase agreement entered into with the Successful Bidder).  Notwithstanding anything herein to the contrary, if any Contract Counterparty to an Assumed Contract is not satisfied with the showing of adequate assurance of future performance by any bidder other than the Stalking Horse Bidder, than such Contract Counterparty shall have the right to raise that objection to the Assumption Motion at the time of the Sale Hearing.

**Reply Papers**

23.     Replies to any objections to the Sale Motion and to any Assumption and/or Cure Objection shall be filed and served no later than _____ days prior to the Sale Hearing.  Service of reply papers shall be effected via the Court's ECF system, email or facsimile, where available, or via first class mail, postage prepaid, on the Service Parties and on the applicable objecting party.

**Additional Provisions**

24.     Service of the notices described herein on the parties entitled to receive such notices pursuant to this Bid Procedures Order shall constitute proper, timely, adequate and sufficient notice thereof and satisfies the requirements of sections 105 and 363 of the Bankruptcy Code, Rules 2002,

TTH
H:\Windows7\My Documents\Ord v3.docx

8     ORDER APPROVING OVERBID PROCEDURES AND RELATED
      MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTORS

Case: 14-51955     Doc# 148-5     Filed: 06/30/14     Entered: 06/30/14 13:44:57     Page 11
of 25

6004, 7004, 9006 and 9014 of the Bankruptcy Rules and the requirements of the local rules of this Court, and no other or further notice is or shall be required.

25.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bid Procedures Order and the Bid Procedures.

26.     Each bidder participating at the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale that would violate Section 363(n) of the Bankruptcy Code.

27.     In the event the Debtors are unable to obtain Court approval of the Sale Motion or otherwise tender performance to any bidder, the sole remedy of any such bidder (other than Doosan whose rights are established by the Purchase Agreement) shall be the return of its deposit.

**THIS ORDER IS APPROVED AS TO FORM AND CONTENT:**

**BROWN RUDNICK LLP**

By:_____
    Howard L. Siegel
    Attorneys for the Official Committee of
    Unsecured Creditors

**WACHTELL, LIPTON, ROSEN & KATZ**

By:_____
    Scott K. Charles
    Attorneys for Doosan

**THE UNDERSIGNED HAS NO OBJECTION TO THE ENTRY OF THIS ORDER:**

**OFFICE OF THE UNITED STATES TRUSTEE**

By:_____
    John Wesolowski
    Staff Attorney

**\*\* END OF ORDER \*\***

TTH
H:\Windows7\My Documents\Ord v3.docx

9     ORDER APPROVING OVERBID PROCEDURES AND RELATED
    MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTORS

| | |
|---|---|
| 1 | **Court Service List** |
| 2 | **ECF Registered Participants** |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

TTH
H:\Windows7\My Documents\Ord v3.docx

10   ORDER APPROVING OVERBID PROCEDURES AND RELATED
MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTORS

## BID PROCEDURES

In the exercise of their good faith reasonable business judgment, ClearEdge Power, Inc., ClearEdge Power LLC and ClearEdge Power International Service LLC (collectively, the "Debtors") have determined to solicit and complete a set of related transactions (collectively, the "Sale Transaction") selling substantially all of the Debtors' assets, in whole or in part (the "Assets"), subject to the approval of the United States Bankruptcy Court for the Northern District of California, San Jose Division, Courtroom 3070, 280 S. First Street, San Jose, CA 95113-3099 (the "Bankruptcy Court" or the "Court") after an opportunity for Qualified Bidders (as defined below) to submit competing bids ("Competing Bid(s)" or "Bid(s)") at an auction (the "Auction").

The Debtors have executed an Asset Purchase Agreement (collectively with all ancillary documents and agreements, the ("Stalking Horse Purchase Agreement") with [BUYER], as purchaser (the "Stalking Horse Bidder"), dated as of June [ ], 2014, which contemplates a Sale Transaction for the sale of the Purchased Assets (as defined in the Stalking Horse Purchase Agreement) to the Stalking Horse Bidder or its designee(s) in consideration for the Purchase Price (as defined in the Stalking Horse Purchase Agreement), all subject to the terms and conditions set forth in the Stalking Horse Purchase Agreement, and subject to higher and better bids as determined by the Debtors and the Committee in accordance with these Bid Procedures (as defined below).

