JOHN WALSHE MURRAY (074823)
STEPHEN T. O'NEILL (115132)
ROBERT A. FRANKLIN (091653)
THOMAS T. HWANG (218678)
DORSEY & WHITNEY LLP
305 Lytton Avenue
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile:  (650) 857-1288
Email: murray.john@dorsey.com
Email: oneill.stephen@dorsey.com
Email: franklin.robert@dorsey.com
Email: hwang.thomas@dorsey.com

Attorneys for Debtors

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>**CLEAREDGE POWER, INC.**,<br>Employer Tax I.D. No. 20-0119415<br><br>**CLEAREDGE POWER, LLC**<br>Employer Tax I.D. No. 06-1517615<br><br>**CLEAREDGE POWER INTERNATIONAL SERVICE, LLC**<br>Employer Tax I.D. No. 27-3468551<br><br>Debtor(s).<br><br>920 Thompson Place, Suite 100<br>Sunnyvale, California 94085 | Case No. 14-51955-CN-11<br><br><br>Case No. 14-51956-CN-11<br><br><br>Case No. 14-51960-CN-11<br><br><br>Cases Jointly Administered<br>Under Chapter 11<br><br>Date: July 11, 2014<br>Time: 11:00 a.m.<br>Place: 280 S. First Street, Room 3070<br>San Jose, CA 95113<br>Judge: Honorable Charles Novack |

**DECLARATION OF GLORIA FAN IN SUPPORT OF
MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

I, Gloria Fan, declare:

1. I am the Chief Financial Officer of ClearEdge Power, Inc., an Oregon Corporation

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\PI\CE Inc\Sale\Mot Dec GF v4.docx

1

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955   Doc# 148-7   Filed: 06/30/14   Entered: 06/30/14 13:44:57   Page 1 of 15

("CEP Inc.") and ClearEdge Power, LLC, fka ClearEdge Power Corporation, fka UTC Power Corporation, a Delaware Limited Liability Company ("CEP LLC"), which is the sole manager and owner of ClearEdge Power International Service, LLC, a Delaware Limited Liability Company ("CEPIS" and together with CEP Inc. and CEP LLC, the "Debtors" or the "Company"). I have personal knowledge of the facts set forth in this Declaration and if called upon to testify, I would and could competently testify to the following.

2. The Debtors commenced these Chapter 11 cases on May 1, 2014 (the "Petition Date"). The Debtors are operating their businesses as debtors in possession pursuant to the provisions of 11 U.S.C. §§ 1107 and 1108.

3. I make this Declaration in support of the MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS (the "Motion") to Doosan Corporation ("Doosan"), subject to overbid, pursuant to the terms and conditions set forth in the Purchase Agreement.[1]

I. INTRODUCTION

4. During these bankruptcy cases, the Debtors retained Gerbsman Partners, effective May 1, 2014, as their investment banker and financial advisor to assist the Company in the evaluation of restructuring alternatives, in maximizing the Company's enterprise value, in canvassing the marketplace for potential investors or buyers, and in managing the Debtors' efforts to market and sell the Company's assets. As a result of the efforts of the Debtors and Gerbsman Partners, the Debtors have received, negotiated and accepted a bid for the Purchased Assets from Doosan and have designated Doosan as the "Stalking Horse Bidder".

5. The Sale is conditioned upon the assumption and assignment of certain executory contracts and unexpired leases of the Debtors (the "Assumed Contracts"). Additional details regarding the Assumed Contracts are set forth in the separate Assumption Motion which is scheduled for hearing on the same date and time as this Motion.

/ / /

---

[1] Capitalized terms not otherwise defined herein have the same meaning ascribed to them in the Motion.

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

2

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148-7    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 2 of 15

## II. SUMMARY OF PROPOSED SALE

6. The Motion sets forth a general description of the key points contained in the Purchase Agreement by and between Doosan and the Debtors. This description is offered for the convenience of interested parties, potential overbidders and the Court. It is recommended that all parties review the Purchase Agreement to gain a full and complete understanding of its contents.

