JOHN WALSHE MURRAY (074823)
STEPHEN T. O'NEILL (115132)
ROBERT A. FRANKLIN (091653)
THOMAS T. HWANG (218678)
DORSEY & WHITNEY LLP
305 Lytton Avenue
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile: (650) 857-1288
Email: murray.john@dorsey.com
Email: oneill.stephen@dorsey.com
Email: franklin.robert@dorsey.com
Email: hwang.thomas@dorsey.com

Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>**CLEAREDGE POWER, INC.**,<br>Employer Tax I.D. No. 20-0119415<br><br>**CLEAREDGE POWER, LLC**<br>Employer Tax I.D. No. 06-1517615<br><br>**CLEAREDGE POWER INTERNATIONAL SERVICE, LLC**<br>Employer Tax I.D. No. 27-3468551<br><br>Debtor(s).<br><br>920 Thompson Place, Suite 100<br>Sunnyvale, California 94085 | Case No. 14-51955-CN-11<br><br>Case No. 14-51956-CN-11<br><br>Case No. 14-51960-CN-11<br><br>Cases Jointly Administered<br>Under Chapter 11<br><br>Date: July 11, 2014<br>Time: 4:00 p.m.<br>Place: 280 S. First Street, Room 3070<br>San Jose, CA 95113<br>Judge: Honorable Charles Novack |

### EXHIBIT "B"

### To

### DECLARATION OF STEPHEN T. O'NEILL IN SUPPORT OF MOTION BY DEBTORS TO APPROVE SALE OF CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

EXHIBIT COVER

# BID PROCEDURES

In the exercise of their good faith reasonable business judgment, ClearEdge Power, Inc., ClearEdge Power LLC and ClearEdge Power International Service LLC (collectively, the "Debtors") have determined to solicit and complete a set of related transactions (collectively, the "Sale Transaction") selling substantially all of the Debtors' assets, in whole or in part (the "Assets"), subject to the approval of the United States Bankruptcy Court for the Northern District of California, San Jose Division, Courtroom 3070, 280 S. First Street, San Jose, CA 95113-3099 (the "Bankruptcy Court" or the "Court") after an opportunity for Qualified Bidders (as defined below) to submit competing bids ("Competing Bid(s)" or "Bid(s)") at an auction (the "Auction").

The Debtors have executed an Asset Purchase Agreement (collectively with all ancillary documents and agreements, the ("Stalking Horse Purchase Agreement") with Doosan Corporation on behalf of itself and/or its designee(s) (the "Stalking Horse Bidder"), dated as of June 26, 2014, which contemplates a Sale Transaction for the sale of the Purchased Assets (as defined in the Stalking Horse Purchase Agreement) to the Stalking Horse Bidder or its designee(s) in consideration for the Purchase Price (as defined in the Stalking Horse Purchase Agreement), all subject to the terms and conditions set forth in the Stalking Horse Purchase Agreement, and subject to higher and better bids as determined by the Debtors and the Committee in accordance with these Bid Procedures (as defined below).

Subject to approval of the Bankruptcy Court, the procedures hereinafter set forth (the "Bid Procedures") will govern the bidding and sale process. As provided below and in the Stalking Horse Purchase Agreement, the Bid Procedures will be incorporated into a binding order (the "Bid Procedures Order") entered by the Bankruptcy Court.

## Bidding Process

The Debtors and the Official Committee of Unsecured Creditors (the "Committee") shall jointly:

(a)  Coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Assets[1];

(b)  Determine whether any person is a Qualified Bidder (as defined below);

(c)  Determine whether a Potential Bidder has made a Qualified Bid (as defined below); and

(d)  Administer the Auction.

---

[1] Capitalized terms not otherwise defined herein will have the meanings ascribed to them in the MOTION FOR ORDER APPROVING BID PROCEDURES AND RELATED MATTERS RE SALE OF CERTAIN ASSETS OF DEBTORS (as amended and supplemented, the "Bid Procedures Motion").

## Participation Requirement

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, each interested person must first deliver to: TGI Financial, Inc. dba Gerbsman Partners ("Gerbsman" or "Gerbsman Partners"), Attn: Steven R. Gerbsman, email steve@gerbsmanpartners.com, tel.: 415 505-4991, an executed confidentiality agreement in form and substance reasonably acceptable to the Debtors. Upon an interested person's satisfaction of the participation requirements described herein, such bidder will be deemed to be a "Potential Bidder."