Subject to approval of the Bankruptcy Court, the procedures hereinafter set forth (the "Bid Procedures") will govern the bidding and sale process. As provided below and in the Stalking Horse Purchase Agreement, the Bid Procedures will be incorporated into a binding order (the "Bid Procedures Order") entered by the Bankruptcy Court.

### Bidding Process

The Debtors and the Official Committee of Unsecured Creditors (the "Committee") shall jointly:

(a)      Coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Assets[1];

(b)      Determine whether any person is a Qualified Bidder (as defined below);

(c)      Determine whether a Potential Bidder has made a Qualified Bid (as defined below); and

(d)      Administer the Auction.

---

[1] Capitalized terms not otherwise defined herein will have the meanings ascribed to them in the MOTION FOR ORDER APPROVING BID PROCEDURES AND RELATED MATTERS RE SALE OF CERTAIN ASSETS OF DEBTORS (the "Bid Procedures Motion") or the [SUPPLEMENTAL BID PROCEDURES MOTION] (the "Supplemental Bid Procedures Motion"), as applicable.

## Participation Requirement

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, each interested person must first deliver to: TGI Financial, Inc. dba Gerbsman Partners ("Gerbsman" or "Gerbsman Partners"), Attn: Steven R. Gerbsman, email steve@gerbsmanpartners.com, tel.: 415 505-4991, an executed confidentiality agreement in form and substance reasonably acceptable to the Debtors. Upon an interested person's satisfaction of the participation requirements described herein, such bidder will be deemed to be a "Potential Bidder."

No Potential Bidder shall consult with any other Potential Bidder following execution of the confidentiality agreement and prior to the conclusion of the Auction, or submit at any time a "joint bid" with any other Potential Bidder, without the express consent of the Debtors and the Committee.

## Access To Due Diligence Materials

The Debtors shall afford each Potential Bidder due diligence access to the Debtors' assets and business, subject to competitive and other business concerns, which diligence may include access to the Debtors' electronic data room, management presentations and site visits, and such other diligence as Potential Bidders may request and to which the Debtors and the Committee may both agree; provided, however, that the Debtors shall have no obligation to provide due diligence access to any Potential Bidder after the Auction. The Debtors will coordinate efforts to accommodate all reasonable requests for additional information and due diligence access for Potential Bidders. Unless otherwise jointly determined by the Debtors and the Committee, the availability of additional due diligence to a Potential Bidder will cease on the Auction date; provided, however, that the "Successful Bidder(s)" shall be permitted to continue to conduct due diligence until the closing of the Sale Transaction (subject to the terms of the Successful Bidder Purchase Agreement (as defined below)); provided, further, however, that a Qualified Bid shall not be subject to further due diligence after the Bid Deadline. The Debtors will provide to each Potential Bidder the Stalking Horse Purchase Agreement.

The Debtors (and their respective staff, agents, attorneys or representatives) make no representation or warranty as to the information to be provided through the due diligence process or otherwise, except to the extent set forth in the asset purchase agreement (the "Successful Bidder Purchase Agreement") with the Successful Bidder (as defined below). Each Potential Bidder, as a consequence of the due diligence access granted to it, shall be deemed to acknowledge and represent (i) that it has had an opportunity to inspect and examine the Debtors' assets and business and to review all pertinent documents and information with respect thereto; (ii) that it is not relying upon any written or oral statements, representations, or warranties of the Debtors, the Committee, or Gerbsman Partners, or their respective staff, agents, attorneys or representatives except as set forth in the Successful Bidder Purchase Agreement; and (iii) all such documents and reports have been provided solely for the convenience of the Potential Bidder, and the Debtors and Gerbsman Partners (and their respective employees, agents,

2

attorneys, representatives, consultants and financial advisors) do not make any representations as to the accuracy or completeness of the same.