- Purchased Assets – Doosan will purchase all of the Debtors' right, title and interest of any nature whatsoever in the assets identified in the Purchase Agreement, including, without limitation, the Assumed Contracts, licenses, permits and governmental authorizations required to operate the business, all avoidance claims or causes of action under Chapter 5 of the Bankruptcy Code or any similar actions under any other applicable law as against Designated Parties, free and clear of liens, claims, encumbrances and other interests, with the exception of certain Excluded Assets. Excluded Assets include cash, certain contracts and leases as designated by Doosan or the Successful Purchaser, the assets of any employee benefit plan, and other identified assets.

- Consideration – The purchase price for the Purchased Assets shall be equal to the sum of (a) $20,000,000 in cash for all Purchased Assets identified in the Purchase Agreement other than assets that are subject to an Encumbrance securing certain specified Secured Facilities ("Encumbered Assets"), (b) an aggregate amount of up to $15,000,000 for all Encumbered Assets to the extent provided in Schedule 2.4 to the APA, subject to the consent of the lenders under the applicable Secured Facility to sale of such Encumbered Assets free and clear of all such Encumbrances, and (c) assumption of certain Liabilities as expressly set forth in the Purchase Agreement (including, without limitation, payment of Cure Costs in respect of Assumed Contracts up to an aggregate amount of $12,899,000, subject to certain limitations set forth in the Purchase Agreement).

- Assumed Contracts – It is anticipated that many of the Debtors' executory contracts and unexpired leases will be assumed by the Debtors and assigned to Doosan. However, Doosan has the right to add or remove any contracts or leases from the list of Assumed Contracts up to three (3) days prior to the date of the Closing. Other qualified bidders at the Auction may do the same.

- Transfer Taxes – The parties each shall pay and shall be responsible for one half of any transfer taxes (and related costs, fees and expenses) imposed on or payable in connection with the transactions under the Sale. The parties agree to allocate the purchase price for tax purposes in accordance with certain schedules and methodologies detailed in the Purchase Agreement.

- Representations, Warranties and Covenants – The Purchase Agreement includes representations, warranties and covenants of the Debtors and Doosan that are customary for transactions of this type. Among other things, the Purchase Agreement also provides that the Debtors shall retain all liability to provide health care

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

3

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148-7    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 3 of 15

continuation coverage under the Consolidated Omnibus Budget Reconciliation Act to certain former employees and requires the Debtors to maintain in effect a group health plan for so long following the Sale as is necessary to ensure that they can satisfy their obligations in respect of such coverage. With limited exceptions, the representations and warranties do not survive the Closing of the Sale. Covenants and agreements which contemplate performance after the Closing shall survive the Closing in accordance with their terms.

- Bid Protections – In the event that (a) the Purchase Agreement is terminated by Doosan as a result of a breach or misrepresentation arising from the Debtors' gross negligence, willful misconduct or bad faith, (b) Doosan is not the successful bidder at the Auction or (c) the Court otherwise approves a Competing Transaction (as defined in the Purchase Agreement), the Purchase Agreement obligates the Debtors to reimburse Doosan for its out-of-pocket costs, fees and expenses up to the amount of $1,500,000. The Closing must occur by July 18, 2014 (subject to automatic extension by 30 calendar days if the only condition to the Closing that has not been satisfied or, to the extent permitted, waived (other than those conditions that by their nature can only be satisfied at or immediately prior to the Closing) is Doosan's receipt of all requisite clearances or approvals under the antitrust laws of the Republic of Korea), or Doosan may terminate the Purchase Agreement.

## III. THE PURCHASE PRICE IS REASONABLE AND THE SALE IS IN GOOD FAITH.

7. Prior to the Petition Date, as a result of mounting liquidity issues, the Debtors sought to secure additional contracts with international and domestic companies, as well as additional sources of financing. The Debtors' efforts, however, were ultimately unsuccessful. The Company retained Gerbsman Partners on April 22, 2014 to explore other alternatives to entering bankruptcy, following which Gerbsman commenced a sales and marketing process in an attempt to sell the Debtors' business as a going concern. On May 1, 2014, the Debtors determined it would be within their best interests to file for bankruptcy and continue to operate their business as a going concern while effectuating a sale under Section 363 of the Bankruptcy Code.