No Potential Bidder shall consult with any other Potential Bidder following execution of the confidentiality agreement and prior to the conclusion of the Auction, or submit at any time a "joint bid" with any other Potential Bidder, without the express consent of the Debtors and the Committee.

## Access To Due Diligence Materials

The Debtors shall afford each Potential Bidder due diligence access to the Debtors' assets and business, subject to competitive and other business concerns, which diligence may include access to the Debtors' electronic data room, management presentations and site visits, and such other diligence as Potential Bidders may request and to which the Debtors and the Committee may both agree; provided, however, that the Debtors shall have no obligation to provide due diligence access to any Potential Bidder after the Auction. The Debtors will coordinate efforts to accommodate all reasonable requests for additional information and due diligence access for Potential Bidders. Unless otherwise jointly determined by the Debtors and the Committee, the availability of additional due diligence to a Potential Bidder will cease on the Auction date; provided, however, that the "Successful Bidder(s)" shall be permitted to continue to conduct due diligence until the closing of the Sale Transaction (subject to the terms of the Successful Bidder Purchase Agreement (as defined below)); provided, further, however, that a Qualified Bid shall not be subject to further due diligence after the Bid Deadline. The Debtors will provide to each Potential Bidder the Stalking Horse Purchase Agreement.

The Debtors (and their respective staff, agents, attorneys or representatives) make no representation or warranty as to the information to be provided through the due diligence process or otherwise, except to the extent set forth in the asset purchase agreement (the "Successful Bidder Purchase Agreement") with the Successful Bidder (as defined below). Each Potential Bidder, as a consequence of the due diligence access granted to it, shall be deemed to acknowledge and represent (i) that it has had an opportunity to inspect and examine the Debtors' assets and business and to review all pertinent documents and information with respect thereto; (ii) that it is not relying upon any written or oral statements, representations, or warranties of the Debtors, the Committee, or Gerbsman Partners, or their respective staff, agents, attorneys or representatives except as set forth in the Successful Bidder Purchase Agreement; and (iii) all such documents and reports have been provided solely for the convenience of the Potential Bidder, and the Debtors and Gerbsman Partners (and their respective employees, agents,

attorneys, representatives, consultants and financial advisors) do not make any representations as to the accuracy or completeness of the same.

## Bid Deadline

The deadline for submitting bids by a Potential Bidder is **July 7, 2014, at 12:00 p.m. (Pacific Daylight Time)** (the "Bid Deadline"). No later than the Bid Deadline, a Potential Bidder that desires to make a bid to acquire all or any part of the Assets (a "Bid") shall deliver written copies of its Bid in both written and electronic format to: (1) counsel for the Debtors, Dorsey & Whitney LLP, 305 Lytton Avenue, Palo Alto, CA 94301, Attn: John Murray, Esq., email: murray.john@dorsey.com ("Mr. Murray"); (2) counsel for the Committee, Brown Rudnick LLP, 2211 Michelson Drive, 7th Floor, Irvine, CA 92612, Attn: Cathrine Castaldi, Esq., email: ccastaldi@brownrudnick.com; (3) Gerbsman Partners, Attn: Steven R. Gerbsman, email steve@gerbsmanpartners.com; and (4) counsel for the Stalking Horse Bidder, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10025, Attn: Scott K. Charles, Esq., email: skcharles@wlrk.com (collectively, the "Notice Parties"); provided, however, that the evidence of financial ability to perform described in subparagraph (i) below may be provided to counsel for the Stalking Horse Bidder in redacted form to protect material non-public information.

## Determination of Qualified Bid Status

In order to be eligible for consideration as a Qualified Bid (defined below), each Bid must satisfy each of the following conditions:

(a) Assets: Bids may be submitted for all or part of the Assets. Bids must identify, with specificity, which Assets are included in such Bid.

(b) Marked Purchase Agreement: A Bid must be accompanied by an executed asset purchase agreement with and a black-lined version of such agreement to show changes from the Stalking Horse Purchase Agreement (including any schedules or disclosures that are a part thereof) showing the purchase price and any changes to the Stalking Horse Purchase Agreement requested by the Potential Bidder, including those related to the assumption and assignment of contracts and licenses, and other material terms such that the Debtors and Committee may determine how such Bid compares to the terms of the Stalking Horse Purchase Agreement and Competing Bids.