## Bid Deadline

The deadline for submitting bids by a Potential Bidder is **July 7, 2014, at 12:00 p.m. (Pacific Daylight Time)** (the "Bid Deadline"). No later than the Bid Deadline, a Potential Bidder that desires to make a bid to acquire all or any part of the Assets (a "Bid") shall deliver written copies of its Bid in both written and electronic format to: (1) counsel for the Debtors, Dorsey & Whitney LLP, 305 Lytton Avenue, Palo Alto, CA 94301, Attn: John Murray, Esq., email: murray.john@dorsey.com ("Mr. Murray"); (2) counsel for the Committee, Brown Rudnick LLP, 2211 Michelson Drive, 7th Floor, Irvine, CA 92612, Attn: Cathrine Castaldi, Esq., email: ccastaldi@brownrudnick.com; (3) Gerbsman Partners, Attn: Steven R. Gerbsman, email steve@gerbsmanpartners.com; and (4) counsel for the Stalking Horse Bidder, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10025, Attn: Scott K. Charles, Esq., email: skcharles@wlrk.com (collectively, the "Notice Parties"); provided, however, that the evidence of financial ability to perform described in subparagraph (i) below may be provided to counsel for the Stalking Horse Bidder in redacted form to protect material non-public information.

## Determination of Qualified Bid Status

In order to be eligible for consideration as a Qualified Bid (defined below), each Bid must satisfy each of the following conditions:

(a)   Assets: Bids may be submitted for all or part of the Assets. Bids must identify, with specificity, which Assets are included in such Bid.

(b)   Marked Purchase Agreement: A Bid must be accompanied by an executed asset purchase agreement with and a black-lined version of such agreement to show changes from the Stalking Horse Purchase Agreement (including any schedules or disclosures that are a part thereof) showing the purchase price and any changes to the Stalking Horse Purchase Agreement requested by the Potential Bidder, including those related to the assumption and assignment of contracts and licenses, and other material terms such that the Debtors and Committee may determine how such Bid compares to the terms of the Stalking Horse Purchase Agreement and Competing Bids.

(c)   Combining Bids: The Debtors and Committee may jointly determine that the sum of bids for less than all of the Assets is collectively the best and highest bid for all of the Assets and, upon such joint determination, may combine such bids.

(d)   Joint Bids: Prospective Qualified Bidders may submit a "joint competing bid" for the Assets; provided, however, that the identity of each bidder participating in such "joint bid" must be disclosed in the Bid, and such "joint bid" will be subject to section 363(n) of the Bankruptcy Code.

(e)   Conditions/Contingencies: Except as provided in the Stalking Horse Purchase Agreement, a Qualified Bid must not be subject to material conditions or

3

contingencies to closing, including without limitation governmental approval, obtaining financing, internal approvals or further due diligence.

(f) No Bid Protections: The Bid must not entitle a bidder to any break-up fee, termination fee or similar type of payment or reimbursement and, by submitting a bid, the Potential Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or the bidding process.

(g) Authorization: A Bid must include evidence of authorization and approval, subject to verification by the Debtors, Gerbsman and the Committee, from such Potential Bidder's board of directors or governing body with respect to the submission, execution, delivery and closing.

(h) Good Faith Deposit: Each Qualified Bid shall be accompanied by a good faith cash deposit (a "Good Faith Deposit") in the amount of 10% of the Purchase Price in the form of a wire transfer, certified check or other form acceptable to the Debtors and the Committee. Each good faith deposit will be deposited and held in the trust account of Dorsey & Whitney LLP, counsel to the Debtors ("Dorsey"). Requests for wire transfer instructions should be directed to Mr. Murray.

(i) Evidence Of Financial Ability To Perform: Each Bid must contain evidence satisfactory to the Debtors and the Committee that the bidder is reasonably likely (based upon financial wherewithal, availability of financing, experience and other considerations) to be able to timely consummate a Sale Transaction if selected as the Successful Bidder, and must further contain information that can be publicly filed and/or disseminated providing adequate assurance of future performance of all contracts and leases to be assumed and assigned. Such evidence must include, without limitation, the Potential Bidder's most current audited and latest unaudited financial statements or, if the bidder is an entity formed for the purpose of making a bid, the current audited and latest unaudited financial statements of the equity holder(s) of the bidder or such other form of financial disclosure, and a guaranty from such equity holder(s).