8. Upon the commencement of these cases, Gerbsman Partners immediately prepared a sales memorandum detailing the Company and its history, the Company's assets and the acquisition opportunity, and provided the memorandum, a form of Purchase Agreement and other information related to the proposed Sale and Bid Procedures, to prospective bidders.

9. Since the Petition Date, the Debtors have continued to engage in a diligent and concerted effort to explore merger and acquisition opportunities both through Gerbsman Partners and its own direct efforts. As set forth more fully in the Gerbsman Declaration, the Debtors, through

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

4

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148-7    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 4 of 15

Gerbsman Partners, have generated and received substantial interest in the Sale transaction opportunity, and, even after identification of Doosan as the Stalking Horse Bidder and the execution of the Purchase Agreement, the Debtors have continued to market the acquisition opportunity. The efforts of Gerbsman Partners and the Debtors led to the identification of Doosan as a potential purchaser.

10. The Committee, the members of which have significant experience and expertise in the industry, and its professionals have been actively involved with the sale and marketing process since appointment in these cases. The Committee supports the proposed Sale and the relief sought in the Motion. Based on the foregoing, the Debtors believe that Doosan's offer (subject to overbid at the Sale Hearing) satisfies the requirement that the price paid for the Purchased Assets be fair and reasonable.

11. Doosan requires that the closing of the Sale occur on or before July 18, 2014 (subject to automatic extension by 30 calendar days if the only condition to the Closing that has not been satisfied or, to the extent permitted, waived (other than those conditions that by their nature can only be satisfied at or immediately prior to the Closing) is Doosan's receipt of all requisite clearances or approvals under the antitrust laws of the Republic of Korea), because the Debtors have significant cash flow constraints that could damage the Company's operations if not remedied. The Debtors' business operations, with the exception of servicing of customers, have been suspended to conserve funds pending the acquisition of its business. It is imperative that the Sale close so that customers can be assured that the business will continue to be operate. The Debtors believe that other potential bidders will likewise require a closing date in the same time frame.

12. The Purchase Agreement was negotiated between the Debtors and Doosan at arm's-length. Doosan is neither an "insider" nor an "affiliate" of the Debtors (as such terms are defined in the Bankruptcy Code). While Doosan may extend offers of employment to certain employees of the Debtors' employees, on terms to be determined by Doosan in its sole discretion, including potentially officers of the Company, the Purchase Agreement contains no special treatment for the Debtors, the bankruptcy estates, Doosan or their respective affiliates or insiders. The Bid Procedures and the Purchase Agreement specifically provide for overbids at the Sale Hearing. The proposed

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

5

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148-7    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 5 of 15

Sale to Doosan is nothing more than a public auction. Finally, full disclosure of the terms of the proposed Sale transaction will be provided to creditors and other potential bidders pursuant to the notice of hearing on the Sale, which describes the material terms of the proposed Sale, the Purchase Agreement and the Bid Procedures.

## IV. ADDITIONAL INFORMATION

### A. Asset Valuation

13. The Debtors have not had a formal valuation prepared of the Company. The Company's consolidated balance sheet for the fiscal quarter ending March 31, 2014, lists assets with a book value of $189,275,000, liabilities of $134,198,000 and stockholder's equity of $55,078,000. In fiscal 2013, the Company had revenues of $69,287,000.

14. The Company has estimated in Schedule "B" that the liquidation value of its inventory is approximately $8,000,000.

### B. Debt Structure of the Debtors

15. The Debtors' bankruptcy Schedules are on file with the Court and may be summarized as follows:

#### 1. Secured Debt

16. The Debtors' Bankruptcy Schedule D lists the secured claims asserted against the estates which aggregate to $30,945,649.97. Secured claims asserted against the Company include security interests in deposit accounts, protective filings for lease agreements (and as such are not true secured obligations), interests pursuant to sale-leaseback transactions, warehousemen's liens, mechanics liens, and security interests pursuant to a loan transaction with one of the Debtors' subsidiaries. These scheduled creditors and additional asserted secured claims are discussed in Section V below.