(c) Combining Bids: The Debtors and Committee may jointly determine that the sum of bids for less than all of the Assets is collectively the best and highest bid for all of the Assets and, upon such joint determination, may combine such bids.

(d) Joint Bids: Prospective Qualified Bidders may submit a "joint competing bid" for the Assets; provided, however, that the identity of each bidder participating in such "joint bid" must be disclosed in the Bid, and such "joint bid" will be subject to section 363(n) of the Bankruptcy Code.

(e) Conditions/Contingencies: Except as provided in the Stalking Horse Purchase Agreement, a Qualified Bid must not be subject to material conditions or

3

contingencies to closing, including without limitation governmental approval, obtaining financing, internal approvals or further due diligence.

(f) <u>No Bid Protections</u>: The Bid must not entitle a bidder to any break-up fee, termination fee or similar type of payment or reimbursement and, by submitting a bid, the Potential Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or the bidding process.

(g) <u>Authorization</u>: A Bid must include evidence of authorization and approval, subject to verification by the Debtors, Gerbsman and the Committee, from such Potential Bidder's board of directors or governing body with respect to the submission, execution, delivery and closing.

(h) <u>Good Faith Deposit</u>: Each Qualified Bid shall be accompanied by a good faith cash deposit (a "<u>Good Faith Deposit</u>") in the amount of 10% of the Purchase Price in the form of a wire transfer, certified check or other form acceptable to the Debtors and the Committee. Each good faith deposit will be deposited and held in the trust account of Dorsey & Whitney LLP, counsel to the Debtors ("<u>Dorsey</u>"). Requests for wire transfer instructions should be directed to Mr. Murray.

(i) <u>Evidence Of Financial Ability To Perform</u>: Each Bid must contain evidence satisfactory to the Debtors and the Committee that the bidder is reasonably likely (based upon financial wherewithal, availability of financing, experience and other considerations) to be able to timely consummate a Sale Transaction if selected as the Successful Bidder, and must further contain information that can be publicly filed and/or disseminated providing adequate assurance of future performance of all contracts and leases to be assumed and assigned. Such evidence must include, without limitation, the Potential Bidder's most current audited and latest unaudited financial statements or, if the bidder is an entity formed for the purpose of making a bid, the current audited and latest unaudited financial statements of the equity holder(s) of the bidder or such other form of financial disclosure, and a guaranty from such equity holder(s).

(j) <u>Bid Irrevocable/Back-up Bid</u>: A Bid (other than the Stalking Horse Bid) must provide that it is irrevocable until two (2) business days after the closing of the Sale. Each Potential Bidder (other than the Stalking Horse Bidder) further agrees that its Bid, if not chosen as the Successful Bidder, shall serve, without modification, as a Back-up Bidder (as defined below) or Alternate Back-up Bidder (as defined below) as may be jointly designated by the Debtors and the Committee at the Sale Hearing, in the event the Successful Bidder fails to close as provided in the Purchase Agreement, as modified, if at all, and the Sale Order. The Stalking Horse Bidder shall not have any obligation to serve as a Back-up Bidder or Alternate Back-up Bidder under any circumstances.

4

(k) A written statement agreeing to being contractually bound by all of the terms of these Bid Procedures.

After the Bid Deadline, the Debtors and the Committee will immediately review all Bids and will notify any Potential Bidder whose Bid does not meet the above requirements why such Bid is insufficient. All Bidders shall have until July 8, 2014, at 5:00 p.m. (Pacific Daylight Time) (the "Qualifying Bid Deadline"), to cure any deficiencies in their Bids in order to become Qualified Bids. A Bid received from a Potential Bidder on or before the Qualifying Bid Deadline that meets the above requirements, in the Debtors' and Committee's joint determination, will constitute a qualified bid (a "Qualified Bid"). Upon the submission of a Bid that constitutes a Qualified Bid, such bidder will be deemed to be a "Qualified Bidder". No later than July 8, 2014 all Bidders shall be notified whether or not their Bids are Qualified Bids. For purposes hereof, notwithstanding any failure to satisfy any of the above conditions, the Stalking Horse Bid is a Qualified Bid. In the event a Bid is determined not to be a Qualified Bid, such Bidder shall be refunded its good faith deposit within three (3) business days of that determination.