(j) Bid Irrevocable/Back-up Bid: A Bid (other than the Stalking Horse Bid) must provide that it is irrevocable until two (2) business days after the closing of the Sale. Each Potential Bidder (other than the Stalking Horse Bidder) further agrees that its Bid, if not chosen as the Successful Bidder, shall serve, without modification, as a Back-up Bidder (as defined below) or Alternate Back-up Bidder (as defined below) as may be jointly designated by the Debtors and the Committee at the Sale Hearing, in the event the Successful Bidder fails to close as provided in the Purchase Agreement, as modified, if at all, and the Sale Order. The Stalking Horse Bidder shall not have any obligation to serve as a Back-up Bidder or Alternate Back-up Bidder under any circumstances.

4

(k)     A written statement agreeing to being contractually bound by all of the terms of these Bid Procedures.

After the Bid Deadline, the Debtors and the Committee will immediately review all Bids and will notify any Potential Bidder whose Bid does not meet the above requirements why such Bid is insufficient. All Bidders shall have until July 8, 2014 (the "Qualifying Bid Deadline"), to cure any deficiencies in their Bids in order to become Qualified Bids. A Bid received from a Potential Bidder on or before the Qualifying Bid Deadline that meets the above requirements, in the Debtors' and Committee's joint determination, will constitute a qualified bid (a "Qualified Bid"). Upon the submission of a Bid that constitutes a Qualified Bid, such bidder will be deemed to be a "Qualified Bidder". No later than July 8, 2014 all Bidders shall be notified whether or not their Bids are Qualified Bids. For purposes hereof, notwithstanding any failure to satisfy any of the above conditions, the Stalking Horse Bid is a Qualified Bid. In the event a Bid is determined not to be a Qualified Bid, such Bidder shall be refunded its good faith deposit within three (3) business days of that determination.

## The Auction and Sale Hearing

The Debtors shall hold the Auction on **July 9, 2014, at 9:00 a.m. (Pacific Daylight Time)** at the offices of Dorsey & Whitney LLP, 305 Lytton Avenue, Palo Alto, CA 94301, at which time the Debtors, in coordination with the Committee, shall conduct the Auction, and the Sale Hearing to consider approval of the Successful Bid(s) (as defined below) shall be held on **July 11, 2014 at 4:00 p.m. (Pacific Daylight Time)** at the Bankruptcy Court before the Honorable Charles Novack, United States Bankruptcy Judge. The Auction may be postponed, adjourned or cancelled as the Debtors and the Committee in their joint determination deem appropriate. Reasonable notice as is reasonably practicable under the circumstances of such postponement or adjournment and the time and place for the commencement or resumption of the Auction or cancellation shall be given to all Bidders.

The Debtors and their advisors will conduct the Auction. At the beginning of the Auction, the Debtors shall announce (a) of the Qualifying Bid(s) which is the highest and best Bid(s) for each of the Assets (the "Opening Bid(s)"), and (b) the manner in which the bidding will be conducted. Any disputes arising with respect to any aspect of the Auction will be resolved jointly by the Debtors and the Committee; provided, however, that if the Debtors and the Committee cannot agree, the Bankruptcy Court shall resolve any such dispute on an expedited basis.

All Qualified Bidders, including the Stalking Horse Bidder (each, a "Competing Bidder" and together, "Competing Bidders"), if any, may submit further Competing Bids, along with a markup or a further markup of the applicable purchase agreement. The Auction will be conducted in rounds. All bidders are required to bid in each round or they forfeit their right to participate in subsequent rounds. At any time, a bidder may request that the Debtors announce the then current highest and best bid. If requested, the Debtors shall use reasonable efforts to clarify any and all questions any Qualified Bidder may have regarding the Debtors' announcement of the then current highest and best bid. Unless otherwise agreed by the Debtors and the Committee, Bidders will have up to thirty minutes between bidding rounds. If a bidder is

5

not present in time to submit a bid in the next round, that bidder forfeits its right to participate in subsequent rounds, unless otherwise agreed by the Debtors and the Committee.