#### 2. Administrative Claims

17. Administrative claims include fees and costs of professionals for the Debtor and the Committee and claims for goods received by the Debtors within twenty (20) days (the "20-day Goods") of the Petition Date. The Debtors estimate these claims to be approximately $4,000,000. The actual amount may be higher or lower based on the amount of allowed claims for the 20-day

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

6

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148-7    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 6 of 15

Goods, the ultimate Purchase Price and actual fees and expenses incurred by professionals and approved by the Bankruptcy Court.

18. Administrative claims include section 503(b)(9) claims which may be asserted against the estates, in an aggregate amount estimated around $1,420,000. These potential claims are subject to further evaluation by the Debtors and may be disallowable as will be determined on a case-by-case basis. To the extent the Debtors determine that the subject item associated with each such claim are not included in the Purchased Assets or are not otherwise of any benefit to the estates, the Debtors may return any such item.

19. Pursuant to the Purchase Agreement and the Bid Procedures Order, Doosan is entitled to payment of the Expense Reimbursement (defined and discussed at Paragraph 28 below) which shall not exceed $1,500,000, is afforded administrative priority status and shall be paid to Doosan in the event (a) the Purchase Agreement is terminated by Doosan as a result of a breach or misrepresentation arising from the Debtors' gross negligence, willful misconduct or bad faith, (b) Doosan is not the successful bidder at the Auction or (c) the Court otherwise approves a Competing Transaction (as defined in the Purchase Agreement).

20. The Purchase Agreement provides for the Debtors and Doosan to pay one-half each for transfer taxes resulting from the Sale, and to allocate the consideration received from the Sale for tax purposes in accordance with certain schedules and methodologies set forth on Exhibit G to the Purchase Agreement. The amount of such taxes is presently unknown.

21. The Purchase Agreement also provides that the Debtors shall retain all liability to provide health care continuation coverage under the Consolidated Omnibus Budget Reconciliation Act to certain former employees and requires the Debtors to maintain in effect a group health plan for so long following the Sale as is necessary to ensure that they can satisfy their obligations in respect of such coverage. The amount of such obligations is presently unknown.

### 3. Priority Claims

22. Unpaid priority claims of employees as of the date of this Motion are estimated at approximately $1,610,202.

23. In addition, on May 2, 2014, a former employee filed an adversary complaint in the

7

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148-7    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 7 of 15

bankruptcy cases alleging violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 – 2109 and Connecticut Wage Law, Conn. Gen. Stat., §§ 31-76k, 31-71a to 31-71i (collectively, the "<u>WARN Act Claims</u>") , on behalf of himself and similarly situated persons. The Complaint, among other thing, requests class certification and demands judgment for unspecified damages based on unpaid wages, PTO, benefits and other employee-related claims and all. The complaint further alleges that the damages are entitled to status as either (a) priority claims up to the statutory $12,475 limit with the balance as unsecured claims, or (b) in the alternative, first priority administrative claims. The Debtors dispute the WARN Act Claims. The Debtors estimate the priority amount of WARN Act Claims aggregate to no greater than $3.5 million.

24. As set forth in the Omnibus Declaration, prior to the Petition Date and during the Bankruptcy Cases, the Debtors have terminated employees in order to streamline operations and reduce costs as much as possible. The Purchase Agreement requires the Debtors to pay all accrued and unpaid vacation and, if applicable, sick leave for the period from and after the Petition Date to the Closing Date of remaining employees (solely to the extent that claims for such payments would be entitled to priority under section 507 of the Bankruptcy Code). The Debtors estimate such amounts will be nominal and approximate no greater than $150,000.