## The Auction and Sale Hearing

The Debtors shall hold the Auction on **July 9, 2014, at 9:00 a.m. (Pacific Daylight Time)** at the offices of Dorsey & Whitney LLP, 305 Lytton Avenue, Palo Alto, CA 94301, at which time the Debtors, in coordination with the Committee, shall conduct the Auction, and the Sale Hearing to consider approval of the Successful Bid(s) (as defined below) shall be held on **July 11, 2014 at 4:00 p.m. (Pacific Daylight Time)** at the Bankruptcy Court before the Honorable Charles Novack, United States Bankruptcy Judge. The Auction may be postponed, adjourned or cancelled as the Debtors and the Committee in their joint determination deem appropriate. Reasonable notice as is reasonably practicable under the circumstances of such postponement or adjournment and the time and place for the commencement or resumption of the Auction or cancellation shall be given to all Bidders.

The Debtors and their advisors will conduct the Auction. At the beginning of the Auction, the Debtors shall announce (a) of the Qualifying Bid(s) which is the highest and best Bid(s) for each of the Assets (the "Opening Bid(s)"), and (b) the manner in which the bidding will be conducted. Any disputes arising with respect to any aspect of the Auction will be resolved jointly by the Debtors and the Committee; provided, however, that if the Debtors and the Committee cannot agree, the Bankruptcy Court shall resolve any such dispute on an expedited basis.

All Qualified Bidders, including the Stalking Horse Bidder (each, a "Competing Bidder" and together, "Competing Bidders"), if any, may submit further Competing Bids, along with a markup or a further markup of the applicable purchase agreement. The Auction will be conducted in rounds. All bidders are required to bid in each round or they forfeit their right to participate in subsequent rounds. At any time, a bidder may request that the Debtors announce the then current highest and best bid. If requested, the Debtors shall use reasonable efforts to clarify any and all questions any Qualified Bidder may have regarding the Debtors' announcement of the then current highest and best bid. Unless otherwise agreed by the Debtors and the Committee, Bidders will have up to thirty minutes between bidding rounds. If a bidder is

5

not present in time to submit a bid in the next round, that bidder forfeits its right to participate in subsequent rounds, unless otherwise agreed by the Debtors and the Committee.

The Opening Bid (if other than the Stalking Horse Bid) and each Competing Bid made at the outset of the Auction for the Assets in a single Sale Transaction following announcement of the Opening Bid or Bids must be, at a minimum, equal to the sum of (i) the Purchase Price (as defined in the Stalking Horse Purchase Agreement); (ii) $1.5 million representing the Expense Reimbursement (defined below); and (iii) $500,000 (such sum, the "Minimum Bid Threshold").

Each Competing Bid thereafter must be in increments of no less than $250,000; provided, however, that the Debtors and the Committee reserve the right, in their joint determination, to modify the incremental bidding requirement at the Auction.

An overbid made by a Competing Bidder must remain open and binding on the Competing Bidder for (a) each round of bidding, and (b) for those Competing Bidders (other than the Stalking Horse Bidder) not selected as the Successful Bidder for purposes of serving as a Back-up Bid or Alternate Back-up Bid (as defined below). For the avoidance of doubt, the Stalking Horse Bidder shall incur no obligation to serve as Back-up Bidder or Alternate Back-up Bidder as a result of making any such Competing Bid.

All bids must be in cash or non-cash consideration, which such non-cash consideration shall be valued by the joint determination of the Debtors and the Committee in their discretion, which determination shall give effect to the Expense Reimbursement, and, among other things, take into account any liabilities to be assumed by a Qualified Bidder (including cure costs) and any cost that may be imposed on the Debtors by such Qualified Bid.

The Debtors and the Committee may jointly (a) determine which Qualified Bid, if any, is the highest and best bid for the Assets, and (b) reject at any time before the entry of the Sale Order any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtors, the bankruptcy estates, and creditors and interest holders thereof.

At the conclusion of the Auction, the Debtors shall announce the winner of the auction (the "Successful Bidder(s)") and request that the Court enter the Sale Order reciting the same.

The Debtors and the Committee may jointly determine to employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction, provided that such rules are (1) not inconsistent with these Bid Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court or any other applicable court entered in connection herewith, and (ii) disclosed to each Qualified Bidder at the Auction.