The Opening Bid (if other than the Stalking Horse Bid) and each Competing Bid made at the outset of the Auction for the Assets in a single Sale Transaction following announcement of the Opening Bid or Bids must be, at a minimum, equal to the sum of (i) the Purchase Price (as defined in the Stalking Horse Purchase Agreement); (ii) $1.5 million representing the Expense Reimbursement (defined below); and (iii) $500,000 (such sum, the "Minimum Bid Threshold").

Each Competing Bid thereafter must be in increments of no less than $250,000; provided, however, that the Debtors and the Committee reserve the right, in their joint determination, to modify the incremental bidding requirement at the Auction.

An overbid made by a Competing Bidder must remain open and binding on the Competing Bidder for (a) each round of bidding, and (b) for those Competing Bidders (other than the Stalking Horse Bidder) not selected as the Successful Bidder for purposes of serving as a Back-up Bid or Alternate Back-up Bid (as defined below). For the avoidance of doubt, the Stalking Horse Bidder shall incur no obligation to serve as Back-up Bidder or Alternate Back-up Bidder as a result of making any such Competing Bid.

All bids must be in cash or non-cash consideration, which such non-cash consideration shall be valued by the joint determination of the Debtors and the Committee in their discretion, which determination shall give effect to the Expense Reimbursement, and, among other things, take into account any liabilities to be assumed by a Qualified Bidder (including cure costs) and any cost that may be imposed on the Debtors by such Qualified Bid.

The Debtors and the Committee may jointly (a) determine which Qualified Bid, if any, is the highest and best bid for the Assets, and (b) reject at any time before the entry of the Sale Order any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtors, the bankruptcy estates, and creditors and interest holders thereof.

At the conclusion of the Auction, the Debtors shall announce the winner of the auction (the "Successful Bidder(s)") and request that the Court enter the Sale Order reciting the same.

The Debtors and the Committee may jointly determine to employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (1) not inconsistent with these Bid Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court or any other applicable court entered in connection herewith, and (ii) disclosed to each Qualified Bidder at the Auction.

The Debtors and Committee may, in their joint determination, prior to or during the auction, postpone or terminate the auction and the sale process without selecting any Bid as the Successful Bid. Neither the Debtors, their bankruptcy estates, the Committee, and their respective employees, agents, attorneys, representatives, consultants and financial advisors shall have any liability to anyone if the Debtors and Committee decide to postpone or terminate the auction and the sale process.

6

The Debtors and Committee may modify these Bid Procedures if they jointly determine, in their sole and absolute discretion, such modifications to be in the best interest of the bankruptcy estates; provided, however, that (i) the Sale Hearing shall occur no later than July 11, 2014 except as may be agreed by the Debtors and the Committee, with the consent of the Stalking Horse Bidder (which consent shall not be unreasonably withheld), or as may otherwise be ordered by the Court, and (ii) the Debtors and Committee may not without the consent of the Stalking Horse Bidder (which consent shall not be unreasonably withheld), (x) modify the Stalking Horse Bidder's rights with respect to the timing of the Auction and Sale Hearing or the right to have effect given to the Expense Reimbursement, or (y) waive conditions to a Bid being a Qualified Bid requiring a Good Faith Deposit and evidence of financial ability to perform.

### Bid Protections

In the event the Stalking Horse Bidder is not the Successful Bidder, the Debtors shall pay in consideration of its being the Stalking Horse Bidder and to reimburse it for its reasonable and necessary out of pocket expenses, including all professional fees, an amount up to $1.5 million (the "Expense Reimbursement") to be paid in accordance with the terms and conditions set forth in the Stalking Horse Purchase Agreement and as approved by the Bankruptcy Court. No other bidder will be entitled to any expense reimbursement, break-up fee, termination or similar fee or payment. Such payments are conditioned on the close of a Sale Transaction.