25. The Debtors believe that certain state governmental agencies may possess claims entitled to priority status based on sales, use, franchise, property and/or other taxes. The amounts of such claims are unknown at this time.

**4. General Unsecured Claims**

26. The Debtors estimate that the non-priority portion of employee claims will total $5,902,137. Together with the non-priority WARN Act claims and the amounts listed on the Debtors' Bankruptcy Schedule F, general unsecured claims are estimated to total approximately $40,000,000. The bar dates for the filing of general unsecured claims, governmental claims and rejection claims (to be established by the Court) have not yet expired. In the case of rejection claims (for executory contracts and leases not yet rejected), a bar date will not be requested until the Debtors determine which executory contracts and unexpired leases remain after the Closing, and the Debtors make a motion to reject such executory contracts and unexpired leases. The actual allowed

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

8

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148-7    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 8 of 15

claims may also vary significantly from the amounts listed above based on the filing of claims against the Company not scheduled by the Company.

### C. Distribution of Proceeds

27. As set forth above, due to numerous contingencies, potential outcomes of disputed amounts and unidentified and/or unliquidated claims and charges (including, without limitation, tax claims, WARN Act Claims, rejection claims, section 503(b)(9) claims, post-Closing fees, professional fees, and other expenses of administration which are currently unknown) and other unknown factors (including, without limitation, whether lienholders elect to consent to the Sale, as discussed further below in Section V, the amount of claims asserted and allowed in the bankruptcy cases likely will vary substantially from the amounts estimated herein. Moreover, the actual net proceeds from the Sale which are available for distribution to unsecured creditors may vary significantly based on the purchase price following the Auction, improvement of particular deal points by bidders, and variance in the estimated administrative, priority and tax claims that are paid ahead of general unsecured creditors.

28. As noted above, the Purchase Agreement provides that the Debtors pay from the proceeds of the Sale: (a) all accrued and unpaid vacation and, if applicable, sick leave for the period from and after the Petition Date to the Closing Date of remaining employees (solely to the extent that claims for such payments would be entitled to priority under section 507 of the Bankruptcy Code) and (b) the Expense Reimbursement in the event (i) the Purchase Agreement is terminated by Doosan as a result of a breach or misrepresentation arising from the Debtors' gross negligence, willful misconduct or bad faith, (ii) Doosan is not the successful bidder at the Auction or (iii) the Court otherwise approves a Competing Transaction (as defined in the Purchase Agreement). Accordingly, pursuant to this Sale Motion, the Debtors request authority to pay such amounts.

### V. THE LIENHOLDERS

29. The Debtors, through their counsel, have conducted a search of the public records of the Secretary of State offices for California, Delaware and Oregon and have summarized those filings in the O'Neill Declaration filed concurrently herewith.

/ / /

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

9

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148-7    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 9 of 15

### A. Blanket Security Interests / Security Interests In Customer Accounts

30. The filings by Talmer Bank and Trust ("<u>Talmer</u>") are based on financing arrangements related to certain Energy Services Agreements (each, an "<u>ESA</u>") between the Debtors and various third-party customers identified in the above table. Under non-recourse loan documents executed with Talmer (the "<u>Talmer Loan Documents</u>"), Talmer financed the Debtors' purchase of materials and equipment used to manufacture fuel cell products which were installed, maintained and serviced by the Debtors pursuant to each respective ESA. Talmer maintains a "lockbox" account to secure the Debtors' obligations under the Talmer Loan Documents, and each customer remits payments to such account. Talmer withdraws amounts sufficient to satisfy the Debtors' monthly payment obligations under the Talmer Loan Documents, and the balance of the funds are then transferred to the Debtors.