The Debtors and Committee may, in their joint determination, prior to or during the auction, postpone or terminate the auction and the sale process without selecting any Bid as the Successful Bid. Neither the Debtors, their bankruptcy estates, the Committee, and their respective employees, agents, attorneys, representatives, consultants and financial advisors shall have any liability to anyone if the Debtors and Committee decide to postpone or terminate the auction and the sale process.

The Debtors and Committee may modify these Bid Procedures if they jointly determine, in their sole and absolute discretion, such modifications to be in the best interest of the bankruptcy estates; provided, however, that (i) the Sale Hearing shall occur no later than July 11, 2014, at 4:00 p.m., except as may be agreed by the Debtors and the Committee, with the consent of the Stalking Horse Bidder (which consent shall not be unreasonably withheld), or as may otherwise be ordered by the Court, and (ii) the Debtors and Committee may not without the consent of the Stalking Horse Bidder (which consent shall not be unreasonably withheld), (x) modify the Stalking Horse Bidder's rights with respect to the timing of the Auction and Sale Hearing or the right to have effect given to the Expense Reimbursement, or (y) waive conditions to a Bid being a Qualified Bid requiring a Good Faith Deposit and evidence of financial ability to perform.

### Bid Protections

In the event the Stalking Horse Bidder is not the Successful Bidder, the Debtors shall pay in consideration of its being the Stalking Horse Bidder and to reimburse it for its reasonable and necessary out of pocket expenses, including all professional fees, an amount up to $1.5 million (the "Expense Reimbursement") to be paid in accordance with the terms and conditions set forth in the Stalking Horse Purchase Agreement and as approved by the Bankruptcy Court. No other bidder will be entitled to any expense reimbursement, break-up fee, termination or similar fee or payment. Such payments are conditioned on the close of a Sale Transaction.

### "As Is Where Is"

The sale of the Assets will all be on an "as is, where is" basis without representations or warranties of any kind or nature, except to the extent set forth in the purchase agreement(s) with the Successful Bidder(s). All such representations and warranties will expire at the closing of the Sale Transaction. Except as may be set forth in such purchase agreement(s), the Assets are sold free and clear of any and all liens, claims, interests, encumbrances, restrictions, charges and encumbrances of any kind or nature (collectively, the "Claims") to the fullest extent permissible under the Bankruptcy Code, with such liens, claims, interests, encumbrances, restrictions, charges, and encumbrances to attach to the net proceeds of sale in their order of priority.

Notwithstanding the foregoing, the Debtors and the Committee each reserve the right to contest the validity, nature, extent, or priority of and/or seek to set aside or avoid any and all Claims under applicable law.

### Conclusion of the Auction, Determination of the Successful Bidder and Sale Hearing

At the conclusion of the bidding, the Debtors and the Committee shall jointly (1) determine the Successful Bidder(s) on the basis of, among other things: (a) the amount of the Qualified Bid(s), (b) the number, type and nature of any modifications to the Stalking Horse Purchase Agreement, and the extent to which such modifications are likely to delay the closing of a sale of the Assets to be purchased and the costs attendant thereto, (c) the likelihood of the bidder's ability to close a Sale Transaction and the timing thereof, (d) the net value to the Debtors' estates as jointly determined by the Debtors and the Committee after giving effect to the Expense Reimbursement, and, among other things, taking into account any liabilities to be

assumed by a Qualified Bidder (including cure costs) and any costs which may be imposed on the Debtors by such Qualified Bid, and (e) any other factors the Debtors and Committee may jointly and reasonably deem relevant, provided, however, that if the Debtors and the Committee cannot agree, such dispute shall be resolved on an expedited basis by the Bankruptcy Court; and (2) submit the highest and best bid, as jointly determined by the Debtors and the Committee (the "Successful Bid"), for approval by the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code. For avoidance of doubt, the Debtors and the Committee may jointly select a combination of Qualified Bids for the Assets in multiple lots, in determining the Successful Bid(s).

Prior to the Debtors submitting a Successful Bid to the Bankruptcy Court for approval, such Successful Bidder shall present evidence to the Court establishing to the Court's satisfaction such bidder's provision of adequate assurance of future performance of executory contracts and unexpired leases to be assumed and assigned to such bidder.