### "As Is Where Is"

The sale of the Assets will all be on an "as is, where is" basis without representations or warranties of any kind or nature, except to the extent set forth in the purchase agreement(s) with the Successful Bidder(s). All such representations and warranties will expire at the closing of the Sale Transaction. Except as may be set forth in such purchase agreement(s), the Assets are sold free and clear of any and all liens, claims, interests, encumbrances, restrictions, charges and encumbrances of any kind or nature (collectively, the "Claims") to the fullest extent permissible under the Bankruptcy Code, with such liens, claims, interests, encumbrances, restrictions, charges, and encumbrances to attach to the net proceeds of sale in their order of priority.

Notwithstanding the foregoing, the Debtors and the Committee each reserve the right to contest the validity, nature, extent, or priority of and/or seek to set aside or avoid any and all Claims under applicable law.

### Conclusion of the Auction, Determination of the Successful Bidder and Sale Hearing

At the conclusion of the bidding, the Debtors and the Committee shall jointly (1) determine the Successful Bidder(s) on the basis of, among other things: (a) the amount of the Qualified Bid(s), (b) the number, type and nature of any modifications to the Stalking Horse Purchase Agreement, and the extent to which such modifications are likely to delay the closing of a sale of the Assets to be purchased and the costs attendant thereto, (c) the likelihood of the bidder's ability to close a Sale Transaction and the timing thereof, (d) the net value to the Debtors' estates as jointly determined by the Debtors and the Committee after giving effect to the Expense Reimbursement, and, among other things, taking into account any liabilities to be assumed by a Qualified Bidder (including cure costs) and any costs which may be imposed on

7

the Debtors by such Qualified Bid, and (e) any other factors the Debtors and Committee may jointly and reasonably deem relevant, provided, however, that if the Debtors and the Committee cannot agree, such dispute shall be resolved on an expedited basis by the Bankruptcy Court; and (2) submit the highest and best bid, as jointly determined by the Debtors and the Committee (the "Successful Bid"), for approval by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code. For avoidance of doubt, the Debtors and the Committee may jointly select a combination of Qualified Bids for the Assets in multiple lots, in determining the Successful Bid(s).

Prior to the Debtors submitting a Successful Bid to the Bankruptcy Court for approval, such Successful Bidder shall present evidence to the Court establishing to the Court's satisfaction such bidder's provision of adequate assurance of future performance of executory contracts and unexpired leases to be assumed and assigned to such bidder.

Any Qualified Bidder that intends to request that the Bankruptcy Court make a finding under Bankruptcy Code Section 363(m) that such bidder's purchase of any portion of the Assets or the assignment to it of an executory contract or unexpired lease is in good faith, shall, in advance of the Sale Hearing, file with the Court and serve on the Service Parties (as defined in Section 29-a of the Bid Procedures Motion), a written declaration of a competent witness demonstrating (a) the bidder's good faith, and (b) the absence of fraud or collusion between the bidder and any other bidder, party or the Debtors or their representatives. The declaration must also disclose any facts material to the good faith determination, including:

(a)     The bidder's pre- and post-petition relationships with (i) any other bidder, (ii) the Debtors or the Debtors' current or former officers, directors, agents or employees, and (iii) any of the Debtors' major creditors or equity security holders;

(b)     The bidder's anticipated relationship after the sale with any of the Debtors' current or former officers, directors, agents or employees;

(c)     Whether any offers of employment or compensation have been or will be made to any of the Debtors' current or former officers, directors, agents or employees; and

(d)     Whether the bidder has paid or contemplates paying consideration in connection with the sale to any person other than the Debtors.

Prior to the conclusion of the Sale Hearing, the Debtors and Committee shall jointly designate the next highest and best bid to serve as the first back-up bid (the "Back-up Bid" of the "Back-up Bidder"), and one or more alternate back-up bids (each, an "Alternate Back-up Bid" of an "Alternate Back-up Bidder"), as applicable, for the Assets. For the avoidance of doubt, the Stalking Horse Bidder shall not have any obligation to serve as a Back-up Bid or Alternate Back-up Bid.