31. The filing by REF Investments Ltd. ("<u>REF</u>") is based on a financing arrangement entered into between REF Investments and one of the Debtors' non-Debtor affiliates, ClearEdge Power Finance LLC ("<u>CEP Finance</u>") in February 2014, pursuant to which REF provided a $3,000,000 loan (with possibility of a second advance, which was never made, in the amount of $3,250,000 solely at the discretion of REF) for the funding of certain fuel cell projects with customers. CEP Finance's obligations in respect of such loan are guaranteed by CEP Inc. and are secured by a lien on substantially all of CEP Finance's assets, as well the equity of CEP Finance held by CEP LLC. Pursuant to various service agreements, certain of the Debtors' customers remit payments to two deposit accounts maintained under deposit account control agreements, from which payments due on the note payable to REF are made.

### B. Sale/Leaseback Agreements

32. The filing by Crestmark Bank ("<u>Crestmark</u>") is based on that certain Sale/Leaseback Agreement and Partial Assignment Agreement executed in November 2013, pursuant to which the Company sold to Crestmark and then leased back certain fuel cell equipment delivered to customers under ESAs with CBS Broadcasting, Inc. and Radford Studio Center, Inc., respectively. As security under the sale/leaseback agreement, the Company assigned payments up to a monthly amount received from the customers under each ESA to Crestmark.

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

10

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148-7    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 10 of 15

33. Similar to Crestmark, the filings by VFS LLC and CM TFS LLC (collectively, "VFS") are based on that certain Sale/Leaseback Agreement and Partial Assignment Agreement entered into as of August 29, 2013, pursuant to which the Company sold to VFS and then leased back certain fuel cell equipment delivered to a customer under its ESA with Western Connecticut State University. As security under the sale/leaseback agreement, the Company assigned payments up to a monthly amount received from the customer under the applicable ESA to VFS.

### C. Assumption of Contracts

34. The UCC-1 financing statements filed by the J. E. Shepard Company and Shepard-Pola, Incorporated is based on the leases for the Debtors' premises at 90 Bidwell Road, South Windsor, CT, and 195 Governors Highway, South Windsor, CT. Pursuant to the terms of such leases, certain of the Debtors granted a security interest in the manufacturing equipment and fixtures at such facilities as security for the performance of certain obligations under the leases. In the event the successful purchaser desires that the leases be assumed by the appropriate Debtor and assigned to it, such assumption and assignment will be the subject of the Assumption Motion and in the event the assumption and assignment of the leases is approved, the leases will be assigned to the successful purchaser with the liens intact.

35. I am informed and believe that the UCC-1 financing statement filed by U.S. Bancorp Equipment Finance, Inc. ("U.S. Bancorp")[2] is a protective filing for a true lease of office equipment. It is contemplated that to the extent the lease is included as an Assumed Contract, U.S. Bancorp will support and consent to assignment to Doosan or the Successful Purchaser. I am informed and believe that to the extent the lease is a disguised conditional sales contract, Doosan or the Successful Purchaser will acquire the equipment free and clear of U.S. Bancorp's lien on such equipment and such lien will attach only to the proceeds of the sale.

36. Dell Financial Services LLC ("Dell") filed a UCC-1 financing statement based on one or more leases (the "Dell Lease Agreement") for certain computer equipment and software. I am informed and believe that to the extent the Dell Lease Agreement does in fact constitute a

---

[2] The Debtors' Schedules of Assets and Liabilities also list U.S. Bank as a party holding a secured claim against the Debtors' assets. Such reference relates to the claims of U.S. Bancorp discussed herein.

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

11

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148-7    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 11 of 15

conditional sales contract and is included in the Purchased Assets, Doosan or the Successful Purchaser will acquire the equipment free and clear of Dell's lien on such equipment and such lien will attach only to the proceeds of the sale . I am also informed and believe that to the extent the Dell Lease Agreement is a true lease for equipment, it may be assumed and assigned to the Successful Purchaser. It is contemplated that Dell will support the assignment to Doosan or other Successful Purchaser in such instance.