Any Qualified Bidder that intends to request that the Bankruptcy Court make a finding under Bankruptcy Code Section 363(m) that such bidder's purchase of any portion of the Assets or the assignment to it of an executory contract or unexpired lease is in good faith, shall, in advance of the Sale Hearing, file with the Court and serve on the Service Parties (as defined in Section 29-a of the Bid Procedures Motion), a written declaration of a competent witness demonstrating (a) the bidder's good faith, and (b) the absence of fraud or collusion between the bidder and any other bidder, party or the Debtors or their representatives. The declaration must also disclose any facts material to the good faith determination, including:

(a) The bidder's pre- and post-petition relationships with (i) any other bidder, (ii) the Debtors or the Debtors' current or former officers, directors, agents or employees, and (iii) any of the Debtors' major creditors or equity security holders;

(b) The bidder's anticipated relationship after the sale with any of the Debtors' current or former officers, directors, agents or employees;

(c) Whether any offers of employment or compensation have been or will be made to any of the Debtors' current or former officers, directors, agents or employees; and

(d) Whether the bidder has paid or contemplates paying consideration in connection with the sale to any person other than the Debtors.

Prior to the conclusion of the Sale Hearing, the Debtors and Committee shall jointly designate the next highest and best bid to serve as the first back-up bid (the "Back-up Bid" of the "Back-up Bidder"), and one or more alternate back-up bids (each, an "Alternate Back-up Bid" of an "Alternate Back-up Bidder"), as applicable, for the Assets. For the avoidance of doubt, the Stalking Horse Bidder shall not have any obligation to serve as a Back-up Bid or Alternate Back-up Bid.

In the event the Successful Bid is approved but not consummated by the closing date designated in the Successful Bidder Purchase Agreement (or such later date as the Debtors, the Committee, and the applicable Successful Bidder shall mutually agree in writing), the Debtors and the Committee will request that the next highest and best bid (i.e., the Back-up Bid), and the

8

next highest and best bid to that bid (i.e., the first Alternate Back-up Bid), and so on, be approved without the necessity of further order of the Bankruptcy Court, and that such bidder be required to consummate the Sale Transaction contemplated in its bid within seven (7) business days of being declared the Successful Bidder.

In the event a Successful Bid is not consummated, the Debtors shall notify each Back-Up Bidder and Alternate Back-up Bidder within one (1) day of such bidder's designation as the new Successful Bidder, Back-up Bidder or next Alternate Back-up Bidder, as applicable.

The Debtors and the Committee may jointly determine, prior to or during the auction and sale process, to postpone or terminate the auction and sale process without selecting any Bid as the Successful Bid. Neither the Debtors, their bankruptcy estates, the Committee, nor their respective employees, agents, attorneys, representatives, consultants and financial advisors shall have any liability to anyone if the Debtors postpone or terminate the auction and the sale process.

### Treatment of Deposits

The good faith deposit of the Successful Bidder will be applied to the purchase price of such Sale Transaction at the closing date of the Sale set forth in its Purchase Agreement.

The good faith deposit of each of the Back-up Bidders and Alternate Back-up Bidders will be held in held in Dorsey's trust account until the earlier of five (5) business days after the close of the Sale Transaction contemplated in the Successful Bid(s), and thereafter returned (with the interest earned thereon) to the Back-up Bidder and/or Alternate Back-up Bidder. The good faith deposits of any Bidder not selected as a Back-up Bidder or an Alternate Back-up Bidder will be held in Dorsey's trust account until no later than two (2) business days after the Sale Hearing, and thereafter returned (without the interest earned thereon) to the respective bidders. If a Successful Bidder, Back-up Bidder, or Alternate Back-up Bidder, as applicable, fails to consummate an approved sale because of a breach or failure to perform on the part of such Bidder, the Debtors (a) shall retain the good faith deposit of such Bidder as liquidated damages resulting from the breach or failure to perform by such Bidder; and (b) be authorized, but not required, to consummate the Back-up Bid, or Alternate Back-up Bid, as applicable, without further notice or order of the Bankruptcy Court. Each other Qualified Bidder (including the Stalking Horse Bidder to the extent it is not the Successful Bidder) shall be refunded its good faith deposit within three (3) business days of the end of the Sale Hearing.

### Expedited Dispute Resolution Procedure

Notwithstanding the foregoing, in the event that the Debtors and the Committee cannot reach agreement with respect to any aspect(s) of these Bid Procedures which require the joint determination of the Debtors and the Committee, the Debtors and the Committee agree that the dispute(s) shall be immediately referred to the Bankruptcy Court for final determination on an expedited basis.