In the event the Successful Bid is approved but not consummated by the closing date designated in the Successful Bidder Purchase Agreement (or such later date as the Debtors, the Committee, and the applicable Successful Bidder shall mutually agree in writing), the Debtors and the Committee will request that the next highest and best bid (i.e., the Back-up Bid), and the next highest and best bid to that bid (i.e., the first Alternate Back-up Bid), and so on, be

8

approved without the necessity of further order of the Bankruptcy Court, and that such bidder be required to consummate the Sale Transaction contemplated in its bid within seven (7) business days of being declared the Successful Bidder.

In the event a Successful Bid is not consummated, the Debtors shall notify each Back-Up Bidder and Alternate Back-up Bidder within one (1) day of such bidder's designation as the new Successful Bidder, Back-up Bidder or next Alternate Back-up Bidder, as applicable.

The Debtors and the Committee may jointly determine, prior to or during the auction and sale process, to postpone or terminate the auction and sale process without selecting any Bid as the Successful Bid. Neither the Debtors, their bankruptcy estates, the Committee, nor their respective employees, agents, attorneys, representatives, consultants and financial advisors shall have any liability to anyone if the Debtors postpone or terminate the auction and the sale process.

### Treatment of Deposits

The good faith deposit of the Successful Bidder will be applied to the purchase price of such Sale Transaction at the closing date of the Sale set forth in its Purchase Agreement.

The good faith deposit of each of the Back-up Bidders and Alternate Back-up Bidders will be held in held in Dorsey's trust account until the earlier of five (5) business days after the close of the Sale Transaction contemplated in the Successful Bid(s), and thereafter returned (with the interest earned thereon) to the Back-up Bidder and/or Alternate Back-up Bidder. The good faith deposits of any Bidder not selected as a Back-up Bidder or an Alternate Back-up Bidder will be held in Dorsey's trust account until no later than two (2) business days after the Sale Hearing, and thereafter returned (with the interest earned thereon) to the respective bidders. If a Successful Bidder, Back-up Bidder, or Alternate Back-up Bidder, as applicable, fails to consummate an approved sale because of a breach or failure to perform on the part of such Bidder, the Debtors (a) shall retain the good faith deposit of such Bidder as liquidated damages resulting from the breach or failure to perform by such Bidder; and (b) be authorized, but not required, to consummate the Back-up Bid, or Alternate Back-up Bid, as applicable, without further notice or order of the Bankruptcy Court. Each other Qualified Bidder (including the Stalking Horse Bidder to the extent it is not the Successful Bidder) shall be refunded its good faith deposit within three (3) business days of the end of the Sale Hearing.

### Expedited Dispute Resolution Procedure

Notwithstanding the foregoing, in the event that the Debtors and the Committee cannot reach agreement with respect to any aspect(s) of these Bid Procedures which require the joint determination of the Debtors and the Committee, the Debtors and the Committee agree that the dispute(s) shall be immediately referred to the Bankruptcy Court for final determination on an expedited basis.

61678728 v1-WorkSiteUS-031808/0001

9

**Exhibit G**

**ALLOCATION PRINCIPLES**

The Purchase Price (together with any items treated as additional consideration for Tax purposes, the "**Allocated Consideration**") shall be allocated among the Purchased Assets:

| Assets | Allocation |
|---|---|
| Class I Assets (within the meaning of Treasury Regulations Section 1.338-6(b)(2)). | An amount equal to the aggregate amount of Class I Assets actually acquired pursuant to Section 2.1(r), if any. |
| Class II Assets (within the meaning of Treasury Regulations Section 1.338-6(b)(2)). | An amount equal to the aggregate amount, if any, reflected for such assets on the most recent Unaudited Financial Statements. |
| Class III Assets (within the meaning of Treasury Regulations Section 1.338-6(b)(2)). | An amount equal to the aggregate amount, if any, reflected for such assets on the most recent Unaudited Financial Statements. |
| Class IV Assets (within the meaning of Treasury Regulations Section 1.338-6(b)(2)). | An amount equal to the aggregate amount, if any, reflected for such assets on the most recent Unaudited Financial Statements. |
| Class V Assets (within the meaning of Treasury Regulations Section 1.338-6(b)(2)). | An amount equal to the aggregate amount, if any, reflected for such assets on the most recent Unaudited Financial Statements. |
| Class VI and Class VII Assets (in each case, within the meaning of Treasury Regulations Section 1.338-6(b)(2)). | Any remaining balance of the Allocated Consideration. |