37. I am informed and believe that the three filings by Gelco Corporation d/b/a GE Fleet Services ("Gelco") appear to be protective filings for true leases of vehicles used in the Company's operations. As with the U.S. Bancorp equipment leases, it is contemplated that (a) to the extent any Gelco lease is included as an Assumed Contract, Gelco will support and consent to assignment to Doosan or the Successful Purchaser; and (b) to the extent any Gelco lease is a disguised conditional sales contract, Doosan or the Successful Purchaser will acquire the equipment free and clear of Gelco's lien on such equipment and such lien will attach only to the proceeds of the sale.

38. The filings by the Clean Energy Finance and Investment Authority and Connecticut Innovations, Inc. ("CEFIA/CI") relate to grants provided to the Debtors by such parties in connection with the Debtors provision of certain fuel cell equipment to customers. As security for the Debtors' obligations under the related grant agreements, CEFIA/CE received a lien on such equipment and the proceeds thereof. It is contemplated that (a) to the extent any grant agreement is included as an Assumed Contract, CEFIA/CI will support and consent to assignment to Doosan or the Successful Purchaser; and (b) to the extent any grant agreement is not included as an Assumed Contract, Doosan or the Successful Purchaser will acquire the applicable assets (if constituting Purchased Assets) free and clear of CEFIA/CI's lien on such assets and such lien will attach only to the proceeds of the sale.

**D. Samsung**

39. Samsung Everland filed a UCC-1 financing statement with respect to specified personal property, including the proceeds of a specified customer contract, in connection with obligations under a purchase order that is not yet effective. The Debtors do not believe that Samsung Everland has a lien on any of their property. To the extent, however, that Samsung

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

12

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148-7    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 12 of 15

Everland does have a lien, claim, encumbrance or other interest of any kind on any personal property of the Debtors, Doosan or the Successful Purchaser will acquire the applicable assets (if constituting Purchased Assets) free and clear of Samsung Everland's lien, claim, encumbrance or other interest on such assets and such lien, claim, encumbrance or other interest will attach only to the proceeds of the Sale.

### E. Mechanic's Liens

40. In addition to the above-described UCC filings, several parties have asserted mechanic's liens or related liens, preliminary notices, or notices of intent related thereto, as also set forth in the O'Neill Declaration.

41. New England Mechanical Services, Inc.'s liens are asserted against the Debtors' leasehold interest based on labor, materials and equipment provided with respect to construction, improvements and/or related work on the Debtors' leased property in South Windsor, Connecticut. Zimmerman's Commercial Flooring Inc.'s and Durus Construction, LLC's liens are asserted based on labor, materials and equipment provided with respect to construction, improvements and/or related work on the Debtors' leased real property in Hillsboro, Oregon. The remaining liens or notices of intent related thereto, to the extent asserted against the Debtors, are asserted based on labor, materials and equipment provided pursuant to purchase orders and/or service contracts (or subcontracts) in connection with fuel cell installation, maintenance and/or related work on the property of customers. If certain of the Debtors' executory contracts and unexpired leases are included in the Sale as Assumed Contracts, the claims underlying such liens may be paid in full and such liens extinguished. To the extent that any such party has a lien on any personal property of the Debtors and such lien is not so extinguished, Doosan or the Successful Purchaser will acquire the applicable assets (if constituting Purchased Assets) free and clear of such party's lien on such assets and such lien will attach only to the proceeds of the Sale.

### F. Warehousemen's Liens

42. D.T. Gruelle Company Group, LLC d/b/a D.T. Gruelle Company ("<u>DT Gruelle</u>"), Network Global Logistics, LLC ("NGL"), Javelin Logistics Corporation ("<u>Javelin</u>"), J.M. Rogers Co., Inc. ("<u>JMR</u>") and SDV (USA), Inc. ("<u>SDV</u>") have asserted warehousemen or similar possessory