**SELLER DISCLOSURE LETTER**

### Schedule 2.6(a)
### Cure Costs

| Name | Description | Contract Cost |
|---|---|---|
| New Albertson's, Inc. | Service agreement | 0.00 |
| 777 Residential LLC | Equipment and service customer agreement | 0.00 |
| ABB Inc. | Manufacturing and Supply Agreement | 2,464,698.06 |
| AC Transit | Sale and Service Letter Agreement | 0.00 |
| Agility Recovery | | 1,125.00 |
| American Stores Company LLC | Service agreement | 0.00 |
| Ameresco Inc. | Maintenance and Services Contract | 0.00 |
| Amgraph Packaging | Equipment and service customer agreement | 35,695.00 |
| ARI Fleet | Car lease | 73,616.00 |
| AT&T | One AT&T Corp.; One AT&T Way; Bedminister, NJ, VPN Service Pricing Schedule | 12,376.64 |
| Beacon Capital Partners LLC | Equipment and service customer agreement | 0.00 |
| B-G Mechanical Services, Inc. | Subcontract –installation  7/20/2012 | See Verizon Sourcing LLC below. |
| Biofuels Energy, LLC | Equipment and Services Contract | 0.00 |
| BP | Equipment and service customer agreement | 0.00 |
| BP America Production Company | Agreement; Contract No. CW2029818 | 0.00 |
| Branford Public Schools | Equipment and service customer agreement | 0.00 |
| Brent Buhrman | UNIT NEVER SHIPPED<br>Home Improvement Agreement | 1,000.00 |
| Bruce Raabe | Equipment and service customer agreement | 1,156.00 |
| Cabela's Wholesale Inc. | Equipment and service customer agreement | 0.00 |

W/2296898

| California Power Partners | M5 SYSTEM SHIPPED<br>Purchase Order<br>PO 1 - Lewis & Clark Community College | 0.00 |
|---|---|---|
| California Power Partners | M5 SYSTEM SHIPPED<br>Purchase Order<br>PO 2 -Missouri Institute of Science & Tech | 0.00 |
| California Power Partners | M5 SYSTEM NOT YET SHIPPED<br>Purchase Order<br>PO 3 - University of Kentucky | 0.00 |
| Candida Burnap | UNIT NEVER SHIPPED<br>Sales Contract | 1,000.00 |
| Capstone Turbine Corporation | | 0.00 |
| CBS Operations and Administration | Energy Services Agreement, related amendments | 0.00 |
| CHB Investment Company | Standard Industrial/Commercial Multi-Tenant Lease,<br>Los Alamitos, CA, related addenda | 0.00 |
| Christopher Kelly | R4B SYSTEM WAS INSTALLED & STARTED UP<br>w/ 5 YR WARRANTY<br>Equipment Exchange Agreement & Mutual Release<br>CEP will continue monthly lost savings payments<br>Customer will purchase a 10 year service agreement<br>CEP will deliver new M5 | 115,000.00 |
| Christopher Peatross | Residential Purchase Agreement | 0.00 |
| Christopher Peatross | Services Contract Comprehensive | 0.00 |
| City Of Anaheim | Equipment and service customer agreement | 0.00 |
| City Of Hartford | Equipment and service customer agreement | 0.00 |
| City Of Middletown | Equipment and service customer agreement | 49,079.00 |
| City Of New Haven | Equipment and service customer agreement | 0.00 |
| City Of New Haven, Bd Of Education | Equipment and service customer agreement | 0.00 |