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

13

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148-7    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 13 of 15

liens under services agreements with the Company to perform storage, shipping and related services, pursuant to which the Company allegedly granted security interests in and a lien upon the goods subject to each agreement, to secure storage charges and all amounts due under the agreements. During the bankruptcy cases, on motion by the Debtors, the Court entered an Order authorizing, on an interim basis and without prejudice to the Debtors' request for additional authority, the Debtors to make adequate protection payments to NGL equal to the value of goods removed by the Debtors on an as needed basis up to an aggregate of $100,000, for a period of five weeks. The Debtors are evaluating these liens and the Debtor's needs with respect to Javelin, DT Gruelle, JRM and SDV. In any event, if the underlying services agreements are included in the Sale as Assumed Contracts, the amounts in default will be paid as Cure Costs, and the liens will be released. If such services agreements are not included as Assumed Contracts, Doosan or the Successful Purchaser will acquire the assets subject to such liens (if constituting Purchased Assets) free and clear of such party's liens on such assets and such liens will attach only to the proceeds of the Sale.

G.   **Reclamation Claims**

43.   Advantech Industries, Inc., Metro Mold & Design, LLC, Rosemount Inc., Toray Composites (America), Inc., Trane US, Inc., Universal Sheet Metal, Inc. and W.W. Grainger, Inc. have asserted reclamation claims pursuant to Bankruptcy Code Section 546(c) arising from the delivery by such parties of various goods to the Debtors within 45 days prior to the Petition Date. If the underlying supply agreements are included in the Sale as Assumed Contracts, the amounts in default will be paid as Cure Costs, and the interests will be released. If such supply agreements are not included as Assumed Contracts, Doosan or the Successful Purchaser will acquire the assets subject to such interests (if constituting Purchased Assets) free and clear of such party's interests in such assets and such interests, if not extinguished as a result of such sale, will attach only to the proceeds of the Sale.

H.   **Other Claims**

44.   The Debtors' Schedules of Assets and Liabilities indicate that Gileno Distribution Services, Hartford Distributors Inc., Johnson Matthey Fuel Cells, Xerox Corp. and Xerox Business Service possess secured claims against the Debtors. The Debtors do not believe that any such parties

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

14

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955   Doc# 148-7   Filed: 06/30/14   Entered: 06/30/14 13:44:57   Page 14 of 15

possess any liens, claims, encumbrances or other interests in any of the Debtors' assets. Accordingly, to the extent any such party asserts any such lien, claim, encumbrance or other interest, the applicable assets may be sold free and clear of any such liens pursuant to section 363(f)(4). To the extent that it is determined that any such party actually does possess any liens, claims, encumbrances or other interests in any of the Debtors' assets, Doosan or the Successful Purchaser will acquire the assets subject to such liens, claims, encumbrances or other interests (if constituting Purchased Assets) free and clear of such party's liens, claims, encumbrances or other interests on such assets and such liens, claims, encumbrances or other interests will attach only to the proceeds of the Sale.

45. The United States Department of Energy (the "DOE") has asserted and expressly reserved rights to certain patents and applications developed under government contracts which will be included in the Purchased Assets. The Debtors believe that such rights may be limited to a non-exclusive license and that the transfer of the subject patents does not require DOE consent. In any event, it is anticipated that Doosan or the Successful Purchaser will take subject to such rights. To the extent any such rights constitute unexpired licenses, they may be assumed and assigned to the Successful Purchaser, and it is contemplated that the DOE will support the assignment to Doosan or other Successful Purchaser in such instance (allowing the Sale to occur pursuant to section 363(f)(2)), subject to inclusion into the Sale Order the following language:

> "Notwithstanding any other provisions or language of this Order, any rights to DOE-Funded IP acquired through this Sale shall be subject to the government-reserved rights and contractor commitments including, but not limited to, the U.S. Competitiveness Provision, set forth as subparagraph(t) in the applicable DOE Patent Waivers, or as otherwise required by federal law."

I declare under penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct and that this Declaration was executed on June 30, 2014.

*/s/ Gloria Fan*
Gloria Fan

TTH/RAF:sb
H:\Client Matters\- F&R\ClearEdge\Pl\CE Inc\Sale\Mot Dec GF v4.docx

15

DECLARATION OF GLORIA FAN IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Case: 14-51955    Doc# 148-7    Filed: 06/30/14    Entered: 06/30/14 13:44:57    Page 15 of 15